**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHARLES H.**, *et al.*,<br><br>            **Plaintiffs,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>            **Defendants.** | **Civil Action No. 21-997 (CJN)** |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS IN PART PLAINTIFFS' AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.     The IDEA Framework ............................................................................. 2

    II.    The Inspiring Youth Program ................................................................. 3

    III.   The District's Response to COVID-19 .................................................... 4

    IV.   Education at IYP During the COVID Pandemic ..................................... 5

    V.    Plaintiffs' Complaint and Procedural History ........................................ 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 9

    I.     All Claims Against DCPS and OSSE Should Be Dismissed Because Both Agencies Are *Non Sui Juris*. ..................................................................................... 9

    II.    Plaintiffs Fail To Allege That OSSE Violated the IDEA (Counts 1 and 2). ..................... 9

    III.   Plaintiffs Fail To Allege a Violation of Section 504, the ADA, and the DCHRA Because They Do Not Allege That Their Disabilities Were a Reason Why They Did Not Receive FAPE (Counts 3-5). ............................................................................. 13

    IV.   Plaintiffs Cannot Assert a Claim for an Alleged Violation of the District's Regulations Implementing the IDEA (Count 6). ........................................................ 15

    V.    Israel F.'s Claims Are Moot in Light of His Administrative Settlement. ..................... 15

    VI.   Malik Z. Has Not Exhausted His Administrative Remedies. ............................... 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*A.A. ex rel. J.A. v. Philips*, 386 F.3d 455 (2d Cir. 2004) ............................................................... 11

*A.D. v. Creative Minds Int'l. Pub. Charter Sch.*, Civil Action No. 18-2430, 2020 WL 6373329 (D.D.C. Sept. 28, 2020) ............................................................................................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 7, 8

*Beard v. Teska*, 31 F.3d 942 (10th Cir. 1994) ............................................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 7

*Blue v. District of Columbia*, 850 F. Supp. 2d 16 (D.D.C. 2012) .................................................. 9

*Bynum v. District of Columbia*, 424 F. Supp. 3d 122 (D.D.C. 2020) ............................................ 9

*Camreta v. Greene*, 563 U.S. 692 (2011) .................................................................................... 16

*Carnwath v. Grasmick*, 115 F. Supp. 2d 577 (D. Md. 2000) ....................................................... 11

*Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) .............................................................. 16

*Conyers v. Reagan*, 765 F.2d 1124 (D.C. Cir. 1985) ................................................................... 16

*District of Columbia v. Vinyard*, 971 F. Supp. 2d 103 (D.D.C. 2013) .......................................... 9

*Douglass v. District of Columbia*, 750 F. Supp. 2d 54 (D.D.C. 2010) ........................................ 17

*Easter v. District of Columbia*, 128 F. Supp. 3d 173 (D.D.C. 2015) ........................................... 11

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ................................. 8

*Frederick v. Hillyer*, 82 F. Supp. 3d 435 (D.D.C. 2015) ............................................................. 15

*Fry v. Napolean Cmty. Schs.*, 137 S. Ct. 743 (2017) .............................................................. 16, 17

*H.E. v. Palmer*, 220 F. Supp. 3d 574 (E.D. Pa. 2016) ................................................................. 12

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................................................. 17

*Husain v. Smith*, Civil Action No. 15-708, 2016 WL 4435177 (D.D.C. Aug. 19, 2016) ............. 15

*Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15 (D.D.C. 2014) .................................................. 8

*Jackson v. District of Columbia*, 826 F. Supp. 2d 109 (D.D.C. 2011) ............................................ 7

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................................... 15

*Mykonos v. United States*, 59 F. Supp. 3d 100 (D.D.C. 2014) ...................................................... 8

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................................................................................... 16

*Price v. Commonwealth Charter Acad. Cyber Sch.*, Civil Action No. 17-1922, 2018 WL
1693352 (E.D. Pa. Apr. 6, 2018) ......................................................................................... 11, 12

*Reid-Witt on behalf of C.W. v. District of Columbia*, 486 F. Supp. 3d 1 (D.D.C. 2020) .............. 13

*Saenz on behalf of V.S. v. Bd. of Education of Silver Consol. Schs.*, Civil Action No. 18-954,
2019 WL 1795539 (D.N.M. Apr. 24, 2019) ............................................................................ 10

*Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373 (D.D.C. 2015) ............................................... 8

*WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44 (D.D.C. 2015) .................... 15

**Statutes**

20 U.S.C. § 1401 .......................................................................................................................... 2, 3

20 U.S.C. § 1412 ............................................................................................................................... 2

20 U.S.C. § 1413 ............................................................................................................................... 3

20 U.S.C. § 1415 ............................................................................................................................. 16

**Regulations**

34 CFR § 300.102(a)(2)(B) ............................................................................................................. 3

34 CFR § 300.149 ........................................................................................................................... 11

34 CFR § 300.600 ........................................................................................................................... 11

5-E DCMR § 3002.1(a) ................................................................................................................. 3, 9

5-E DCMR § 3002.2(b) .................................................................................................................... 3

## INTRODUCTION

Plaintiffs are high school students with disabilities and special education needs who are (or were) students in the Inspiring Youth Program (IYP) at the D.C. Jail during the COVID-19 public health emergency.[1] Under the Individuals with Disabilities in Education Act (IDEA), plaintiffs have a right to a free, appropriate public education (FAPE). To facilitate the provision of FAPE, every special education student, including plaintiffs, has an Individualized Education Program (IEP) that sets forth the hours of specialized education and related services that student needs. Implementing the IEPs of IYP students is the primary responsibility of the District of Columbia Public Schools (DCPS), which currently serves as the IYP education provider.[2] Plaintiffs allege that, since the beginning of the COVID-19 pandemic in March 2020, defendants have failed to implement their IEPs in violation of the IDEA, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and the D.C. Human Rights Act (DCHRA). Plaintiffs' claims against the Office of the State Superintendent of Education (OSSE) and DCPS should be dismissed in full, and plaintiffs' claims against the District should be dismissed in part.

First, both OSSE and DCPS are *non sui juris* and cannot be sued as defendants separate and apart from the District. In the alternative, plaintiffs' IDEA claims against OSSE should be dismissed because plaintiffs fail to allege that OSSE was directly responsible for implementing plaintiffs' IEPs (Count 1) or that any alleged failure by OSSE to monitor DCPS's implementation of IEPs for a small number of students at the D.C. Jail, including plaintiffs, was the result of a systemic failure to monitor DCPS's provision of FAPE across the District (Count 2).

---

[1]    Israel F. was released from the custody of the D.C. Department of Corrections (DOC) on May 14, 2021, during the pendency of this litigation.

[2]    Although DCPS currently operates IYP, DCPS will no longer be the IYP provider as of late September 2021. *See* Defs.' July 1, 2021 Status Report [41].

Second, as to all defendants, plaintiffs' claims under Section 504, the ADA, and the DCHRA (Counts 3-5) should be dismissed because plaintiffs fail to allege that the purported failure to implement their IEPs was related to their disabilities as opposed to their detainment at the D.C. Jail. In Count 6, plaintiffs allege a violation of District regulations implementing the IDEA's IEP requirement. Because no independent cause of action exists for an alleged violation of the implementing regulations, Count 6 should be dismissed as well.

Third, the claims of Israel F. should be dismissed because he has settled his claims against the District and therefore his claims are moot.

And finally, the claims of Malik Z. should be dismissed because he has failed to exhaust his administrative remedies.

## BACKGROUND

I.        <u>The IDEA Framework</u>

The IDEA requires that states provide FAPE to students with disabilities as a condition of receiving federal education funding. 20 U.S.C. § 1412.[3] A State must submit a plan of compliance to the U.S. Secretary of Education, who then distributes funding directly to each state's designated State Education Agency (SEA). The SEA then allocates those funds to Local Education Agencies (LEAs). While the SEA (here, OSSE) is responsible for monitoring LEAs and ensuring that "all educational programs for children with disabilities in the State … meet the educational standards of the State educational agency," *id.* § 1412(a)(11), the LEA (here, DCPS currently) is responsible for the direct provision of services to children with disabilities, including implementation of the

---

[3]        The IDEA includes the District of Columbia within the definition of a "state." *See* 20 U.S.C. § 1401(31).

students' IEPs, 5-E DCMR § 3002.1(a) ("The LEA shall make a free appropriate education (FAPE) available to each child … .").

The IDEA also provides that the SEA may use the funds that would have otherwise been available to an LEA to provide services directly to children with disabilities in one of four situations. 20 U.S.C. § 1413(g)(1)(A)–(D). Relevant here, the SEA may use funds allocated to an LEA to provide services directly if the LEA "is unable to establish and maintain programs of free appropriate public education that meet the requirements of [the IDEA]." *Id*. § 1413(g)(1)(B). However, the IDEA imposes limits on the SEA's ability to deprive LEAs of their allocated funding. Before the SEA can divert funds from an LEA for failing to comply with the IDEA, the SEA must provide the LEA with "reasonable notice and an opportunity for a hearing." *Id*. § 1413(d)(1).

## II.        The Inspiring Youth Program

IYP is an alternative high school for adult students with disabilities housed at the D.C. Jail to earn credits toward their high school diplomas during their incarceration. Mem. Op. Granting Pls.' Mot. for Prelim. Inj. [38] at 5; Am. Compl. [31-3] ¶ 2. All students enrolled in IYP are between the ages of 18 and 22 and have previously been identified as students with disabilities. *See* Mem. Op. Granting Pls.' Mot. for Prelim. Inj. at 5; *see also* 5-E § 3002.2(b). Each IYP student has an IEP that details the student's present level of performance, identifies goals for the student, and outlines services and accommodations the student may need. *See* Am. Compl. ¶¶ 5, 49; *see also* 34 CFR § 300.102(a)(2)(B). Each student's IEP also identifies the "related services," such as counseling and speech-language pathology, among others, that a student needs to meet their IEP goals. *See* Am. Compl. ¶ 100; 20 U.S.C. § 1401(26)(A) (defining "related services" as "transportation, and such developmental, corrective, and other supportive services … as may be required to assist a child with a disability to benefit from special education … ."). Prior to the

pandemic, IYP held in-person classes for students housed in the jail's general population from 8:45 a.m to 11:10 a.m and 12:15 p.m. to 2:30 p.m. Am. Compl. ¶ 55. Students in restrictive housing units would receive one-on-one instruction from teachers either at their cell doors or in a separate space on the unit. *Id.*

### III.     The District's Response to COVID-19

In early 2020, the United States saw its first cases of COVID-19. *See* Centers for Disease Control and Prevention Press Release, *First Travel-related Case of 2019 Novel Coronavirus Detected in United States*, Jan. 21, 2020, available at https://bit.ly/2QcPLg0. As the pandemic unfolded nationwide, the District had to respond quickly to the many challenges it posed. On March 11, 2020, just four days after the District recorded its first known case, Mayor Muriel Bowser issued a declaration of emergency and declaration of public health emergency. *See* Mayor's Order 2020-046, March 11, 2020, available at https://bit.ly/3bdgMaa. The District quickly implemented restrictions in line with recommendations from the Centers for Disease Control and Prevention (CDC) and the District of Columbia Department of Health (DOH). From March 30, 2020 to May 29, 2020, for example, the Mayor ordered all District residents to remain in their homes except for limited outings in an effort to enforce the CDC and DOH recommendations on social distancing, which called for people from different households to remain at least six feet apart. Mayor's Order No. 2020-054, March 30, 2020, at 3, 7–8, available at https://bit.ly/3bg2Goy; Mayor's Order No. 2020-067, May 27, 2020, at 3, available at https://bit.ly/33rIhZv.

In accordance with the Mayor's declaration and orders, both the D.C. Department of Corrections (DOC) and DCPS responded by imposing measures to protect the health and safety of the residents at the D.C. Jail. Among other things, DOC began prohibiting many outside visitors, suspended small-group programming, issued a medical stay-in-place order that limited each

resident to 30 minutes of time out of cell each day, and capped the total number of residents allowed out of their cells at any given time. *See* Dep't of Corrections, Coronavirus Protection, https://doc.dc.gov/page/coronavirus-prevention (last accessed July 2, 2021). Similarly, on March 13, 2020, the Chancellor of DCPS, Lewis D. Ferebee, announced that DCPS would modify operations, including a shift to distance learning, from March 16 to April 1, 2020. *See* Mar. 13, 2020 Letter from Chancellor Ferebee, available at https://bit.ly/3hgQE20 (last accessed July 2, 2021). Mayor Bowser then extended distance learning through the end of the school year, *see* Gov't of the District of Columbia, *Mayor Bowser Announces Learning at Home at DC Schools to Continue Through Rest of School Year*, Apr. 17, 2020, available at https://bit.ly/3eCdDmr (last accessed July 2, 2021), and again into the 2020-2021 school year, *see* Gov't of the District of Columbia, *School Year 2020-2021*, July 30, 2020, available at https://bit.ly/3hCsHRz (last accessed July 6, 2021).

## IV.      Education at IYP During the COVID Pandemic

Plaintiffs allege that in response to the COVID-19 pandemic, in-person classes were halted at IYP, and around March 25, 2020, students began receiving paper-based work packets. Am. Compl. ¶ 59. Students also received paper-based work packets for their related services, such as counseling. *Id.* ¶ 67. The packets were designed to contain two weeks' worth of work, *id.* ¶ 59, and although plaintiffs generally allege students only received the work packets sporadically, *id.* ¶ 70, plaintiff Malik Z. admits he received "work packets for each class every week," *id.* ¶ 190.

Beginning in the fall of 2020, a limited number of IYP teachers returned to the jail in person to drop off the paper-based work packets and check-in with students through their cell doors. *See id.* ¶ 86 (science teacher visited students "twice a month on the days of work packet delivery and pickup); *id*. ¶ 87 (special education English teacher "began visiting the students throughout the week and continues to visit them."); *id*. ¶ 198 (Malik Z.'s English teacher "has offered to answer

5

questions about the work packets"). At least one social worker also visited the D.C. jail over the winter. *Id.* ¶ 90. Around November 2020, DCPS began providing students with educational material on electronic tablets, which students could also use to communicate with their teachers. *See id.* ¶¶ 80, 82, 197. In the spring of 2021, modifications and restrictions necessitated by the pandemic were gradually eased throughout the District as positive cases decreased and vaccinations increased. *See, e.g.*, Mayor's Order No. 2021-038, March 17, 2021, available at https://coronavirus.dc.gov/page/stay-home; Mayor's Order No. 2021-060, April 26, 2021, available at https://coronavirus.dc.gov/page/stay-home; Dep't of Corrections, Coronavirus Protection, https://doc.dc.gov/page/coronavirus-prevention. In May 2021, the District resumed some in-person classroom instruction and related services at IYP. Am. Compl. ¶¶ 93, 94.

## V.      **Plaintiffs' Complaint and Procedural History**

Plaintiffs Charles H. and Malik Z. are IYP students currently housed at the D.C. Jail, and plaintiff Israel F. is a former IYP student who was released from custody on May 14, 2021.[4] *See* Am. Compl. ¶¶ 2, 15. Charles H. has been enrolled in IYP since February 26, 2019. *Id.* ¶ 123. On October 16, 2020, he filed an administrative due process complaint with OSSE concerning educational services during the pandemic and received a decision from an OSSE Office of Dispute Resolution Administrative Hearing Officer on January 11, 2021. *Id.* ¶¶ 136, 140. Israel F. enrolled at IYP on December 1, 2020. *Id.* ¶ 162. He filed an administrative due process complaint with OSSE on February 4, 2021, which he settled with DCPS and OSSE on May 14, 2021, the same day he was released from DOC custody. *Id.* ¶¶ 15, 181. Malik Z. enrolled in IYP in early March

---

[4]      All three plaintiffs have been permitted to proceed with this lawsuit using pseudonyms. The District refers to them here by their chosen pseudonyms throughout.

2021, and filed a due process complaint with OSSE on May 20, 2021. To date, he has not received a decision. *Id.* ¶ 16.

Plaintiffs filed their lawsuit on April 9, 2021. Compl. [4]. Plaintiffs moved to amend their complaint on June 1, 2021 [31], and the Court granted their motion on June 16, 2021, *see* Minute order of June 16, 2021. Plaintiffs bring six causes of action on behalf of themselves and all others similarly situated, against the District of Columbia, DCPS, and OSSE, alleging that the District's use of paper-based work packets during the pandemic, instead of in-person or synchronous remote instruction, resulted in a failure to materially implement students' IEPs because they did not provide specialized instruction and related services. Am. Compl. ¶ 6. Plaintiffs allege violations of the Individuals with Disabilities Education Act (IDEA) (Counts 1 and 2), the Americans with Disabilities Act (ADA) (Count 3), Section 504 of the Rehabilitation Act (Section 504) (Count 4), the D.C. Human Rights Act (Count 5), and the D.C. regulations that implement that IDEA (Count 6). Am. Compl. ¶¶ 216–252. All six counts allege the failure to provide them with a free appropriate public education (FAPE). *See id.* ¶¶ 219, 226, 232, 243, 247, 251. On April 12, 2021, plaintiffs moved for a preliminary injunction, which was granted on July 16, 2021 [37].

## LEGAL STANDARD

A case must be dismissed when a party fails to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although well-pleaded factual allegations must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011). Courts need not accept as true conclusory "assertions devoid of further factual

enhancement," *Iqbal*, 556 U.S. at 679, and "need not … accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations adopted) (internal quotation marks omitted).

In evaluating a motion under Rule 12(b)(6), the Court "may consider … the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Under Rule 12(b)(1), "[a] court must dismiss a case when it lacks subject matter jurisdiction." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014) (quoting *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 4 (D.D.C. 2007)). "A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C 2017). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that can be drawn from them." *Mykonos*, 59 F. Supp. 3d at 103 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The court need not, however, accept as true 'a legal conclusion couched as a factual allegation' or make inferences that are unsupported by the facts set out in the complaint." *Id*. (citations omitted) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)). Also, "in deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (citations omitted).

**ARGUMENT**

**I.**    **All Claims Against DCPS and OSSE Should Be Dismissed Because Both Agencies Are *Non Sui Juris.***

Plaintiffs have named DCPS and OSSE as defendants in this lawsuit. It is well settled, however, "that a department or agency of the District of Columbia cannot sue or be sued in its own name in the absence of a statutory provision to that effect." *Bynum v. District of Columbia*, 424 F. Supp. 3d 122, 128 (D.D.C. 2020) (quoting *Whitehead v. District of Columbia Child Support Servs. Div.*, 892 F. Supp. 2d 315, 319 (D.D.C. 2012)). Both DCPS and OSSE are District agencies and thus cannot sue or be sued. *See* D.C. Code §§ 38-171, 38-2601; *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 22–23 (D.D.C. 2012) (collecting cases and concluding "that DCPS is *non sui juris*—that is, non-suable as an entity separate from the District of Columbia"); *A.D. v. Creative Minds Int'l Pub. Charter Sch.*, Civil Action No. 18-2430 (CRC) (DAR), 2020 WL 6373329, at *3 (D.D.C. Sept. 28, 2020) (noting magistrate's conclusion that OSSE is *non sui juris*). Accordingly, all claims against DCPS and OSSE should be dismissed.

**II.**    **Plaintiffs Fail To Allege That OSSE Violated the IDEA (Counts 1 and 2).**

Alternatively, even if OSSE is a proper defendant, plaintiffs have failed to allege that OSSE violated the IDEA. In Count 1, plaintiffs allege that "defendants have failed to implement plaintiffs' and putative class members' IEPs by failing to provide them their mandated specialized instruction and related services" in violation of the IDEA. Am. Compl. ¶ 219. But DCPS, not OSSE, implements IEPs. *See District of Columbia v. Vinyard*, 971 F. Supp. 2d 103, 111 (D.D.C. 2013) (the LEA "will offer the child a FAPE, *i.e.*, an IEP"); 5-E DCMR § 3002.1(a) ("The LEA shall make a free appropriate education (FAPE) available to each child … ."). And, plaintiffs elsewhere recognize that "*DCPS* is required, pursuant to the IDEA, its federal implementing regulations, and District of Columbia law, to provide special education and related services to all

eligible District residents, including students with disabilities aged three through the semester in which they turn age 22." *Id*. ¶ 18 (emphasis added). Indeed, plaintiffs' Amended Complaint is replete with allegations that *DCPS's*—not OSSE's—failure to implement plaintiffs' IEPs caused their injuries.

While plaintiffs are correct that OSSE "oversees all federal education programs and related grants administrated in the District" and that OSSE "is responsible for ensuring that FAPE is made available to all eligible District residents with disabilities and that all programs administered by District agencies meet District educational standards," Am. Compl. ¶ 19, plaintiffs fail to cite any authority for their claim (and the District is aware of none) that an SEA such as OSSE is a proper defendant in actions where the student alleges that the LEA failed to implement their IEPs. Rather, "the sole avenue by which a plaintiff can establish the liability of an SEA under the IDEA" is to prove that the SEA was responsible under Section 1413(g)(1) to provide services directly to the plaintiff. *Saenz on behalf of V.S. v. Board of Education of Silver Consolidated Schools*, Civil Action No. 18-954, 2019 WL 1795539, at *7 (D.N.M. Apr. 24, 2019).

Here, plaintiffs nowhere allege that OSSE should have provided services directly to them under Section 1413(g)(1). Plaintiffs therefore cannot maintain a claim against OSSE for DCPS's alleged failure to implement their IEPs, and Count 1 should be dismissed with prejudice as against OSSE.

In Count 2, plaintiffs allege that OSSE violated Section 1412(a)(11) because it purportedly failed to monitor DCPS's provision of FAPE to IYP students. Am. Compl. ¶¶ 221–26. But, as the Second Circuit explained,

> Section 1412(a)(11) gives the SEA "general" supervisory responsibilities. As the district court stated, "while the IDEA clearly places a supervisory and monitoring role on the SEA, the specific requirements of that role (with the exception of requiring the formulation of policies and procedures), are

> not set forth in the statute. Instead, the SEA has discretion to work with the
> LEA to ensure compliance with the IDEA.

*A.A. ex rel. J.A. v. Philips*, 386 F.3d 455, 459 (2d Cir. 2004). That conclusion is fully supported

by federal regulations implementing the IDEA. The responsibilities of the SEA are focused on

high-level monitoring and policies and procedures and not on ensuring that each individual student

receives FAPE. *See, e.g.*, 34 C.F.R. § 300.149 ("The SEA is responsible for ensuring … [t]hat

each educational program for children with disabilities in the State … [m]eets the educational

standards of the SEA"); *id*. § 300.600 ("The primary focus of the State's monitoring activities must

be on … [i]mproving educational results and functional outcomes for all children with

disabilities.").

Courts have only allowed plaintiffs to pursue claims against an SEA for failure to monitor

under Section 1412(a)(11) when they have alleged a "systemic" violation of the SEA's obligation

to monitor compliance with the IDEA across the State. "A systemic claim is one which implicates

the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of

the education system itself in order to comply with the dictates of the [IDEA]." *Price v.*

*Commonwealth Charter Acad. Cyber Sch.*, Civil Action No. 17-1922, 2018 WL 1693352, at *7

(E.D. Pa. Apr. 6, 2018); *see also Easter v. District of Columbia*, 128 F. Supp. 3d 173, 178 (D.D.C.

2015). The IDEA "does not create a type of respondeat superior liability, imputing liability to

SEAs for every local deviation from the State-created standards." *Carnwath v. Grasmick*, 115 F.

Supp. 2d 577 (D. Md. 2000); *Beard v. Teska*, 31 F.3d 942, 954 (10th Cir. 1994) (noting that SEA

responsibility under the IDEA "does not turn every 'local educational agency' under the statute ...

into the agent of the 'State educational agency' as a matter of federal law, so that the latter

automatically becomes liable for all transgressions of the former").

OSSE, as the SEA, oversees the District's LEAs, including DCPS. DCPS operates over 117 individual schools and provides special education services to thousands of special education students across the District, yet plaintiffs' allegations concern (1) a small subset of those students (approximately 40) who are uniquely situated compared to every other special education student in the District by virtue of residing in an adult correctional facility with about 1,500 individuals, (2) a temporary situation, and (3) an unprecedented and unpredictable global health crisis. Those facts do not support a finding that the provision of educational services to adult students who are incarcerated is fundamentally broken such that it "requires restructuring of the education system itself in order to comply with the dictates of the IDEA." *See Price*, 2018 WL 1693352, at *7.

Plaintiffs have previously attempted to recast Count 2 as being about OSSE's purported failure to step in and provide educational services directly to IYP students because DCPS was "unable" to provide the services during the pandemic. Pls.' Reply in Supp. of Mot. for Prelim. Inj. [27] at 16. However, as explained above, OSSE is not required to provide services directly to students unless it "determines" that the LEA is "unable" to provide the services itself. *See, e.g.*, *H.E. v. Palmer*, 220 F. Supp. 3d 574, 586 (E.D. Pa. 2016) (finding LEA was unable to comply with its obligations when it "is insolvent, has ceased to exist, is in court supervised dissolution, and has insufficient assets to provide a FAPE or compensatory education to Plaintiffs"). Plaintiffs allege the contrary. Plaintiffs allege that "DCPS made a deliberate decision to eliminate direct instruction for IYP students and provide them only with assigned work packets." Am. Compl. ¶ 60. Therefore, even if DCPS's alleged inability to provide FAPE to plaintiffs could support a failure to monitor claim (it cannot), plaintiffs repeatedly allege that DCPS *was* able to provide them with FAPE, but did not do so.

Because plaintiffs have failed to allege that OSSE is systemically failing to ensure compliance with the IDEA across the District, the claims against OSSE should be dismissed.

**III.** **Plaintiffs Fail To Allege a Violation of Section 504, the ADA, and the DCHRA Because They Do Not Allege That Their Disabilities Were a Reason Why They Did Not Receive FAPE (Counts 3-5).**

In addition to the IDEA, plaintiffs assert claims under Section 504, the ADA, and the DCHRA. *See* Am. Compl. ¶¶ 227–47. "Unlike the IDEA, the Rehabilitation Act, ADA, and DCHRA may permit recovery of compensatory damages and other remedies." *Reid-Witt*, 486 F. Supp. 3d at 6. "While the IDEA addresses incorrect or erroneous special education treatment, the ADA, Rehabilitation Act, and DCHRA address discrimination against the disabled student." *Id*. "Because the IDEA's administrative process is the primary vehicle for adjudicating educational disputes, courts require plaintiffs to show something more than a mere failure to provide the free and appropriate education required by the IDEA to state a claim under the other statutes." *Id.* at 6. "Only in the rarest of cases will a plaintiff be able to prove that a school system's conduct is so persistent and egregious as to warrant such a unique remedy not otherwise provided for by the IDEA itself." *Id.* at 9. This is not such a case.

Under Section 504, plaintiffs must allege that they were "discriminated against solely by reason of [their] handicap." *Id*. at 6. Similarly, the ADA requires that the student's disability be "a motivating factor in the alleged discrimination." *Id.* at 11 (explaining that "something more than a mere violation of the IDEA is necessary in order to show a violation of the ADA"). Plaintiffs' DCHRA claims are subject to the same standards as their ADA claims. *Id.*

But here, plaintiffs do not allege that their disabilities had anything to do with the services that they received or did not receive. For example, plaintiffs do not allege that non-disabled students at the D.C. Jail received greater services, nor do they allege any animus by anyone at DCPS or DOC towards disabled students. Plaintiffs instead focus on comparing the services they

13

received to those received by "tens of thousands of [non-incarcerated students]" who are enrolled in DCPS schools and able to "learn[] at home." *See* Am. Compl. ¶ 96. While the educational opportunities for students, including special education students, attending other DCPS schools were different from those for students learning at the D.C. Jail during the pandemic, the sole cause for the difference stemmed from the IYP students' presence in an adult jail, not from plaintiffs' status as students with disabilities.

Further, plaintiffs have not alleged conduct that is "so persistent and egregious" to warrant a unique remedy not provided for by the IDEA itself. Plaintiffs' claims are limited to the District's response to an unprecedented global pandemic in a setting (the D.C. Jail) that presented incredible challenges to protecting the health and safety of its residents, including plaintiffs. As alleged by plaintiffs, the District did not ignore its responsibilities to implement plaintiffs' IEPs. Plaintiffs allege that the District provided them with paper-based work packets, investigated and attempted to provide virtual instruction, and resumed some in-person instruction in the fall of 2020. Am. Compl. ¶¶ 73–92. Those allegations do not show a persistent and egregious course of conduct. Plaintiffs also allege that Charles H. brought a due process complaint against the District and was awarded significant relief, *id*. ¶¶ 136–141, which undermines any argument by plaintiffs that the relief available to them under the IDEA is inadequate.

Because plaintiffs' own allegations contradict the notion that the failure to implement their IEPs was related in any way to their disabilities, let alone "solely by reason" of it, and because any such failure would not warrant a unique remedy not otherwise provided for by the IDEA even if it had occurred, plaintiffs' Section 504, ADA, and DCHRA claims should be dismissed.

**IV.**     **Plaintiffs Cannot Assert a Claim for an Alleged Violation of the District's Regulations Implementing the IDEA (Count 6).**

In Count 6, plaintiffs allege that the District's failure to implement their IEPs violates 5-E D.C.M.R. § 3002.1(a). *See* Am. Compl. ¶¶ 248–252. Section 3002.1(a), however, does not create a cause of action separate from the relevant statutes. *Cf. Frederick v. Hillyer*, 82 F. Supp. 3d 435, 440 (D.D.C. 2015) ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."). Section 3002.1(a) merely states that "[t]he LEA shall make a free appropriate public education (FAPE) available to each child … ." Count 6 is also entirely duplicative of Count 1. "Claims are duplicative when they stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 59 (D.D.C. 2015) (dismissing count two because it "does not present any legal or factual theories that are not already subsumed in count one"); *accord Husain v. Smith*, Civil Action No. 15-708, 2016 WL 4435177, at *5 (D.D.C. Aug. 19, 2016) (dismissing claim as duplicative of underlying discrimination claim). Even if Count 6 states a claim against the District and DCPS, as explained in Section II, it does not state a claim against OSSE because OSSE is not responsible under the relevant statutes or regulations for implementing plaintiffs' IEPs.

**V.**     **Israel F.'s Claims Are Moot in Light of His Administrative Settlement.**

This action currently includes three named plaintiffs. However, Israel F. cannot continue as a plaintiff in this case because his claims are now moot because he has fully and finally settled his claims against the District.

Every plaintiff in federal court must meet the constitutional minimum for Article III standing by showing an injury, causation and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Even when a plaintiff has standing at a case's outset, a claim may become

moot whenever "events have so transpired that the [court's] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (*en banc*) (internal quotation marks omitted); *see also Camreta v. Greene*, 563 U.S. 692, 701 (2011). A plaintiff must thus have an active case or controversy to seek any form of relief, including a declaratory judgment. *See Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985) ("The Article III case or controversy requirement is as applicable to declaratory judgments as it is to other forms of relief.").

Plaintiff Israel F.'s claims are now moot because he has settled the administrative claims underlying his claims here, was released from custody on May 14, 2021, and is no longer enrolled in IYP. *See* Am. Compl. ¶¶ 149, 182, 183; Sealed Filing [34-3]. Even assuming the allegations about Israel F.'s past incarceration are true, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also Conyers*, 765 F.2d at 1127 (applicable also to declaratory relief). The allegations about Israel F. not receiving adequate instruction within IYP do not represent an ongoing controversy, as Israel F. is no longer enrolled in IYP at all, there is no allegation that he will ever reenroll in IYP, and has waived all claims arising from the facts alleged here. *See* Am. Compl. ¶ 182.

## VI.      <u>Malik Z. Has Not Exhausted His Administrative Remedies.</u>

A plaintiff must exhaust all administrative remedies before filing suit under the IDEA—and before filing suit under the ADA, Section 504, or state-level laws such as the DCHRA if the suit alleges a failure to provide FAPE. 20 U.S.C. § 1415(*l*); *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 754 (2017). Indeed, Malik Z., like the other plaintiffs, primarily alleges the failure to provide FAPE. *See* Compl. ¶¶ 219, 224, 232, 243 (incorporating allegations from paragraph 232), 247 (same).

Before bringing such a claim, "a plaintiff must first submit her case to an IDEA hearing officer" via a due process complaint. *Fry*, 137 S. Ct. at 754; 20 U.S.C. § 1415(f). This exhaustion requirement applies in all circumstances except "where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 326–27 (1988). That exception is "narrowly construed," and exhaustion under the IDEA "may be waived only in the most exceptional circumstances." *Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 61 (D.D.C. 2010) (internal quotation marks omitted) (citing *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 432 (D.C. Cir. 1994)). The plaintiff bears the burden of showing that futility or inadequacy applies. *Id.* (citing *Honig*, 484 U.S. at 326–27). In particular, no *per se* exception exists for claims alleging systemic violations. *Id.* at 61–62. Even as to such claims, the question is simply whether exhaustion of administrative remedies would be futile or inadequate given the allegations raised. *Id.* at 62.

Requiring Malik Z. to have exhausted his administrative remedies is not futile—as is made clear by the outcome of Israel F.'s administrative proceeding in this very case. Israel F. was able to settle his administrative due process complaint, and plaintiffs do not allege that the relief he received in that settlement was not adequate. *See* Am. Compl. ¶ 182. Malik Z.'s substantively similar claims may likewise get resolved through the administrative process, which he alleges he initiated on May 20, 2021. *Id.* ¶ 207. At the very least, Malik Z. cannot meet his burden to show that his administrative exhaustion would be futile or inadequate. *See Douglass*, 750 F. Supp. 2d at 61. Malik Z.'s claims must therefore be dismissed until they are exhausted and raised properly to this Court.

## CONCLUSION

For the foregoing reasons, the Court should dismiss in part plaintiffs' Amended Complaint with prejudice.

Dated:  July 7, 2021.            Respectfully submitted,

                                        KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Deputy Attorney General
Public Interest Division

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
MICAH BLUMING [1618961]
HONEY MORTON [1019878]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 805-7512
Fax: (202) 730-1470
richard.sobiecki@dc.gov

*Counsel for Defendants*

18