# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHARLES H., ISRAEL F., AND MALIK Z.
on behalf of themselves and all others
similarly situated,

     *Plaintiffs*,

    v.

THE DISTRICT OF COLUMBIA, *et al.*,

     *Defendants*.

Civil Action No. 1:21-cv-00997 (CJN)

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFFS' SECOND AMENDED COMPLAINT

Kaitlin Banner, DC Bar No. 1000436
Margaret Hart, DC Bar No. 1030528
Jonathan Smith, DC Bar No. 396578
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
700 14th Street, NW, Suite 400
Washington, DC 20005
(202) 319-1017
kaitlin_banner@washlaw.org;
margaret_hart@washlaw.org;
jonathan_smith@washlaw.org

Kathleen L. Millian, DC Bar No. 412350
Zenia Sanchez Fuentes, DC Bar No. 500036
Stephanie A. Madison, DC Bar No. 1025581
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009-4422
(202) 682-2100, ext. 8478
kmillian@tpmlaw.com;
zsanchez@tpmlaw.com;
smadison@tpmlaw.com

Ifetayo Belle, DC Bar No. 1601686
Sarah Comeau, DC Bar No. 1012980
SCHOOL JUSTICE PROJECT
1805 7th Street NW, 7th Floor
Washington, DC 20001
(202) 630-9969
tbelle@sjpdc.org;
scomeau@sjpdc.org

*Counsel for Plaintiffs*

September 9, 2021

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD................................................................................................... 4

I . OSSE VIOLATED THE IDEA BY FAILING TO ENSURE THE
PROVISION OF FAPE TO THE PLAINTIFF CLASS......................................... 5

    A. THE DISTRICT IS LIABLE FOR OSSE'S FAILURE TO
MONITOR THE PROVISION OF FAPE TO IYP STUDENTS
BY DCPS (CLAIM 2) ................................................................... 5

        1. OSSE's Obligations Are Not Limited to High-Level
Monitoring of DCPS But Encompass Ensuring that Each
IYP Student Receives a FAPE ....................................... 6

        2. Plaintiffs Sufficiently Allege Facts to Support a Systemic
Claim Under IDEA Against the District for OSSE's Failure
to Monitor and Enforce the Provision of FAPE by DCPS to
IYP Students ................................................................. 7

           (a) Plaintiffs Allege a Broad Structural Policy that
Caused Their Injury ......................................... 8

           (b) The Cases Cited by the District Do Not Support Its
Position that Plaintiffs Have Failed to Allege
Systemic Claims............................................... 11

    B. THE DISTRICT IS LIABLE FOR OSSE'S FAILURE TO
PROVIDE FAPE TO IYP STUDENTS (CLAIM 1)............................... 13

        1. Plaintiffs Sufficiently Allege that OSSE, as the SEA, Is
Liable for Denying FAPE to Them As a Result of its
Failure to Monitor and Intervene to Correct DCPS's
Actions ......................................................................... 13

        2. Plaintiffs Sufficiently Allege that OSSE, as the SEA,
Violated Section 1412 of IDEA .................................... 17

        3. Charles H. Administratively Exhausted Claim 1 Against
OSSE............................................................................ 18

II . PLAINTIFFS HAVE STATED A VALID CLAIM FOR THE
DISTRICT'S VIOLATION OF DC REGULATION 5-E D.C.M.R. §
3002.1(a) (CLAIM 6)............................................................................ 19

III . PLAINTIFFS SUFFICIENTLY ALLEGE FACTS SUPPORTING THEIR CLAIMS OF DISCRIMINATION UNDER SECTION 504, THE ADA, AND THE DCHRA (CLAIMS 3, 4, and 5)..........................................................22

    A. BECAUSE PLAINTIFFS ALLEGE CONDUCT BY THE DISTRICT THAT IS MUCH MORE EGREGIOUS THAN A MERE FAILURE TO PROVIDE STUDENTS WITH FAPE, THEY HAVE PROPERLY PLED A VIOLATION OF SECTION 504, THE ADA, AND THE DCHRA.........................................................23

    B. PLAINTIFFS ALLEGE DISCRIMINATION AGAINST THEM BY THE DISTRICT BASED SOLELY ON THEIR DISABILITIES ........................................................................................28

IV . THE CLAIMS OF PLAINTIFF MALIK Z. SHOULD NOT BE DISMISSED BECAUSE THE ADMINISTRATIVE EXHAUSTION REQUIREMENT FOR A CLASS ACTION SUIT UNDER THE IDEA IS SATISFIED....................................................................................................34

    A. IN A CLASS ACTION SUIT, ONLY ONE NAMED PLAINTIFF IS REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, AND THIS REQUIREMENT IS SATISFIED HERE .............................34

    B. IN THE ALTERNATIVE, EXHAUSTION IS NOT REQUIRED BECAUSE IT WOULD BE FUTILE AND INADEQUATE .................35

        1. Resort to Due Process Procedures Would be Futile ....................36

            (a) Agency Expertise Would Not Assist the Court ...............36

            (b) Administrative Proceedings Would Not Provide the District with the Opportunity to Take Corrective Action...............................................................................37

            (c) Plaintiffs' Systemic Claims Can Only Be Addressed Through Injunctive Relief in this Court............................38

        2. The District Has an Unlawful Policy and Practice of General Applicability....................................................................39

        3. Relief Is Unavailable Through Administrative Procedures ..........40

V . ISRAEL F. SHOULD NOT BE DISMISSED AS A PLAINTIFF.....................42

VI . ALL CLAIMS ARE NOW PROPERLY PLED AGAINST THE DISTRICT....................................................................................................44

CONCLUSION...................................................................................................45

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.U. v. D.C.*,
  Civil Action No. 19-3512, 2020 WL 4754619 (D.D.C. July 13, 2020) ..........................30, 34

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)..................................................................................................................20

*Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977)..................................................................................................................43

*Ascent: a School for Individuals with Autism v. New York State Educ. Dep't*,
  Civil Action No. 17-6866, 2019 WL 2439431 (E.D.N.Y. Mar. 4, 2019)................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................4, 26

*Atherton v. D.C. Office of Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) ...................................................................................................4

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) .................................................................................................4

*Beard v. Teska*,
  31 F.3d 942 (10th Cir. 1994) ...................................................................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................4, 26

*Beth V. by Yvonne V. v. Carroll*,
  87 F.3d 80 (3d Cir. 1996)..........................................................................................................40

*Carnwath v. Grasmick*,
  115 F. Supp. 2d 577 (D. Md. 2000) ..........................................................................................11

*D.L. v. D.C.*,
  194 F. Supp. 3d 30 (D.D.C. 2016) .........................................................................................6, 7

*D.L. v. D.C.*,
  450 F. Supp. 2d 11 (D.D.C. 2006) ...................................................................35, 36, 38, 39

*D.L. v. D.C.*,
  450 F. Supp. 2d 21 (D.D.C. 2006) .......................................................................23, 25, 39

*David D. v. Dartmouth Sch. Comm.*,
775 F.2d 411 (1st Cir. 1985) ................................................................21

*Dewitt v. Proctor Hosp.*,
517 F.3d 944 (7th Cir. 2008) ...............................................................30

*Easter v. District of Columbia*,
128 F. Supp. 3d 173 (D.D.C. 2015) .............................8, 12, 30, 38, 39

*Frederick v. Hillyer*,
82 F. Supp. 3d 435 (D.D.C. 2015) ........................................................20

*Fry v. Napoleon Cmty. Schs.*,
137 S. Ct. 743 (2017) ...........................................................................34

*Gadsby by Gadsby v. Grasmick*,
109 F.3d 940 (4th Cir. 1997) ....................................................6, 14, 16

*H.P. by and through W.P. v. Naperville Community Unit School District*,
910 F.3d 957 (7th Cir. 2018) ...............................................................33

*Hartman v. Duffy*,
88 F.3d 1232 (D.C. Cir. 1996) .............................................................34

*Heldman v. Sobol*,
962 F.2d 148 (2d Cir. 1992) ...........................................................39, 40

*Honig v. Doe*,
484 U.S. 305 (1988) .............................................................................35

*J.M. by & Through Mata v. Tennessee Dep't of Educ.*,
358 F. Supp. 3d 736 (M.D. Tenn. 2018) ..............................................39

*Jackson v. District of Columbia*,
826 F. Supp. 2d 109 (D.D.C. 2011) .....................................................31

*Jose P. v. Ambach*,
669 F.2d 865 (2d Cir. 1982) ................................................................40

*K.W. v. D.C.*,
385 F. Supp. 3d 29 (D.D.C. 2019) .......................................................38

*L.H. by D.R. v. Tennessee Dep't of Educ.*,
No. 19-00517, 2019 WL 5898092 (M.D. Tenn. Nov. 12, 2019)............20

*L.L. By & Through B.L. v. Tennessee Dep't of Educ.*,
2019 WL 653079 (M.D. Tenn. Feb. 15, 2019) ..................................7, 12

*Lejeune v. Khepera Charter Sch.*,
    327 F. Supp. 3d 785 (E.D. Pa. 2018) .................................................................18

*Lovell v. Chandler*,
    303 F.3d 1039 (9th Cir. 2002) .........................................................................33

*M.J. by and through S.J. v. Akron City School District Board of Education*,
    1 F.4th 436 (6th Cir. 2021) ............................................................................31

*Massey v. D.C.*,
    400 F. Supp. 2d 66 (D.D.C. 2005) .................................................................38

*McKart v. United States*,
    395 U.S. 185 (1969) .......................................................................................36

*Monahan v. Nebraska*,
    645 F.2d 592 (8th Cir. 1981) .........................................................................39

*Morgan Hill Concerned Parents Assoc. v. California Dep't of Educ.*,
    2013 WL 1326301 (E.D. Cal. Mar. 29, 2013) ................................................7

*Mountain States Legal Foundation v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996) .......................................................................43

*Murphy v. Arlington Central School District Board of Education*,
    297 F.3d 195 (2d Cir. 2002) ..........................................................................40

*Mykonos v. United States*,
    59 F. Supp. 3d 100 (D.D.C. 2014) ...................................................................4

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004) .....................................................................38, 39

*New Mexico Association for Retarded Citizens v. State of New Mexico*,
    678 F.2d 847 (10th Cir. 1982) .......................................................................39

*Pappas v. D.C.*,
    2021 WL 106468 (D.D.C. Jan. 12, 2021) ......................................................35

*Pierce v. District of Columbia*,
    128 F. Supp. 3d 250 (D.D.C. 2015) ...............................................................32

*Price v. Commonwealth Charter Academy Cyber School*,
    2018 WL 1693352 (E.D. Pa. 2018) ...............................................................11

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
    795 F.2d 90 (D.C. Cir. 1986) .........................................................................41

*Reid-Witt on behalf of C.W. v. D.C.*,
   486 F. Supp. 3d 1 (D.D.C. 2020) ...................................................22, 23, 33

*B.R. ex rel. Rempson v. District of Columbia*,
   524 F. Supp. 2d 35 (D.D.C. 2007) ..................................................28

*Richardson v. Bledsoe*,
   829 F.3d 273 (3d Cir. 2016)...........................................................44

*Ruhl v. Ohio Health Dep't*,
   725 Fed. Appx. 324 (6th Cir. 2018), (Def. Mem. 24 n. 7)...............30

*S.W. by J.W. v. Warren*,
   528 F. Supp. 2d 282 (S.D.N.Y 2007).............................................28

*Saenz on behalf of V.S. v. Board of Education of Silver*
   *consolidated Schools*, 2019 WL 1795539 (D.N.M. Apr. 24, 2019) ....................18

*Michael C. ex rel. Stephen C. v. Radnor Tp. Sch. Dist.*,
   202 F.3d 642 (3d Cir. 2000)...........................................................20

*Tooley v. Napolitano*,
   556 F.3d 836 (D.C. Cir. 2009) ........................................................4

*Walker v. D.C.*,
   157 F. Supp. 2d 11 (D.D.C. 2001) ..................................................22, 23

*Wilson v. Gordon*,
   822 F.3d 934 (6th Cir. 2016) ..........................................................44

**Federal Statutes**

20 U.S.C. § 1401(9)(D).....................................................................15

20 U.S.C. § 1412(6) ........................................................................14

20 U.S.C. § 1412(11) .......................................................................15

20 U.S.C. § 1412(a) ..........................................................................7

20 U.S.C. § 1412(a)(1)......................................................................32

20 U.S.C. § 1412(a)(1)(A) ..................................................................6

20 U.S.C. § 1412(a)(1)(B)(ii) ............................................................10

20 U.S.C. § 1412(a)(11)..................................................................5, 16

20 U.S.C. § 1412(a)(11)(A)(ii)(II)........................................................6

20 U.S.C. § 1413(g), and (3)......................................................................................13

20 U.S.C. § 1415(l)....................................................................................................34

29 U.S.C. § 794(a)......................................................................................................22

42 U.S.C. § 12132......................................................................................................22

**Federal Regulations**

22 C.F.R. § 13.3..........................................................................................................20

34 C.F.R. § 104.4..................................................................................................29, 32

34 C.F.R. § 104.33(b)(1)............................................................................................26

34 C.F.R. § 104.33(b)(2)............................................................................................30

34 C.F.R. § 300, *et seq.*..............................................................................................5

34 C.F.R. § 300.2(b)(1)(iv).........................................................................................32

34 C.F.R. § 300.101....................................................................................................21

34 C.F.R. § 300.102(a)(2)(i).......................................................................................10

34 C.F.R. § 300.507(a)(1)...........................................................................................21

34 C.F.R. § 300.516(a)................................................................................................21

34 C.F.R. § 300.600(b)(2)........................................................................................6, 15

34 C.F.R. § 300.600(e)................................................................................................15

34 C.F.R. § 300.713(b)................................................................................................10

**Federal Rules of Civil Procedure**

Rule 12(b)(1)...........................................................................................................4, 42

Rule 12(b)(6)................................................................................................................4

Rule 23(b)(3)..............................................................................................................44

**State Statutes**

D.C. Code § 38–172(a)..............................................................................................44

D.C. Code § 38–2601(a)............................................................................................44

**State Regulations**

5-E D.C.M.R. § 3002.2 ................................................................................................................10

5-E D.C.M.R § 3002.2(b) ...........................................................................................................32

5-E D.C.M.R. § 3002.1(a)....................................................................................................3, 19, 21

## INTRODUCTION

On April 9, 2021, plaintiffs Charles H. and Israel F. brought a putative class action suit on behalf of approximately 40 students with disabilities at the Inspiring Youth Program (IYP) at the DC Jail complex, all of whom have Individualized Education Programs (IEPs), against the District of Columbia, the Office of the State Superintendent of Education (OSSE), and the District of Columbia Public Schools (DCPS) ("defendants"), to challenge their failure to provide special education and related services to IYP students.  Class Action Complaint for Declaratory, Injunctive, and Other Relief, ECF No. 4.  Plaintiffs brought claims under the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and the District of Columbia Human Rights Act (DCHRA).

On April 12, 2021, plaintiffs moved for a preliminary injunction (ECF No. 12) which defendants the District, OSSE, and DCPS (collectively "the District") opposed (ECF No. 23).  The Court granted the preliminary injunction, provisionally certified the class, and required the District to provide education and related services to the plaintiff class in conformance with their IEPs within 15 days.  ECF No. 37 (Order); ECF No. 38 (Memorandum Opinion).  The District has submitted three status reports, none of which show that defendants are fully complying with the preliminary injunction and providing plaintiffs with the specialized education and related services required in their IEPs.  *See* Defendants' Status Report, July 1, 2021, ECF No. 41, p. 2; Defendants' Status Report, August 2, 2021, Corrected Exhibit A, ECF No. 52-3, Defendants' Status Report, September 1, 2021, Exhibit A, ECF No. 64-2.

On June 1, 2021, plaintiffs sought leave to amend their complaint, which *inter alia*, added named plaintiff Malik Z., which the Court granted in a Minute Order on June 16, 2021.  Following a motion by the District to partially dismiss plaintiffs' amended complaint, *see* ECF No. 43, plaintiffs sought and were granted leave to amend their complaint to clarify that all claims ran

against the District of Columbia.  *See* Second Amended Class Action Complaint for Declaratory, Injunctive, and Other Relief, ECF No. 44-3 ("2d Am. Compl."); Minute Order, August 5, 2021. At the District's suggestion, the Court then denied the District's Motion to Partially Dismiss the Amended Complaint as moot.  Minute Order, August 18, 2021.  The District now moves to partially dismiss plaintiffs' Second Amended Complaint.  ECF No. 60, August 26, 2021.  In support of their motion, the District submits a Memorandum of Points and Authorities in Support of Motion to Dismiss in Part Plaintiffs' Second Amended Complaint, ECF No. 60-1, August 26, 2021 ("Def. Mem."),[1] seeking to dismiss all but Claim 1, alleging that it violated the IDEA.

None of plaintiffs' six claims should be dismissed, and the case should proceed against the District of Columbia.[2]  First, the District moves to dismiss two claims based on OSSE's denial of a free and appropriate education (FAPE) to the plaintiffs (Claim 1), on the ground that OSSE cannot be directly liable for DCPS's failure to implement IEPs, and OSSE's failure to monitor DCPS's provision of FAPE to IYP students (Claim 2), on the ground that OSSE's obligations are limited to high-level monitoring.  Because OSSE's obligations are not limited to high level monitoring but also include ensuring that the IDEA's substantive requirements are met for all students, and plaintiffs sufficiently allege facts that OSSE failed to do so, the Court should not dismiss these claims.

---

[1] References to page numbers in defendants' Memorandum of Points and Authorities are to the PDF page number added by the Court's ECF filing system at the top of the page.

[2] The District moves to dismiss the District of Columbia's State Educational Agency (SEA), OSSE, and the District of Columbia's Local Educational Agency (LEA) for IYP, DCPS, as defendants on the grounds that those agencies do not have legal status to sue or be sued.  Def. Mem. 9. Because plaintiffs moved and were granted leave to file a Second Amended Complaint to set forth that defendant the District of Columbia is responsible for all violations of IDEA and the other claims pled in the complaint, all claims are now properly against the District of Columbia and DCPS and OSSE need not remain as defendants.  *See* 2d Am. Compl., paras. 216-258.

Second, the District moves to dismiss plaintiffs' claim under District of Columbia regulation 5-E D.C.M.R. § 3002.1(a) (Claim 6) on the ground that plaintiffs cannot assert a cause of action apart from the relevant statutes. The Court should not dismiss this claim because the IDEA itself provides a cause of action for violations of state regulations implementing IDEA.

Third, the District moves to dismiss plaintiffs' claims under Section 504 of the Rehabilitation Act, the ADA, and the DCHRA (Claims 3-5) on the ground that plaintiffs have not adequately alleged violations of those statutes. Plaintiffs have adequately alleged that the District violated these laws because plaintiffs allege serious misconduct by the District that is more than a mere failure to provide FAPE and because defendants discriminated against the plaintiffs solely because of their disabilities by denying them special education and related services in conformity with their IEPs which are designed to meet their needs as adequately as the needs of non-disabled students.

Fourth, the District moves to dismiss plaintiff Malik Z. for failure to exhaust his administrative remedies. The Court should not dismiss Malik Z. as a plaintiff because the administrative exhaustion requirement for a class action suit under IDEA is satisfied by plaintiff Charles H. and, in the alternative, because exhaustion by Malik Z. is not required because it would be futile and inadequate to address his claims.

Finally, the District moves to dismiss plaintiff Israel F., arguing that his claims are moot because he reached an administrative settlement with DCPS after the complaint was filed in this lawsuit. Israel F. should not be dismissed. He has a significant personal stake in the litigation now that he has returned to the DC jail and reenrolled in IYP and, under well-established law, since another plaintiff has standing, he can continue to represent the interests of the class despite the settlement of his individual claim.

3

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), courts must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss." *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). A claim is facially plausible when it contains allegations that, if proven, would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 663). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it is not a "probability requirement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court is required to accept the sufficiency of the plaintiff's allegations as true. "The allegations of the complaint should be construed favorably to the pleader" and "plaintiffs must be given every favorable inference that can be drawn from them." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v Scherer*, 104 S. Ct. 3012 (1984)).

4

**ARGUMENT**

**I.  OSSE VIOLATED THE IDEA BY FAILING TO ENSURE THE PROVISION OF FAPE TO THE PLAINTIFF CLASS**

Plaintiffs adequately assert claims against the District for OSSE's failure to ensure FAPE to the plaintiff class under two distinct theories; first, OSSE failed to appropriately monitor the provision of FAPE to IYP students and these failures were systemic (Claim 2), and second, OSSE failed to provide FAPE as required by the plain language of the IDEA (Claim 1).  The District's Motion to Dismiss Claims 1 and 2 based on OSSE's failures should be denied.

**A.  THE DISTRICT IS LIABLE FOR OSSE'S FAILURE TO MONITOR THE PROVISION OF FAPE TO IYP STUDENTS BY DCPS (CLAIM 2)**

Under 20 U.S.C. § 1412(a)(11) and its implementing regulations, 34 C.F.R. § 300, *et seq.*, OSSE, as the state education agency (SEA) in the District, is responsible for ensuring that FAPE is made available to all eligible District residents with disabilities and that all programs administered by District agencies meet District educational standards.   Claim 2 of plaintiffs' Second Amended Complaint alleges, in part, that:

> Defendants OSSE and the District have failed to monitor and enforce defendant DCPS's LEA requirements.  This failure has resulted in a substantive denial of FAPE to plaintiffs and the putative class members.

2d Am. Compl., para. 228.  The District argues that Claim 2 against OSSE for failure to monitor should be dismissed because: (1) OSSE has no obligation to monitor individual implementation of IEPs across the District; and (2) while OSSE can be held liable for failure to monitor under 20 U.S.C. §1412(a)(11), plaintiffs do not allege sufficient facts to support a claim of a systemic violation by OSSE.  Def. Mem. 19-21.  Based on the plain language of the IDEA, its implementing regulations, and the case law, plaintiffs have adequately alleged that OSSE violated the IDEA.

1.      **OSSE's Obligations Are Not Limited to High-Level Monitoring of DCPS But Encompass Ensuring that Each IYP Student Receives a FAPE**

The District claims that OSSE, as the SEA, "has no obligation to monitor individual implementation of IEPs across the District such that any failure to fully implement an IEP by an LEA also constitutes a failure to monitor by OSSE." Def. Mem. 19.  The District is mistaken.  The IDEA itself requires:

> The State educational agency is responsible for ensuring that—. . . all educational programs for children with disabilities in the State, including all such programs administered by any . . . local agency— . . .  meet the educational standards of the State educational agency.

20 U.S.C. § 1412(a)(11)(A)(ii)(II).  Federal regulations similarly provide that the SEA must "ensure[] that public agencies meet the program requirements under Part B of the Act, with a particular emphasis on those requirements most closely related to improving educational results for children with disabilities."  34 C.F.R. § 300.600(b)(2) (emphasis added).  Under Part B of IDEA, the SEA must ensure that students with disabilities are receiving a free and appropriate education, meaning special education and related services in conformity with an IEP.  20 U.S.C. § 1412(a)(1)(A) (to receive federal funds, a State must make FAPE available to all students with disabilities aged 3-21).

Indeed, because "it is the SEA's responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education . . . it seems clear that an SEA may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented." *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997) (emphasis added).  As this Court explained in *DL v. D.C*:

> The state's role amounts to more than creating and publishing some procedures and then waiting for the phone to ring. The IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts.... The state must assure that in fact the requirements of the IDEA are being fulfilled.  [emphases added]

194 F. Supp. 3d 30, 84 (D.D.C. 2016) (cleaned up), *affirmed*, 860 F. 3d 713 (D.C. Cir. 2017). Numerous courts have held that the State may be held liable for failure to comply with its duty to ensure that substantive requirements of IDEA are implemented.  In *DL*, this Court concluded, *inter alia*, that the District violated 20 U.S.C. § 1412(a) by "fail[ing] to have in effect policies and procedures to ensure that a FAPE is available to" the plaintiff class.  *Id*. at 91.  *See also L.L. By & Through B.L. v. Tennessee Dep't of Educ.,* 2019 WL 653079, at *4 (M.D. Tenn. Feb. 15, 2019) (collecting cases in several circuits that rejected the argument that only the LEAs bear responsibility for violations of FAPE); *Morgan Hill Concerned Parents Assoc. v. California Dep't of Educ.*, 2013 WL 1326301, at *10-11 (E.D. Cal. Mar. 29, 2013) (plaintiffs sufficiently alleged facts that the SEA had not ensured FAPE due to its failure to monitor, investigate, and enforce the IDEA).  Here, OSSE, as the SEA, had a duty to ensure that DCPS was providing FAPE to the students at IYP.

### 2. Plaintiffs Sufficiently Allege Facts to Support a Systemic Claim Under IDEA Against the District for OSSE's Failure to Monitor and Enforce the Provision of FAPE by DCPS to IYP Students

In their Second Amended Complaint, plaintiffs allege that as of March 24, 2020, the District, DCPS, and OSSE have, through their policy and practice of providing work packets in lieu of direct instruction and related services, systematically failed to implement the IEPs of students with disabilities at the DC Jail complex, resulting in a wholesale denial of FAPE to the students.  2d Am. Compl., paras. 1-12, 20-21, 42-95.  The District argues that OSSE cannot be liable under Claim 2 of plaintiffs' Second Amended Complaint for failing to satisfy its monitoring obligations under IDEA because "plaintiffs have not identified any systemic issues that cause their IEPs to not be implemented."  Def. Mem. 19.  The District is mistaken.

### (a)  Plaintiffs Allege a Broad Structural Policy that Caused Their Injury

The District claims that "plaintiffs fail to identify any broad, structural issues that caused their alleged injury" because they allege "at most, that they are a small group of students who were uniquely situated compared to all other students and that, as a result of that unique status, implementation of their IEPs was delayed during the pandemic." Def. Mem. 19-20.  However, the fact that IYP has approximately 40 students at a time, 2d Am. Compl., para. 51, does not shelter OSSE from liability: the number of students in the program does not affect whether the claim is systemic.  Plaintiffs need not allege that the violations affect all or even most of the special education students across the District to make out a systemic claim.  Indeed, plaintiffs challenge a schoolwide policy affecting all students, *id.*, paras. 20, 56-62, a material failure to implement significant and essential provisions in the IEPs of IYP students—the wholesale denial of FAPE—for well over a year, *see id.*, paras. 56-95.  This failure is not, as the District insists, a mere "delay." *See* Def. Mem. 19.

In *Easter v. District of Columbia,* 128 F. Supp. 3d 173, 175 (D.D.C. 2015)*,* the plaintiff, an adult student eligible for special education services, sued the District on behalf of himself and all others similarly situated, alleging an IDEA violation because of the District's failure to identify a local education agency (LEA) to provide him with special education while detained at Alternative Solutions for Youth, a secure facility managed by the District of Columbia Department of Youth Rehabilitation Services.  The District moved to partially dismiss the complaint, arguing that the plaintiffs' systemic claim was not "cognizable under the IDEA." *Id*. at 176.  However, the court held that the plaintiff had "sufficiently stated a systemic violation of the IDEA" because it was "precisely the type of issue that cannot be addressed on a student-by-student basis during due process hearings, but is better addressed by seeking injunctive relief in federal court." *Id.* at 178.  Similarly, here, students at IYP, all of whom are special education students housed at the DC Jail

complex, have a systemic claim that is better addressed by seeking injunctive relief in federal court rather than case-by-case in due process hearings because they allege not just a failure to implement individual IEPs, but rather policies and practices that prevent IEPs from being implemented throughout the school. *See, e.g.,* 2d Am. Compl., para. 51 (the IYP "student population is fluid and transient"); para. 60 ("DCPS made a deliberate decision to eliminate direct instruction for IYP students and provide them only with assigned work packets").

The District insists that "plaintiffs do not allege either that DCPS or OSSE fail, as a categorical matter, to implement the IEPs of IYP students." Def. Mem. 20. In fact, plaintiffs <u>do</u> allege that DCPS and OSSE failed, as a categorical matter, to implement the IEPs of students. *See* 2d Am. Compl., para. 6 ("For its students in the DC Jail complex, all of whom are eligible for special education under IDEA, DCPS has systematically failed to implement the IEPs of the students by halting class instruction and related services"); paras. 56-62 (describing creation of DCPS's work packet policy and practice at IYP); para. 72 ("DCPS maintained their work packet policy . . . through the summer"). Plaintiffs allege that "DCPS made a deliberate decision to eliminate instruction for IYP students and provide them only with assigned work packets." 2d Am. Compl., paras. 8, 60. The failure to implement students' IEPs was the direct result of this institutional policy—not, as the District contends, excusable, because it was "driven by DCPS's struggles to adapt to unprecedented and constantly changing conditions." Def. Mem. 21. Moreover, "the shortcomings with the work packets" and "with the prompt implementation of virtual technologies," *id*., were the direct result of the District's policy decisions to implement work packet-only instruction and to continue its limits on internet access. *See* 2d Am. Compl., paras. 59-61 (work packets cannot provide FAPE), para. 103 (Department of Corrections' (DOC's) policy regarding internet access).

Further, the fact that the students "were uniquely situated compared to all other students," Def. Mem. 19, which plaintiffs assume means the students' detention in jail, does not excuse OSSE's responsibilities to disabled students under the IDEA during the pandemic.  As reiterated by the United States in its Statement of Interest in this case, "[d]espite the challenges faced by agencies responsible for providing special education, the COVID-19 pandemic did not relieve the agencies' IDEA requirements."  *See* United States Statement of Interest, ECF No. 24, p. 12. Starting in March 2020, at the beginning of the pandemic, the U.S. Department of Education issued guidance to the States informing them that "SEAs, LEAs, and schools must ensure that, to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's IEP developed under IDEA, or a plan developed under Section 504." 2d Am. Compl., para. 36.  The IDEA, along with federal and local regulations make it clear that States are not exempt from providing FAPE to those held in correctional facilities.  *See* 20 U.S.C. § 1412(a)(1)(B)(ii); 34 C.F.R. §§ 300.102(a)(2)(i), 300.713(b); 5-E D.C.M.R. § 3002.2.

OSSE understood these obligations, evident in its own guidance policy issued in July 2020, which states "[a]n LEA continues to have the obligation to provide FAPE to a student with a disability during extended closures resulting in distance or blended-learning models arising from a local or national emergency." 2d Am. Compl., para. 37.  Yet, it failed to ensure that its own policy was carried out at IYP for the students in the plaintiff class.  *Id.*, para. 42; *see also* Memorandum Opinion, ECF No. 38, p. 18 ("Defendants argue that, throughout the pandemic, they implemented the provisions in IYP student IEPs 'to the greatest extent possible.'  The Court disagrees.").

Finally, the District argues that plaintiffs are not challenging the structure of the IYP program but "the substantive implementation of the IYP program by DCPS" since "not every decision made by a teacher at IYP rises to the level of a 'policy.'"  Def. Mem. 21.  But plaintiffs do not challenge

the decision of any teacher at IYP but rather the District's policy to eliminate direct instruction and related services, adopted systemwide at IYP (at an institutional level) and leading directly to the District's wholesale denial of FAPE. *See* 2d Am. Compl., paras. 56-62, 71-72, 79. The District further claims that plaintiffs do not claim that its failure to "offer direct instruction was the result of an institutional policy against offering" it because "plaintiffs do not allege that OSSE or DCPS were opposed to using virtual, direct instruction." Def. Mem. 21. However, OSSE's and DCPS's intentions are immaterial; their actions are at issue. Plaintiffs sufficiently allege that OSSE and DCPS's actions deprived IYP students of FAPE on an institutional level.

### (b) The Cases Cited by the District Do Not Support Its Position that Plaintiffs Have Failed to Allege Systemic Claims

The District relies on numerous cases, only one of which is in this jurisdiction, to support its claim that plaintiffs have not alleged a systemic violation by OSSE. Def. Mem. 19-20. None of these cases support the District's position.

The District cites *Price v. Commonwealth Charter Academy Cyber School*, 2018 WL 1693352, at *7 (E.D. Pa. 2018), for the proposition that a "systemic claim is one that implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires the restructuring of the education system itself to comply with the" IDEA. Def. Mem. 19. However, *Price* was not setting forth an exhaustive list of the types of facts that could establish a systemic claim. And, unlike here, the plaintiff in *Price* did not make any allegations of a systemic violation by the SEA. 2018 WL 1693352, at *6.

The District cites *Carnwath v. Grasmick*, 115 F. Supp. 2d 577 (D. Md. 2000), for the proposition that SEAs are not liable "for every local deviation from the State-created standards." Def. Mem. 19-20. *Carnwath* was an individual case alleging only procedural violations of IDEA. In contrast, here, plaintiffs allege the wholesale denial of FAPE -- of which OSSE was on notice

11

for over a year -- for the population of an entire school.  *See* 2d. Am. Compl., paras. 222-26.  The

District also relies on *Beard v. Teska*, 31 F.3d 942, 954 (10th Cir. 1994), an attorneys' fees case,

for the proposition that every LEA is not the agent of the SEA.  Def. Mem. 19-20.  But plaintiffs

do not allege that OSSE is liable solely because of the failures of DCPS; rather, OSSE is liable for

its own failures to monitor and take action to correct the schoolwide violations of FAPE at IYP.

*See* 2d. Am. Compl., paras. 37, 38, 42, 52-54, 60-62, 73, 79, 100-103.[3]

Finally, the District relies on a test for distinguishing between systemic and non-systemic

allegations in *L.L.*, 2019 WL 653079, at *7, which the court applied to the determination of

whether an exception to administrative exhaustion applies—not to whether the SEA can be held

liable for failing to monitor the provision of FAPE.  *Id*.  However, even when applied to the facts

here, the test supports a determination that plaintiffs' allegations are systemic in nature for both

purposes.  In *L.L.*, the court explained the test as follows:

> [W]hether the plaintiffs . . . have presented a broad policy level problem . . . or whether
> they have presented, what is, at its core, a context-dependent, student-dependent problem
> that is better addressed . . . by experts on the ground, even if there may be other students
> suffering from similar alleged deprivations.

*Id*. at *6.  The court went on to apply this test to one of the plaintiffs, finding that:

> Be.R.'s allegations involving the categorical refusal to offer mainstreaming to preschoolers
> target a broad policy with fundamentally structural roots, arising out of policymakers'
> decisions rather than the mishandling of individual cases. Those allegations are, therefore,
> of the type that this court and others have historically considered beyond the efficacy of
> the administrative process.

*Id*.  Similarly, here, plaintiffs allege that DCPS's refusal to offer direct instruction and related

services to students, as a policy and practice, systematically deprives them of FAPE by failing to

---

[3] The District cites, Def. Mem. 19, without explanation, *Easter v. District of Columbia*, 128 F.
Supp. at 178.  As explained above, *see* pp. 8-9, *Easter* supports rather than undermines plaintiffs'
allegations of a systemic claim since, like there, plaintiffs' claims cannot be addressed on a case-
by-case basis because they apply to the wholesale failure to provide education pursuant to the IEPs
of all students at IYP.

materially implement their IEPs, and that OSSE is liable for failing to monitor and correct DCPS for this gross deviation of its standards.  2d Am. Compl., paras. 1-12, 20-21, 42-110.  As discussed above, plaintiffs allege broad structural issues that caused their injury.  Moreover, plaintiffs' allegations are of the type that cannot be resolved through the administrative process. *See* Section IV.B.

Plaintiffs sufficiently allege facts supporting a systemic claim under IDEA against the District for OSSE's failure to monitor DCPS's provision of FAPE to plaintiffs.

## B.   THE DISTRICT IS LIABLE FOR OSSE'S FAILURE TO PROVIDE FAPE TO IYP STUDENTS (CLAIM 1)

Claim 1 of plaintiffs' Second Amended Complaint alleges, in part, that:

[S]ince March 24, 2020, defendants OSSE and the District have failed to implement plaintiffs' and the putative class members' IEPs by failing to provide them their mandated specialized instruction and related services. Defendants denied FAPE to plaintiffs and the putative class members. Defendants' failures are numerous and systemic.

2d Am. Compl., para. 219.  The District seeks to dismiss Claim 1, to the extent it relies on the conduct of OSSE, claiming that (1) DCPS, not OSSE, has the obligation to implement IEPs, (2) plaintiffs' only avenue to obtain liability for OSSE's violations of the IDEA is through the SEA's direct provision of special education and related services to students as found in 20 U.S.C. § 1413(g), and (3) plaintiffs did not exhaust their administrative remedies against OSSE regarding Claim 1.  Def. Mem. 14-19; Proposed Order, ECF No. 60-2.  The District is wrong on each of these grounds.

### 1.   Plaintiffs Sufficiently Allege that OSSE, as the SEA, Is Liable for Denying FAPE to Them As a Result of its Failure to Monitor and Intervene to Correct DCPS's Actions

The District claims that plaintiffs fail to allege that OSSE violated IDEA under Claim 1 because "the IDEA does not require the SEA to directly implement a student IEP anytime the LEA fails to do so."  Def. Mem. 16.  In fact, plaintiffs allege that OSSE is liable for denying students

FAPE based on OSSE's failure to ensure that IDEA's substantive requirements are implemented at the DC Jail complex, as they were obligated to do under IDEA and its interagency Memorandum of Agreement (MOA).  2d Am. Compl., paras. 60-62, 100, 101, 219.

While not <u>every</u> failure by an LEA to implement an IEP will result in liability for the SEA, "an SEA may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented."  *Gadsby,* 109 F.3d at 952.[4]  This is precisely what happened here.  Plaintiffs allege that by failing to monitor and take action to correct DCPS's failure to materially implement the students' IEPs through its policy of eliminating direct instruction and related services for all students—despite its explicit obligation in its interagency MOA to ensure that special education and related services are provided to IYP students, 2d Am. Compl., para. 52, and to intervene if a matter is not resolved by DCPS and DOC, *id*., paras. 54, 100-103—OSSE failed in its duty to ensure that substantive IDEA requirements be implemented at the DC Jail complex.  As discussed in Section III.A, OSSE's conduct was especially egregious because it knew that DCPS's policy grossly departed from its own educational policies and standards, accepted professional standards, FAPE standards, and those of the federal government.  *Id*., paras. 37, 42, 45, 62, 73.

---

[4] The District selectively quotes the Fourth Circuit's explanation in *Gadsby*, 109 F.3d at 954, of the specific duties delineated to the SEA and the LEA under IDEA, including the LEA's responsibility "for the direct provision of services . . ., including the development of an IEP. . . ." Def. Mem. 11-12.  However, the Fourth Circuit went on to explain that:

> § 1412(6) [currently 20 U.S.C. §1412(11)(a)(i)] states that "[t]he State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out." 20 U.S.C. § 1412(6). This language suggests that, ultimately, it is the SEA's responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education. Therefore, it seems clear that an SEA may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented.

*Gadsby*, 109 F.3d at 952 (emphasis added).

14

The District claims "it is aware of no authority for the proposition that the SEA's requirement to ensure students receive FAPE includes a requirement that the SEA also monitor the implementation of every student's IEP." Def. Mem. 17.  In fact, federal law and regulations require that the SEA ensure the provision of FAPE, including the implementation of IEPs, through its supervisory and monitoring responsibilities.  To provide FAPE, the District must ensure the provision of special education and related services in conformity with a student's IEP.  20 U.S.C. § 1401(9)(D).  The primary actions that OSSE, as the SEA, must take to ensure the provision of FAPE are monitoring and supervising DCPS, by, among other things, "ensuring that public agencies meet the program requirements under Part B of [IDEA]," 34 C.F.R. § 300.600(b)(2), which includes the provision of FAPE through the implementation of IEPs, 20 U.S.C. § 1401(9)(D).  *See also* 20 U.S.C. § 1412(11) (describing SEA responsibilities).  Notably, the District disregards the requirement that "[i]n exercising its monitoring responsibilities . . . the State must ensure that when it identifies noncompliance with the requirements of this part by LEAs, the noncompliance is corrected as soon as possible, and in no case later than one year after the State's identification of the noncompliance."  34 C.F.R. § 300.600(e).  Finally, it also disregards OSSE's independent obligation under the agencies' MOA to "take appropriate action as needed, when issues arise with regard to special education service delivery [at the DC Jail complex], if a matter is not resolved by DCPS and DOC."  2d Am. Compl., para. 54.

As discussed above, numerous courts, including this Circuit, have held that the State may be held liable for failure to comply with its duty to ensure that substantive requirements of IDEA are implemented.  Despite this precedent, the District insists that SEAs cannot be held liable for failing to monitor the LEA's implementation of students' IEPs.  Def. Mem. 17.  In support, the District cites three cases, each of which is inapplicable or factually distinguishable.  In *Ascent: a School for Individuals with Autism v. New York State Educ. Dep't*, Civil Action No. 17-6866, 2019

WL 2439431, at *9 (E.D.N.Y. Mar. 4, 2019), the District quotes the court's statement that "courts have consistently held that the IDEA's private right of action does not authorize claims against State agencies that are rooted in the State's general supervisory role under the IDEA," *see* Def. Mem. 17, but the cases cited are limited to those in the Second Circuit.  As discussed above, *see* pp. 6-7, the District of Columbia Circuit and other Circuit Courts have found otherwise.  In *A.A. ex rel. J.A. v. Philips*, another Second Circuit case, the court of appeals did not hold that an SEA can never be held liable for failure to monitor an LEA's violation of the IDEA for an individual student, but rather affirmed the district court's finding that plaintiffs failed to provide evidence on "the adequacy of … [the SEA's] monitoring and oversight of the district's compliance efforts during the relevant time period" because they did not elicit any testimony of witnesses, including their own expert witnesses on the matter, noting that "plaintiffs had every opportunity to present to the district court their proof of the state's failures [under §1412(a)(11)]" but failed to do so.  386 F.3d 455, 458-59 (2d Cir. 2004).  Finally, the District selectively relies on language in the *Gadsby* case from the Fourth Circuit, in which the court "disagree[d] with plaintiffs' contention that 'an SEA should always be held liable for an LEA's failure to provide . . . [FAPE], regardless of the particular circumstances of the case," *see* Def. Mem. 17, but fails to mention that the court likewise disagreed with the contention that an SEA should never be held liable and instead held that "district courts have broad discretion in granting appropriate relief under IDEA.  This relief may include an award . . . against the SEA, the LEA, or both."  *Gadsby*, 109 F.3d at 955.  An SEA can be held liable for the failure to provide FAPE as a matter of law, and plaintiffs have adequately alleged facts that the District is liable for OSSE's failures under Claim 1.

**2.      Plaintiffs Sufficiently Allege that OSSE, as the SEA, Violated Section 1412 of IDEA**

Next, the District argues that it cannot be liable for OSSE's actions and inactions under Section 1412 of IDEA because "if plaintiffs were correct that IDEA requires an SEA to directly implement IEPs anytime it has notice of a lack of compliance, Section 1413(g) of the IDEA would be rendered largely superfluous."  Def. Mem. 18.  Section 1413(g) of the IDEA provides that if the SEA determines that the LEA "is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a)," then the SEA must directly provide special education and related services to students served by that LEA.  By its terms, 20 U.S.C. §1413(g) does not apply here because OSSE never made a determination that DCPS was unable to establish and maintain a program providing FAPE at IYP.

Plaintiffs do not allege that OSSE should have stepped into the shoes of DCPS and directly provided special education and related services to the IYP students as would have been required after a determination by OSSE pursuant to Section 1413(g) of the IDEA.  Rather, plaintiffs allege that pursuant to its interagency MOA and Section 1412 of IDEA, OSSE should have taken action to correct DCPS's policy of eliminating direct instruction and related services in conformance with students' IEPs (resulting in a systemic failure to materially implement their IEPs), when it had notice that such a policy grossly deviated from its own educational policies.  2d Am. Compl., paras. 42, 52, 54, 60-62, 101-103.  Plaintiffs allege that OSSE could have negotiated an exception to the DOC's no Internet policy, *id*., para. 103, or intervened to resolve disputes regarding the provision of special education at the DC Jail complex between DCPS and OSSE by bringing these before the City Administrator as per the Dispute Resolution process identified in the interagency MOA, *id*., para. 101; *see also* MOA, ECF No. 12-4, Section V.  Instead, OSSE allowed DCPS to

maintain its policy of providing no direct instruction or related services and did nothing until plaintiffs filed their complaint.  2d Am. Compl., paras. 93-95.

In support of its argument, defendants cite *Saenz on behalf of V.S. v. Board of Education of Silver Consolidated Schools*, 2019 WL 1795539, at *7 (D.N.M. Apr. 24, 2019), for the proposition that under the IDEA, the "sole avenue" (*id*.) for a plaintiff to establish IDEA liability for the SEA "is to prove that the SEA was responsible under Section 1413(g)."  Def. Mem. 18. However, in reaching that conclusion, the New Mexico district court stated that it was following "the language" and "method of analysis" of a Tenth Circuit case that is not applicable here.  2019 WL 1795539, at *8.  The District also cites *Lejeune v. Khepera Charter Sch.*, 327 F. Supp. 3d 785, 800 (E.D. Pa. 2018), for the proposition that, pursuant to Section 1413(g), before removing funds from an LEA so that the SEA can provide services directly, the LEA must be unable to provide those services.  Def. Mem. 18.  This case is inapplicable because, as the District itself notes, *see id*., plaintiffs here do not allege that OSSE determined that DCPS was unable to provide services, thus triggering OSSE's Section 1413(g) obligations.  Instead, plaintiffs allege that DCPS made the deliberate choice to eliminate direct instruction and related services mandated by students' IEPs, when it had many available options to provide FAPE, 2d Am. Compl., paras. 8, 60, 102-107, thus triggering OSSE's Section 1412 obligations to monitor and correct the LEA's failure to provide FAPE.

### 3.    Charles H. Administratively Exhausted Claim 1 Against OSSE

The District argues that Claim 1 should be dismissed as against OSSE because "neither Charles H. nor Israel F. raised a failure to implement claim as alleged against OSSE in their administrative complaints" and "Malik Z. has not exhausted his administrative remedies."  Def. Mem. 15.  The District is mistaken.  First, as discussed in Section IV.A below, under well-established case law in the District of Columbia Circuit, only one named plaintiff must exhaust

administrative remedies to bring a civil rights class action suit.  Second, both Charles H. and Israel F. raised allegations in their administrative complaints concerning OSSE's failure to provide FAPE and Charles H. fully exhausted his claims, *see* 2d Am. Compl., para. 47.

In Charles H.'s administrative complaint, which named both DCPS and OSSE as respondents, he alleged that respondents failed to provide any specialized instruction or related services to students in detention.  *See* ECF No. 12-29, pp. 8-11, paras. 23-32, 36-41, 43.  Specifically, he alleged that instead of implementing his IEP, and those of other students, DCPS provided work packets without any modifications, accommodations, or instruction, *id.*, para. 26, and that both agencies were liable for this failure, *id.*, para. 43 ("Where the LEA and SEA have failed to comply with their obligations, hearing officers may fashion appropriate relief including orders to provide appropriate services and compensatory education.").  He further alleged that "OSSE's failure to monitor and enforce LEA requirements resulted in a substantive denial of a FAPE to all special education students." *Id.*, para. 52.  The hearing officer agreed.  Hearing Officer Determination, ECF No. 12-27, p. 24 ("OSSE has failed its obligation to ensure DCPS' compliance with IDEA").  Israel F. made substantially the same allegations in his administrative complaint. *See* ECF No. 12-26, paras. 35-47, 49, 58.  In sum, because Charles H. alleged that OSSE failed to provide the specialized instruction and related services in his IEP in his administrative complaint, plaintiffs have exhausted Claim 1.[5]

## II.  PLAINTIFFS HAVE STATED A VALID CLAIM FOR THE DISTRICT'S VIOLATION OF DC REGULATION 5-E D.C.M.R. § 3002.1(a) (CLAIM 6)

The District argues that, even if it has violated its own special education regulation, as alleged in plaintiffs' Claim 6 (2d Am. Compl., paras 253-58 (alleging violation of 5-E D.C.M.R.

---

[5] Even if Charles H. had not administratively exhausted Claim 1 against OSSE, plaintiffs would satisfy the exception to exhaustion as to Claim 1 because exhaustion of administrative remedies would be futile and inadequate as set forth in Section IV.B. below.

§ 3002.1(a))), plaintiffs' claim must be dismissed because "Section 3002.1(a) . . . does not create a cause of action separate from the relevant statutes." Def. Mem. 27 (citing *Frederick v. Hillyer*, 82 F. Supp. 3d 435, 440 (D.D.C. 2015)). The District is incorrect. The IDEA itself provides a cause of action for violations of state regulations such as § 3002.1(a).[6]

The District does not dispute that plaintiffs have stated a claim for some violations of the IDEA. *See generally* ECF No. 60 (seeking only partial dismissal). Similarly, the District has not disputed that plaintiffs may state a claim for violations of the federal regulations that implement the IDEA. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001) (in discussing whether there was a cause of action to enforce regulations under Title VI of the Civil Rights Act, the Court stated that it is "meaningless to talk about a separate cause of action to enforce the regulations apart from the statute. A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." (citations omitted)).

Because the IDEA incorporates state standards implementing the IDEA's mandates, there lies a proper cause of action for the District's violations of § 3002.1(a), just as for the violation of any federal regulation implementing the IDEA. Federal courts have long recognized that:

> . . . Congress's power to assimilate state standards into federal law is well-settled and frequently used. The IDEA is unambiguously one of those instances where Congress has exercised that power. [citation omitted]

*L.H. by D.R. v. Tennessee Dep't of Educ.*, No. 19-00517, 2019 WL 5898092, at *9 (M.D. Tenn. Nov. 12, 2019); *accord, e.g.*, *Michael C. ex rel. Stephen C. v. Radnor Tp. Sch. Dist.*, 202 F.3d 642, 652-53 (3d Cir. 2000) (even where the federal statute "does not provide a basis for relief, federal law incorporates state standards, and a school district may violate the IDEA if it fails to satisfy the

---

[6] Even were this not so, the District's reliance on *Frederick* is misplaced. By the time that the case was decided, 22 C.F.R. § 13.3 had been repealed. *Id.* at 439. Here, by contrast, the underlying statute and regulations remain in effect.

more stringent state law requirements.") (cleaned up); *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 418 (1st Cir. 1985) ("Because the statutory definition of a free appropriate public education, as already noted, explicitly provides that a covered child's education will 'meet the standards of the State educational agency,' a complaint may be brought and pursued up the reviewing ladder to a state or federal court per § 1415(e)(2) on the issue of substantive conformity of a child's educational plan with the State's educational standards.").

One such state law requirement is found in 5-E D.C.M.R. § 3002.1(a). It directly implements the requirements of the IDEA in the District by requiring that the District make a FAPE "available to each child with a disability, ages three to twenty-two." 5-E D.C.M.R. § 3002.1(a). The IDEA's implementing regulations provide that a plaintiff may file a complaint and ultimately a civil action for any matter related to "the provision of FAPE to the child." *See* 34 C.F.R. § 300.507(a)(1) (right to file a due process complaint); 34 C.F.R. § 300.516(a) (right to bring a civil action). Because a failure to provide a FAPE in accordance with the state requirements unquestionably is related to "the provision of FAPE," the IDEA authorizes suit for violations of 5-E D.C.M.R. § 3002.1(a).

The District alternatively claims that Claim 6 should be dismissed because it "is also entirely duplicative of Count 1." Def. Mem. 27. However, § 3002.1(a) is broader than the federal IDEA regulations because it extends the IDEA's protections to individuals up to the conclusion of the semester during which a student turns 22 years of age (5-E D.C.M.R. § 3002.1(a)), rather than up to 21 years of age (34 C.F.R. § 300.101). Thus, while there is overlap in the substantive standards underlying the District and federal regulations, plaintiffs' Claims 1 and 6 are not identical.

III.     PLAINTIFFS SUFFICIENTLY ALLEGE FACTS SUPPORTING THEIR CLAIMS
         OF DISCRIMINATION UNDER SECTION 504, THE ADA, AND THE DCHRA
         (CLAIMS 3, 4, and 5)

Section 504 of the Rehabilitation Act forbids the District from discriminating against or

excluding an otherwise qualified person from participation in a federally-funded program "solely

by reason of her or his disability."  29 U.S.C. § 794(a).

The ADA prohibits public entities from discriminating against qualified individuals with

disabilities "by reason of such disability."  42 U.S.C. § 12132.  "The ADA's standard is slightly

less strict than the Rehabilitation Act's standard because it does not require that the discrimination

be 'solely' because of … disability; the disability must simply be a motivating factor in the alleged

discrimination."  *Reid-Witt on behalf of C.W. v. D.C.*, 486 F. Supp. 3d 1, 10-11 (D.D.C. 2020).

"Claims under the DCHRA . . . are subject to the same standards as ADA claims."  *Id*. at 10

(internal citation omitted).

To show discrimination under Section 504 in the context of IDEA violations, plaintiffs

must show "more than a mere failure to provide the 'free and appropriate public education'

required by the [IDEA][.]" *Walker v. D.C.*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001) (quoting

*Lunceford v. D.C. Board of Education*, 745 F. 2d 1577, 1580 (D.C. Cir. 1984)).  "To

make *that* showing, judges in this jurisdiction typically require a plaintiff to allege either 'bad faith

or gross misjudgment on the part of a defendant.'"  *Reid-Witt on behalf of C.W.,* 486 F. Supp. 3d

at 7 (internal citation omitted) (emphasis in original).  Although the District of Columbia Circuit

"has never squarely adopted that standard," district courts in this Circuit facing the question of

whether to apply the bad faith or gross misjudgment standard have applied it.  *Id*.  (collecting

cases).  The District argues that plaintiffs' claims under Section 504 of the Rehabilitation Act, the

ADA, and the DCHRA should be dismissed because plaintiffs have not shown that its conduct is

so persistent and egregious as to warrant a remedy outside of the IDEA and because they "fail to

allege that their disabilities caused the alleged discrimination."  Def. Mem. 22-27.  The District is wrong on both counts.

A.    **BECAUSE PLAINTIFFS ALLEGE CONDUCT BY THE DISTRICT THAT IS MUCH MORE EGREGIOUS THAN A MERE FAILURE TO PROVIDE STUDENTS WITH FAPE, THEY HAVE PROPERLY PLED A VIOLATION OF SECTION 504, THE ADA, AND THE DCHRA**

As set forth above, to obtain relief under Section 504 of the Rehabilitation Act, case law in this jurisdiction requires plaintiffs to allege violations that show "more than a mere failure to provide the 'free and appropriate public education' by the [IDEA][.]"[7]  *Walker*, 157 F. Supp. 2d at 35.  In order to prevail on a Section 504 claim, plaintiffs must show either "bad faith or gross misjudgment [on the part of a defendant]," *id*., by demonstrating that "state officials involved have exercised professional judgment, in such a way as to [] depart grossly from accepted standards among educational professionals."  *D.L. v. D.C.*, 450 F. Supp. 2d 21, 23 (D.D.C. 2006) (addressing the standard to prevail in the context of a motion to dismiss).  The plaintiff class here has alleged facts sufficient to make out a prima facie showing under Section 504, and the Court must construe such allegations and facts in the light most favorable to the class in the context of this motion to dismiss.

The facts alleged here show that this case is one of the rare cases where "a plaintiff [will] be able to prove that a school system's conduct is so persistent and egregious as to warrant such a unique remedy not otherwise provided for by the IDEA itself."  *Reid-Witt on behalf of C.W.*, 486 F. Supp. 3d at 9 (quoting *Walker v. D.C.*, 157 F. Supp. 2d at 35).  And, the District has provided no basis upon which this Court should dismiss the Section 504 claims.

---

[7] Because the standard for discrimination is higher under Section 504 of the Rehabilitation Act, which requires discrimination "solely by reason of" a disability, than that required under the ADA, which requires only that it be "by reason of such disability," meeting the standard under Section 504 satisfies the standard under the ADA.

As alleged in the Second Amended Complaint, this case involves not just the failure to provide FAPE to a single student but the wholesale denial of FAPE to all students enrolled in IYP for over a year and a gross departure from defendant's own standards.  In their Second Amended Complaint, plaintiffs allege that the District established educational policies and standards for providing FAPE to its students during the COVID-19 pandemic, including those with disabilities, which require the provision of FAPE through distance or blended learning models that ensure students continue to receive the special education and related services identified in their IEPs.  2d. Am. Compl., paras. 36-38.  Plaintiffs allege that, as implemented by the District in the community to tens of thousands of DCPS students learning from home during the pandemic, these models include direct instruction, virtually and in-person, *id*., para. 96, and Individualized Distance Learning Plans (IDLPs) for each student with an IEP setting forth how supports and services will be delivered through distance learning, *id*., paras. 97-98.

The District utterly failed to meet its own educational standards, or accepted standards among educational professionals, including the U.S. Department of Education.  Plaintiffs allege that as of March 2020, DCPS adopted a school-wide policy and practice of paper-based and tablet delivered work packets, in lieu of direct instruction and related services, which failed to provide education in conformity with students' IEPs to all IYP students at the DC Jail complex.  2d Am. Compl., paras. 56-92, 123-35, 144, 188-204, 234. DCPS failed to develop any IDLPs for those students.  *Id*., paras. 77, 96-99.  These violations are ongoing, more than a year later, even after plaintiffs filed their Complaint, *id*., paras. 93-95, and the hearing officer found them liable, *id.,* paras. 46-48.[8]  Plaintiffs allege that this policy grossly deviates from accepted professional

---

[8] Although not alleged in the Second Amended Complaint, these violations continue today in the face of a preliminary injunction issued by this Court.  *See* Defendants' Status Report, September 1, 2021, Exhibit A, ECF No. 64-2.

standards including the defendants' own educational policies, FAPE standards, and those of the federal government for the provision of special education and related services. *Id.*, paras. 42, 96-99, 214, 238-39.

The District also departed from accepted professional standards by failing to provide Charles H. with direct instruction and related services in conformity with his IEP, even after a hearing officer found that DCPS and OSSE were failing to provide FAPE.  In *DL*, this Court found similar allegations sufficient to show a violation of Section 504.  450 F. Supp. 2d. at 23.  It said (*id.*):

> For example, several of the representative plaintiffs, including XY discussed above, have alleged that even after a favorable determination by a hearing officer, DCPS did not bring itself into compliance with the pertinent requirements.

Here, the hearing officer found that DCPS failed to implement his IEP, *id.*, para. 43, and that OSSE "'fail[ed] to exert its authority to monitor and supervise DCPS's compliance with IDEA within [IYP], and . . . to intervene upon notice of an alleged failure of DCPS to provide appropriate special education services within [IYP],'" *id.*, para. 45.  The hearing officer found that "'OSSE offered no evidence that it performed even the minimal monitoring and supervising functions that it concedes are its responsibility.'"  *Id*.  Therefore, Charles H.'s administrative case and the lack of compliance with IDEA even after the District lost his case, further demonstrate that "the 'state officials involved have exercised professional judgment, in such a way as . . . to depart grossly from accepted standards among educational professionals.'"  *DL*, 450 F. Supp. 2d at 23 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982)).

In its motion, the District acknowledges these allegations and the associated policies, but merely argues that "it does not follow that every failure to implement an IEP during the pandemic amounts to gross misconduct."  Def. Mem. 25-26.  To survive a motion to dismiss, a complaint must present sufficient factual matter, which must be accepted as true, to state a claim that is

"plausible on its face." *Twombly*, 550 U.S. at 570.  If the Court can draw a reasonable inference

that the defendant is liable for the misconduct alleged, the claim has "facial plausibility." *Iqbal*,

556 U.S. at 678.  The District has failed to demonstrate that no reasonable fact finder could

conclude that its alleged conduct amounted to gross misconduct or misjudgment.

Further, the District's reliance on *Torrence v. DC*, 669 F. Supp. 2d 68 (D.D.C. 2009) for

the proposition that Section 504 does not create general tort liability is not relevant to this case.

The relevance of *Torrence* to this case is explained by the Court later in its decision:

> FAPE under § 504 is defined to require a comparison between the manner in which the
> needs of disabled and non-disabled children are met, and focuses on the "design" of a
> child's educational program. *See* 34 C.F.R. § 104.33(b)(1) (a FAPE requires education and
> services "designed to meet individual educational needs of handicapped persons as
> adequately as the needs of non-handicapped persons are met" (emphasis added)) . . . . Thus,
> § 504 is attuned to programmatic failures while the IDEA is focused on the individual
> student who needs special education.

669 F. Supp. 2d at 72 (cleaned up).  There is no question that plaintiffs here allege a programmatic

failure to provide direct instruction and related services, 2d Am. Compl., paras. 56-92, 123-35,

144, 188-204, 234, and that they allege a failure to meet the plaintiff class' educational needs "as

adequately" as non-disabled students, *id.*, paras. 63, 71, 236.[9]  Accordingly, the District's motion

must fail on this basis, too.

Next, the District points to the allegations related to the agencies' failures to cooperate to

implement technology and logistical solutions and asserts "that the pandemic created

unprecedented and unpredictable obstacles to running a school for disabled students within an

adult correctional facility." Def. Mem. 26.  Whether the District's assertion is borne out by the

evidence is a matter completely separate from whether plaintiffs' pleadings are sufficient.

---

[9] The District points to a failure to allege that "other adult correctional facilities that contain high
schools for disabled students were more adept to overcoming pandemic-related obstacles to
implementing IEP's." Def. Mem. 26, n.8.  Such an allegation is unnecessary under the Federal
Rules of Civil Procedure, Section 504, and relevant caselaw.

The pleadings are more than sufficient in this regard. Plaintiffs allege that the implementation of the IEPs of IYP students relies on cooperation among OSSE, DCPS, and the DOC, as set forth in their interagency MOA and that pursuant to that agreement the agencies were obligated to resolve issues in the event of a dispute, which requires that the parties alert each other to the dispute, work cooperatively to resolve it, and if no resolution can be reached, bring the dispute before the City Administrator. 2d Am. Compl., paras. 100-108. Plaintiffs allege that although several technological and logistical solutions were available to provide direct instruction and related services to IYP students throughout the pandemic, OSSE, DCPS, and the DOC did not cooperate to implement any of them and failed to carry out the MOA. *Id.*, paras. 100-110.

Moreover, professional standards in the form of guidance from the U.S. Department of Education had been issued for addressing education services during the pandemic, 2d Am. Compl., para. 36, which OSSE understood well enough to issue its own guidance about the same, *id.*, para. 37. Under neither the federal nor the District of Columbia professional standards for the delivery of education was it acceptable to fail to deliver any direct education whatsoever to students with IEPs during the pandemic. Nonetheless, with gross misjudgment or bad faith, the District did just that for the students at IYP.

Lastly, the District focuses on the question of notice. Def. Mem. 26-27. It admits that plaintiffs alleged that they provided notice and that the responsible education agencies failed to respond adequately. *Id.*, p. 26. However, the District argues that the notice was of "a far different nature" than in cases where disability discrimination claims were permitted to proceed. *Id*. Contrary to the District's argument, the nature of the notice is not the operative factor in determining whether a claim should proceed. It is the nature of the conduct—particularly after having been notified of the offending conduct—that is the focus of a Section 504 claim.

The conduct here is similar to the conduct in *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282

(S.D.N.Y 2007), which the District relies upon to distinguish the notice provided, Def. Mem. 26.

The *S.W.* court found that the plaintiffs had alleged enough to survive a motion to dismiss their

Section 504 claim:

> [b]ecause plaintiffs allege that defendants implemented policies which in effect limit the availability of services and thereby impede the implementation of IEPs for preschoolers with autism, at this stage we can infer that plaintiffs may be able to show bad faith or gross misjudgment.

*S.W.*, 528 F. Supp. 2d at 291.  Here, however, the District's conduct is far worse because it more

than "limit[ed] the availability of services," it eliminated the availability of services all together.

Therefore, plaintiffs' Section 504 claims should survive dismissal just like those in *S.W.*

The District claims that the nature of the notice in *B.R. ex rel. Rempson v. District of*

*Columbia,* 524 F. Supp. 2d 35 (D.D.C. 2007), is also distinguishable.  However, again the District

misses the point.  It is not the nature of the notice, but the conduct.  In *B.R.*, this Court observed:

> [I]f the defendants conducted an IEP, assessed the plaintiff's child as needing full-time special services, and then placed her in a facility with no capacity to deliver special services—then the court would encounter no difficulty in characterizing such conduct as marked by gross misjudgment or bad faith.

*Id*. at 42.  The situation here is comparable.  All of the IYP students have been assessed as needing

special education services.  2d Am. Compl., para. 6.  From March 2020 to at least June 2021, when

this Court issued a preliminary injunction, ECF No. 37, the IYP students, by virtue of the District's

"gross misjudgment or bad faith," were in a facility "with no capacity to deliver special services."

Therefore, plaintiffs have adequately alleged a violation of the Rehabilitation Act.

**B.    PLAINTIFFS ALLEGE DISCRIMINATION AGAINST THEM BY THE DISTRICT BASED SOLELY ON THEIR DISABILITIES**

In their Second Amended Complaint, plaintiffs allege that the District and its agencies

"have and continue to discriminate against plaintiffs and the putative class members solely because

of their disabilities by failing, over multiple academic years, to provide them effective special and

general education and the opportunity to participate in or benefit from such education, <u>that is equal</u>

<u>to the opportunity and education defendants have afforded and continue to afford to others</u>," as

required under  34 C.F.R. § 104.4.  *Id*., para. 235 (emphasis added).  The District argues that

plaintiffs fail to allege "that they were treated differently from similarly situated, non-disabled

persons."  Def. Mem. 22-23.[10]  The District is mistaken.

  First, the District argues that plaintiffs' allegation that "the District discriminated against

them because of their disabilities by 'denying them special education and related services in

conformity with their IEPs . . . that are designed to meet their needs as adequately as the needs of

non-disabled students'" fails to allege discrimination because "[u]nder that logic, *every* failure to

implement an IEP would be caused by the student's disability because, but for the student's

disability, the student would not have an IEP and there would be no opportunity to fail to

implement it."  Def. Mem. 23-24.  But plaintiffs do not allege discrimination simply based on the

facts of being disabled and not having their IEPs implemented; rather, they allege that the District

excluded them from public education by virtue of the District's policy of eliminating direct

instruction, which failed to meet their needs as adequately as those of non-disabled students.  2d

Am. Compl., paras. 233-235, 247, 252.  For this reason, the cases cited by the District in support

of the proposition that several courts "have rejected such strained reasoning" are not applicable.[11]

---

[10]Plaintiffs do not dispute that their theory of discrimination is based on disparate treatment, and
not on allegations of direct evidence of discrimination, *i.e.*, that the District or any of its employees
had animosity or ill will towards any disabled students.  *See* Def. Mem. 22-23.

[11]In *Watkins v. Hawley*, an ADA case in which the court rejected plaintiffs' argument that
"Defendants would not have been able to deny any disability benefits but for the existence of the
minor Plaintiffs' disabilities," the court found that "Plaintiffs presented evidence that Defendants
were motivated by Plaintiff['s] . . . public criticism of their job performance, which entails no
discriminatory animus or intent." Civil Action No. 12-54, 2013 WL 5965725, at *3 (S.D. Miss.
Nov. 8, 2013).  In contrast, here, plaintiffs allege discrimination based on disparate treatment

Def. Mem. 24.

In the context of public education, Title II of the ADA and Section 504 of the Rehabilitation Act forbid the denial of meaningful access to public education, and implementation of an IEP developed in accordance with the IDEA is one way of meeting Section 504's requirement. *See* 34 C.F.R. § 104.33(b)(2).  Accordingly, exclusion from meaningful access to public education is sufficient to state a claim of discrimination under Section 504 and the ADA.  *See e.g., A.U. v. D.C.,* Civil Action No. 19-3512, 2020 WL 4754619, at *12 (D.D.C. July 13, 2020), *report and recommendation adopted*, 2020 WL 4750249 (D.D.C. Aug. 17, 2020) (allegations by plaintiff, a student with disabilities, that she was excluded from public education by DCPS's failure to provide homebound services sufficient to state a claim under Section 504 and the ADA); *Easter,* 128 F. Supp. 3d at 179 (plaintiffs' allegations that he "was denied free appropriate education at an alternative program because he required more special education services than any program for adult students," were sufficient to state a claim under Section 504).

Beginning in March 2020, the District deprived IYP students of any meaningful access to public education by failing to provide them with direct instruction and related services mandated in their IEPs at the same time that DCPS was meeting the educational needs of public school non-disabled students by providing them with virtual and later, in-person classes.  *See* 2d Am. Compl.,

---

between disabled IYP students and non-disabled DCPS students.  2d Am. Compl., paras. 233-35. The District's reliance on *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 953 (7th Cir. 2008) for the proposition that "[a]ctions taken for motives other than disability discrimination do not amount to disability discrimination" is equally unavailing. Def. Mem. 24.  That case, which was an ADA employment discrimination case, was based on a theory of associational discrimination, *id*., not disparate treatment, as plaintiffs allege here, 2d Am. Compl., paras. 233-35, 247, 252.  In *Ruhl v. Ohio Health Dep't*, 725 Fed. Appx. 324, 338 (6th Cir. 2018), (Def. Mem. 24 n.7) the court found no discrimination because the plaintiffs "did not . . . allege facts indicating that W.R. was treated any differently because of his specific disability." *Id*.  Here, plaintiffs allege facts showing disparate treatment between themselves and a group of non-disabled students.  2d Am. Compl., paras. 3, 4, 219, 234-35.

paras. 3, 4, 219, 234-35.  Plaintiffs allege that because the work packets provided to IYP students

in lieu of direct instruction do not contain helpful instruction, guidance, or accommodations for

students with disabilities to understand and use them, they do not provide FAPE and are therefore

not equal to the virtual and in-person classes provided by DCPS to non-disabled students in the

community during the pandemic.  *Id*., paras. 59, 235.  *See Torrence*, 669 F. Supp. 2d at 72 ("FAPE

under § 504 is defined to require a comparison between the manner in which the needs of disabled

and non-disabled children are met, and focuses on the design of a child's educational program.")[12]

(cleaned up).  In other words: plaintiffs allege that they were excluded from meaningful access to

public education that is equal to the opportunity and education that the District has afforded and

continues to afford to non-disabled public school students.

The District further argues that plaintiffs' comparison of the education provided to IYP

students to that provided to non-disabled students in the community is wrong; instead, plaintiffs

should be compared to non-disabled students at the DC Jail complex, Def. Mem. 24, despite the

fact that there are no adult, non-disabled public high school students at the DC Jail complex.  Yet

the cases the District cites regarding a well-treated comparator group do not support its argument

that the comparison group used by plaintiffs is inappropriate; only that plaintiffs in those cases did

not present evidence of treatment to their comparator group.  *See* Def. Mem. 23, n.6.[13]  Moreover,

---

[12] The District cites *Torrence* for this very proposition.  Def. Mem. 23, n.6.

[13] *See e. g. M.J. by and through S.J. v. Akron City School District Board of Education*, 1 F.4th 436, 453 (6th Cir. 2021) (finding that plaintiffs "introduced no evidence detailing which students the school mistreated and which they did not"); *Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 123, n.11 (D.D.C. 2011) (finding "no facts alleged in the Complaint to support" an allegation of the claim under Section 504); *Torrence*, 669 F. Supp. 2d at 72 (plaintiff, who alleged only that DCPS did not conduct a timely evaluation and respond to requests, alleged no facts that "DCPS *discriminated* against C.H. solely because of his disability") (emphasis in original).  In contrast, here, plaintiffs allege many facts about the well-treated group of non-disabled public school students.  2d Am. Compl., paras. 3, 4, 71, 96.

the District incorrectly states that "plaintiffs focus on comparing the implementation of two groups of disabled students" one at the jail and another that is not. *Id.* at 24. In fact, the citations to the Second Amended Complaint cited by the District compare IYP students to non-disabled students in the community. *See* 2d Am. Compl., paras. 3, 71, 96.

The District next argues that the "obvious cause of that differential treatment" that "can be reasonably inferred from the Second Amended Complaint" is the fact that the students are incarcerated, not because of discrimination based on a disability. Def. Mem. 24. But, as discussed above, this argument ignores the crux of plaintiffs' allegations: the District discriminates against plaintiffs, all of whom have disabilities, solely because of their disabilities, by denying them special education and related services in conformity with their IEPs and that are designed to meet their needs as adequately as the needs of non-disabled students. *See* 34 C.F.R. § 104.4; 2d Am. Compl., paras. 231-34. The fact that students are incarcerated does not entitle the District to discriminate against them by failing to carry out their IEPs. *See* United States Statement of Interest, ECF No. 24, pp. 10-12. The IDEA and its implementing regulations make clear that students in correctional facilities are as entitled to FAPE as students housed in the community. *See* 20 U.S.C. § 1412(a)(1) (making FAPE available to *all* students with disabilities) (emphasis added); 34 C.F.R. § 300.2(b)(1)(iv) (IDEA applies to "state and local juvenile and adult correctional facilities"); 5-D.C.M.R § 3002.2(b) (no exception to the obligation to provide FAPE if a student aged 18-22 had an IEP or had been identified as disabled prior to entering a correctional facility).

An individual's carceral status has no bearing on a defendant's duty to provide them with appropriate accommodations. *See Pierce v. District of Columbia,* 128 F. Supp. 3d 250, 277-79 (D.D.C. 2015) (failure to assess plaintiff and provide appropriate accommodations while incarcerated, despite knowledge of his disability and plaintiff's repeated requests for accommodations constituted discrimination under Section 504 and Title II of the ADA). For this

reason, the District's reliance on *H.P. by and through W.P. v. Naperville Community Unit School District*, 910 F.3d 957, 961 (7th Cir. 2018), for the proposition that the only cause of plaintiffs' disparate treatment is their incarceration, is unavailing.  Def. Mem. 24-25.  In *H.P.,* the court rejected a student's claim of disability discrimination, finding that the school's rationale for denying her request to attend her old high school after she moved to a new district was based on its residency policy, rather than her disability.  910 F.3d. at 961.  The court found that the result would have been the same whether or not the student had a disability.  But unlike the residency policy in *H.P.* which is facially neutral and unrelated to education, here, plaintiffs make a direct claim that the District's educational policies at IYP violated IDEA by failing to provide them FAPE.  2d Am. Compl., paras. 3, 42, 71, 96, 216-221.

Moreover, if the District is truly excluding IYP students from access to the services under their IEPs because they are incarcerated, that would give rise to a finding of bad faith or gross mismanagement under Section 504, the ADA, and the DCHRA.  In *Reid-Witt,* this Court found that exclusion from an elite school when a student requires special education services and the elite school cannot provide those services "may constitute discrimination solely by reason of [plaintiff's] disability" that could rise to "bad faith and gross mismanagement . . . under the Rehabilitation Act, ADA, and DCHRA. 486 F. Supp. 3d at 14 (citation omitted). Similarly, exclusion from special education services solely because the students are incarcerated and the LEA cannot provide special education services rises to the level of bad faith or gross mismanagement.

Finally, the District claims that "[c]ourts that have allowed disability discrimination claims to proceed did so where the plaintiff's disability was directly related to the allegedly different treatment,' such as when "but for their disability" the program or benefit would be provided.  *See* Def. Mem. 25 (citing *Lovell v. Chandler*, 303 F.3d 1039, 1053 (9th Cir. 2002)).  While this may be true in some cases, such as *Lovell*, which concerns eligibility for healthcare benefits, *id*., this is

not necessarily always the case, especially in cases involving special education.  *See e.g.  A.U.*, 2020 WL 4754619, at *11 (allegations by a disabled student that she was excluded from public education by DCPS's failure to provide homebound services when non-disabled students received educational services during the same time period, sufficient to state a claim under Section 504 and the ADA).

## IV.   THE CLAIMS OF PLAINTIFF MALIK Z. SHOULD NOT BE DISMISSED BECAUSE THE ADMINISTRATIVE EXHAUSTION REQUIREMENT FOR A CLASS ACTION SUIT UNDER THE IDEA IS SATISFIED

Generally, before filing a suit under the IDEA, a plaintiff must exhaust administrative remedies. 20 U.S.C. § 1415(l).  If a plaintiff also sues under the ADA, Section 504 of the Rehabilitation Act, and the DCHRA, alleging a failure to provide FAPE, the plaintiff's IDEA claims must first be exhausted.  *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 754 (2017).  The District moves for dismissal of all of plaintiff Malik Z.'s claims because he has not yet exhausted administrative remedies under the IDEA, arguing that exhaustion of those remedies would not be futile or inadequate.  Def. Mem. 30.  Malik Z.'s claims should not be dismissed.  Plaintiffs satisfy the exhaustion requirement in their putative class action suit because one of the named plaintiffs, Charles H., fully exhausted his administrative remedies before filing suit.  In the alternative, Malik Z. should not be dismissed because administrative exhaustion would have been futile and inadequate under the circumstances in this case.

## A.   IN A CLASS ACTION SUIT, ONLY ONE NAMED PLAINTIFF IS REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, AND THIS REQUIREMENT IS SATISFIED HERE

It is well established in this Circuit that only one named plaintiff is required to exhaust his or her administrative remedies in civil rights class action suits.  *See Hartman v. Duffy*, 88 F.3d 1232, 1235 (D.C. Cir. 1996) ("[t]he district court applied this court's doctrine of vicarious exhaustion—that exhaustion of administrative remedies by one member of the class satisfies the

requirement for all others with sufficiently similar grievances. . . ."); *Pappas v. D.C.*, 2021 WL 106468, at \*5 (D.D.C. Jan. 12, 2021) (in an ADA and Rehabilitation Act class action suit, finding vicarious exhaustion of administrative remedies appropriate when only one plaintiff exhausted his administrative remedies); *DL v. D.C.*, 450 F. Supp. 2d 11, 17 (D.D.C. 2006) (in an IDEA class action suit, only one plaintiff needs to exhaust his or her administrative remedies).

Plaintiffs, including Charles H., filed a class action complaint for declaratory, injunctive, and other relief under the IDEA, Section 504 of the Rehabilitation Act, the ADA, and the DCHRA. 2d Am. Compl., para. 20.  Charles H. has exhausted his administrative remedies.  *Id.*, para. 136. On January 11, 2021, Administrative Hearing Officer Terry Banks, of OSSE's Office of Dispute Resolution, issued a decision on Charles H.'s due process complaint.  *Id.*, para. 43.  Because Charles H. has exhausted his administrative remedies and only one plaintiff needs to exhaust his remedies in a class action suit, Malik Z., whose claims are substantially the same as Charles H.'s, is not required to do so.  *Id.,* paras. 136, 207.  Based on the well-established case law in the District of Columbia Circuit, Malik Z.'s claims are properly before this court and should not be dismissed.

**B.     IN THE ALTERNATIVE, EXHAUSTION IS NOT REQUIRED BECAUSE IT WOULD BE FUTILE AND INADEQUATE**

Exhaustion of administrative remedies is excused in cases brought under the IDEA, where doing so would be futile or inadequate.  *Honig v. Doe*, 484 U.S. 305, 327 (1988).  Exhaustion is futile or inadequate in three circumstances: "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."  *DL,* 450 F. Supp. 2d at 17 (collecting cases in courts of appeal in other Circuits).  Although plaintiffs need to show that only one of these circumstances applies, all three circumstances apply here.

1.  **Resort to Due Process Procedures Would be Futile**

With respect to the first circumstance, whether resort to due process procedures would be futile, courts look to whether the purposes behind exhaustion would be furthered in the particular case. *McKart v. United States*, 395 U.S. 185, 193 (1969) ("Application of the [exhaustion] doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved."). In *Cox v. Jenkins*, the District of Columbia Circuit looked to the purpose behind exhaustion in IDEA cases and found that two policies support exhaustion:

> First, . . . [i]f the expert agency cannot resolve the problem finally, the record made in the administrative proceedings will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a federal court could bring to bear, and therefore, have illuminated the issue for final decision in the federal court. Second, the states as well as the federal government have an interest in providing a means whereby official abuse can be corrected without resort to lengthy and costly trial.

878 F.2d 414, 419 (cleaned up). Neither purpose would be furthered in this case and therefore resort to due process procedures would be futile.

(a)  **Agency Expertise Would Not Assist the Court**

Agency expertise would provide no benefit to the judicial resolution of plaintiffs' claims. Plaintiffs did not bring this case to challenge an individual educational decision by DCPS, such as whether the content of an IEP is appropriate, where a hearing officer's expertise may be helpful to develop the record to assist the court. Instead, plaintiffs challenge the District's policy and practice of failing to provide all IYP students with a FAPE. 2d Am. Compl., paras. 8, 59-62, 208. Because this is a matter that challenges the framework of implementing IEPs for IYP students at the DC Jail complex, it does not involve any particular agency expertise. *See DL*, 450 F. Supp. 2d at 18 (in a case alleging systemic failure to provide pre-school children in the District with FAPE "exhaustion . . . would be futile because, given the nature of the claims presented, agency expertise would provide no benefit to the judicial resolution of this case.").

**(b)      Administrative Proceedings Would Not Provide the District with the Opportunity to Take Corrective Action**

Resort to due process procedures would also be futile here because it would not further the second purpose identified by the court of appeals in *Cox v. Jenkins*, providing the District with the opportunity to take corrective action.   The District makes no argument that other plaintiffs' administrative due process hearings led to a correction of its flawed policy of eliminating direct instruction and related services.  Def. Mem. 30.

The hearing officer's decision for the plaintiff who did exhaust his administrative remedies before filing suit did not resolve his claims.  Plaintiffs allege that even after the administrative decision in favor of Charles H. was issued in January 2021, the District continued to fail to provide education and related services to Charles H. in conformance with his IEP.  2d Am. Compl., paras. 14, 142-44.  Thus, the District did not use the opportunity of an administrative proceeding alleging the same violations of IDEA to take corrective actions.

The District also had notice of its failure to implement the IYP students' IEPs and nevertheless failed to remedy the problem.  At the start of the pandemic in Spring of 2020, by virtue of the agencies' participation in an MOA requiring cooperation among the agencies involved with the education of IYP students at the DC Jail complex, the District should have been on notice that DCPS was not providing the students with FAPE.  2d Am. Compl., paras. 52-62.  In July 2020, OSSE issued a guidance document concerning the delivery of services to students with IEPs during the pandemic, *id*., para. 37, but DCPS failed to implement the policy for IYP students, *id*., para. 99.  On August 20, 2020, a coalition of education advocates and lawyers notified OSSE and DCPS that the IYP students' IEPs were not being implemented.  *Id*., para. 73.  Plaintiffs also allege that since October 2020, at least three IYP students filed due process complaints raising the issue of the District's failure to implement their IEPs.  *Id*., paras. 14-16.  Nevertheless, despite repeated

notifications from plaintiffs, advocates, and others, the District failed to take corrective action.  *Id.*, paras. 60-62, 73, 93-110, 219.  This type of failure to correct is indicative that administrative remedies were futile.  *See K.W. v. D.C.,* 385 F. Supp. 3d 29, 42 (D.D.C. 2019) (finding exhaustion futile after DCPS's failure to correct errors following consistent hearing officer decisions);  *DL*, 450 F. Supp. 2d at 19 (finding exhaustion futile because "despite repeated notifications by OSEP [U.S. Department of Education Office of Special Education Programs], plaintiffs, and others, the Amended Complaint alleges that DCPS has failed to take corrective action."); *Massey v. D.C.*, 400 F. Supp. 2d 66, 73 (D.D.C. 2005) ("Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate.").

### (c)    Plaintiffs' Systemic Claims Can Only Be Addressed Through Injunctive Relief in this Court

Because of the nature of plaintiffs' systemic claims, if Malik Z. and other students were to seek resolution of their claims one by one in the administrative process, they could each obtain different results and never obtain the system-wide relief they seek.  *See, e.g.*, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) ("If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results.").  Moreover, requiring a case-by-case resolution at the administrative level would be an inefficient use of the judicial system.  In *Easter*, 128 F. Supp. 3d at 178, this Court denied the District's motion for partial dismissal of plaintiff's complaint in a case alleging that he and similarly situated students were denied special education services while at a detention facility because DCPS failed to identify an LEA responsible for the students. *Id*.  The court held that "this is precisely the type of issue that cannot be addressed on a student-by-student basis during Due Process Hearings, but is better addressed by seeking injunctive relief

in federal court, as Mr. Easter does here." *Id*.  Here, too, the issue of the District's systemic denial of FAPE at the DC Jail complex caused by its generally applicable policy of providing work packets in lieu of direct instruction is better addressed through injunctive relief in this court, rather than individual due process complaints.

This Court has found in other factual circumstances that administrative exhaustion is not necessary for some IDEA systemic claims.  *See, e.g.*, *Easter*, 128 F. Supp. 3d at 178 ("[c]ourts have recognized 'systemic' claims under the IDEA where the plaintiff has alleged a 'pattern and practice' of systematic IDEA violations unable to be addressed through the Due Process Hearing procedures"); *DL*, 450 F. Supp. at 18 (concluding that given nature of systemic claims, exhaustion was futile).  *Accord, see, e.g., J.S.*, 386 F.3d at 114; *New Mexico Association for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 851 (10th Cir. 1982); *Monahan v. Nebraska*, 645 F.2d 592, 597 (8th Cir. 1981); *see also J.M. by & Through Mata v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018).

## 2.    The District Has an Unlawful Policy and Practice of General Applicability

The second circumstance in which courts have concluded that exhaustion may be excused as futile or inadequate in IDEA cases is when the school district or "agency has adopted a policy or pursued a practice of general applicability that is contrary to the law."  *DL,* 450 F. Supp. 2d at 17 (collecting cases).  One of the rationales for futility is that hearing officers do not have the authority to remedy an unlawful policy or practice of general applicability.  *See, e.g.*, *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992) (exhaustion was futile because "neither the Commissioner nor the assigned hearing officer has the authority to alter the procedure").

Here, plaintiffs allege that the District has a policy and practice of general applicability that is contrary to law.  Specifically, plaintiffs allege that DCPS has a policy and practice of failing to provide IYP students with a FAPE because of its failure to implement the students' IEPs in

violation of IDEA and its implementing regulations.  2d Am. Compl., paras. 8, 56-110, 219, 221.

Plaintiffs allege that the District's failures affect the entire IYP student population equally and

across-the-board, irrespective of a particular child's individual circumstances or educational needs.

*Id.*, paras. 6, 21, 42, 95.  Under these circumstances, exhaustion is futile because plaintiffs allege

that the District has adopted a policy or pursued a practice of general applicability that is contrary

to the law that the hearing officer does not have the authority to remedy.  *See Heldman v. Sobol,*

962 F.2d at 159.

### 3.    Relief Is Unavailable Through Administrative Procedures

The third circumstance excusing exhaustion in IDEA cases is whether it is "improbable

that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington*

*Central School District Board of Education*, 297 F.3d 195, 199 (2d Cir. 2002).  This exception is

frequently applied in IDEA class actions alleging structural failure and seeking systemwide

reforms. *See, e.g., Beth V. by Yvonne V. v. Carroll,* 87 F.3d 80, 89 (3d Cir. 1996) (exhaustion issue

remanded because "plaintiffs' claim in this case is, in essence, that the safeguards … have failed

on a system-wide basis"); *Jose P. v. Ambach*, 669 F.2d 865, 868-69 (2d Cir. 1982) (exhaustion

excused in complex class action alleging systematic IDEA violations because "individual appeal

mechanism is inappropriate to resolve the systemic compliance issues").

Plaintiffs here are requesting systemic relief that cannot be provided by a hearing officer.

Specifically, plaintiffs seek a declaratory judgment that the District has violated the rights of the

plaintiff class under the IDEA, the Rehabilitation Act, the ADA and the DCHRA, 2d Am. Compl.,

Relief, para. 2, p. 59, and a prospective injunction ordering defendants to "develop and implement

adequate and effective policies and procedures to provide plaintiffs special education and/or

related services in conformity with their IEPs until plaintiffs earn their high school diplomas or

are no longer eligible to receive FAPE from the District of Columbia." *Id.*, Relief, para. 4, pp. 59-60.

Here, a hearing officer lacks authority to order the District to take these steps or to provide the other systemic relief requested in the Complaint, and indeed, the hearing officer in the Charles H. administrative case denied the claims of systemic violations of the IDEA and the Rehabilitation Act on the ground that the hearing officer did not have the authority to adjudicate such claims.  2d Am. Compl., para. 138; *see also Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986) ("[r]esort to the administrative process is *futile* if the agency will almost certainly deny any relief . . . because it … lacks jurisdiction over, the matter" (emphasis in original)).  The decision of the hearing officer in Charles H.'s administrative proceeding did not change the District's schoolwide policy that would provide the primary relief that Malik Z. seeks— in-person or live virtual specialized instruction, specific to the requirements of his IEP.  2d Am. Compl., para. 142.

The District asserts that because another named plaintiff, Israel F., "was able to settle his administrative due process complaint, and plaintiffs do not allege … the relief he received . . . was not adequate," Malik Z.'s claims, which are "substantively similar" to Israel F.'s claims, may likewise get resolved through the administrative process."  Def. Mem. 30.  As plaintiffs explain in Section V below, the relief that Israel F. received through his administrative settlement is, in fact, not adequate, since he has re-enrolled as a student at the DC Jail complex and continues to be subject to the same illegal and discriminatory policy that the administrative hearing officer was unable to change in Charles H.'s administrative case, *see* 2d Am. Compl. 142.  Like Israel F., Malik Z. remains at the DC Jail complex, where the District continues to systematically deny IYP students direct specialized education instruction and related services pursuant to their IEPs, *id.*,

41

para. 95, and therefore his claims for injunctive relief would not be resolved even if he were to settle his case on terms comparable to those offered to Israel F.

Thus, plaintiffs have shown that Malik Z.'s claims should proceed without administrative exhaustion because completion of the administrative proceedings would be futile and inadequate.

## V.   ISRAEL F. SHOULD NOT BE DISMISSED AS A PLAINTIFF

Like Charles H., Israel F. alleges here and in his administrative complaint that he and the other IYP students were being denied FAPE because of the failure to provide in-person or virtual special education instruction and related services.  2d Am. Compl, paras. 14-15.  On May 14, 2021, as Israel F. was being released from the DC Jail complex, he, OSSE, and DCPS settled his administrative complaint.  Israel F. Settlement Agreement, ECF No. 34-3.  On August 2, 2021, Israel F. was returned to the DC Jail complex and subsequently enrolled again as an IYP Student. Notice of Recent Development Concerning Plaintiff Israel F., ECF No. 54.  As an IYP student, his ability to receive FAPE is completely dependent on the delivery of in-person or virtual special education instruction and related services as provided in his IEP.  2d Am. Compl., paras.  2, 10.

Ignoring Israel F.'s current circumstances, the District argues that Israel F.'s claims are moot and he should be dismissed as a plaintiff because he "was released from custody on May 14, 2021, and is no longer enrolled in IYP" and because "he settled the administrative claims underlying his claims here."  Def. Mem. 29.  The District presumably ignores Israel F.'s current circumstances because those circumstances are not set forth in the Second Amended Complaint. *See id*. at 6, n.1, and 7, 29.  At the same time, the District acknowledges a motion to dismiss for mootness is a Rule 12(b)(1) motion where the Court "need not limit itself to the complaint; rather it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Id*. at 14 (citation omitted).  It is certainly appropriate for this Court to consider Israel F.'s current circumstances, particularly since they are

extremely relevant to whether he retains a personal stake in the ongoing case and the District knew about his changed circumstances well before filing its second motion to dismiss for mootness.[14]

As the District acknowledges, "[t]he critical inquiry is whether the putative class action representative retains a personal stake in the ongoing action despite settling his claims." Def. Mem 24 (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1988)). There is no doubt that Israel F. retains a personal stake in this class action. At present, his receipt of FAPE and ability to graduate are dependent upon the District delivering in-person or virtual special education and related services so that he is able to acquire the credits needed for graduation. His settlement agreement provides ████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Israel F. Settlement Agreement, ECF No. 34-3, paras. 4(a)-(b). Israel F. has significant incentive to graduate, but his ability to do so is directly tied to the District's delivery of the injunctive relief sought in this case. In arguing that Israel F.'s claims are moot, the District fails to acknowledge his significant personal stake in the outcome of this case.

Even without this significant personal stake, the Supreme Court has held that so long as one of several plaintiffs in an action has standing, all may remain in an action. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264, and n.9 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing to assert these rights as his own. . . . Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."). *See also Mountain States Legal*

---

[14] The District filed its motion to dismiss the Second Amended Complaint on August 26, 2021, ECF Nos. 60, 60-1, well after plaintiffs had reported to the Court on August 5, 2021, that Israel F.'s circumstances had changed. Notice of Recent Development Concerning Plaintiff Israel F., ECF No. 54. This Court granted plaintiffs' motion to amend the complaint later that same day and accepted as timely filed their Second Amended Complaint. *See* Minute Order, August 5, 2021.

*Foundation v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) ("[I]f constitutional and prudential standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim."). The District makes no argument that Charles H. lacks standing to bring the claims in the Complaint. Thus, the standing of one of the plaintiffs is not in dispute.[15]

Israel F.'s claims are not moot and there is no basis for dismissing him from this action.[16]

## VI.   ALL CLAIMS ARE NOW PROPERLY PLED AGAINST THE DISTRICT

Under District of Columbia statutes, neither OSSE, as the SEA, nor DCPS, as the LEA, which are both educational agencies that are subordinate to the Mayor, have the right to sue or be sued. *See* D.C. Code § 38–172(a) ("The Mayor shall govern the public schools in the District of Columbia."); D.C. Code § 38–2601(a) ("There is established, under the Office of the Mayor, an Office of the State Superintendent of Education."). For this reason, plaintiffs sought and were granted leave to file a Second Amended Complaint to correct an error in their Amended Complaint, which pled Claim 2 only as against OSSE, and to clarify that all claims ran against the District. Minute Order August 5, 2021. In their Second Amended Complaint, plaintiffs kept the District agencies as party defendants out of an abundance of caution. 2d Am. Compl., paras. 216-248. The District now seeks dismissal of OSSE and DCPS, on the ground that they are not proper parties.

---

[15] Plaintiffs note that other Circuits have been reluctant to dismiss the claims of named plaintiffs as moot when "a defendant picks off named plaintiffs in a class action before the class is certified" by "strategically mooting named plaintiffs' claims in an attempt to avoid a class action." *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016); *see also Richardson v. Bledsoe*, 829 F.3d 273, 279 (3d Cir. 2016) ("when a plaintiff's individual claim for relief is 'acutely susceptible to mootness' by the actions of a defendant, that plaintiff may continue to represent the class he is seeking to certify even if his individual claim has been mooted by actions of the defendant.").

[16] Plaintiffs note that Israel F.'s settlement agreement may provide some of the compensatory education that might be appropriate for him under the Rule 23(b)(3) claims in this action. However, that relief related to his circumstances as of May 14, 2021. Further compensatory education relief may be appropriate to address his circumstances after he reenrolled in IYP in August.

Def. Mem. 14.   Because plaintiffs' Second Amended Complaint pleads all claims against the District and the District is responsible for the acts and omissions of its SEA and LEA, plaintiffs do not oppose the Court's dismissal of DCPS and OSSE as party defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss in Part Plaintiffs' Second Amended Complaint should be denied.   A proposed order is attached.

Respectfully submitted,

/s/ *Zenia Sanchez Fuentes*

Kathleen L. Millian, DC Bar No. 412350
Zenia Sanchez Fuentes, DC Bar No. 500036
Stephanie A. Madison, DC Bar No. 1025581
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW, Suite 303
Washington, DC  20009-4422
(202) 682-2100, ext. 8478
kmillian@tpmlaw.com;
zsanchez@tpmlaw.com;
smadison@tpmlaw.com

Ifetayo Belle, DC Bar No. 1601686
Sarah Comeau, DC Bar No. 1012980
SCHOOL JUSTICE PROJECT
1805 7th Street, NW, 7th Floor
Washington, DC 20001-3186
(202) 630-9969
tbelle@sjpdc.org; scomeau@sjpdc.org

Kaitlin R. Banner, D.C. Bar No. 1000436
Margaret F. Hart, D.C. Bar No. 1030528
Jonathan Smith, D.C. Bar No. 396578
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL
RIGHTS AND URBAN AFFAIRS
700 14th Street, N.W., Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (203) 319-1010
kaitlin_banner@washlaw.org; margaret_hart@washlaw.org;
jonathan_smith@washlaw.org

September 9, 2021                    *Counsel for Plaintiffs*