**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHARLES H.,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 21-997 (CJN)** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

<u>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**</u>
<u>**IN PART PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    Plaintiffs Concede That All Claims Against DCPS and OSSE Should Be Dismissed Because Both Agencies Are *Non Sui Juris*. ............................................................... 1

II.   Plaintiffs Fail To State a Claim Against OSSE for Violating the IDEA (Counts 1 and 2). ............................................................................................................................. 2

   A.   Plaintiffs Do Not Allege That They Have Exhausted Their Administrative Remedies Against OSSE with Regard to Their Failure to Implement Claim (Claim 1). ................. 2

   B.   The State Education Agency is Not Responsible for Every Failure of a Local Education Agency To Implement a Student's IEP (Claim 1). ......................................................... 3

   C.   Plaintiffs Fail To Allege That OSSE Did Not Satisfy Its Monitoring Obligations Under the IDEA (Count 2). ...................................................................................................... 6

III.  Plaintiffs Fail To Allege a Violation of Section 504, the ADA, and the DCHRA Because They Do Not Allege That Their Disabilities Were a Reason They Did Not Receive FAPE (Counts 3-5). ..................................................................................................... 9

   A.   Plaintiffs Fail To Allege That Their Disabilities Caused the Alleged Discrimination. ... 9

   B.   Plaintiffs Fail To Allege That Any Delay in Implementation of Their IEPs Was The Result of Bad Faith or Gross Misconduct. ................................................................... 13

IV.  Plaintiffs Cannot Assert a Claim for an Alleged Violation of the District's Regulations Implementing the IDEA (Count 6). ......................................................................... 14

V.   Israel F.'s Claims Are Moot in Light of His Administrative Settlement. ...................... 15

VI.  Malik Z.'s Undisputed Failure To Exhaust Disqualifies Him from Serving as a Named Plaintiff. ................................................................................................................... 17

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*A.U. v. District of Columbia*, Civil Action No. 19-3512, 2020 WL 4754619 (D.D.C. July 13, 2020) .................................................................................................................. 11

*Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252 (1977) ........................ 17

*B.R. ex rel. Rempson v. District of Columbia*, 524 F. Supp. 2d 35 (D.D.C. 2007) ..................... 13

*Byrd v. District of Columbia*, 807 F. Supp. 2d 37 (D.D.C. 2011) .......................................... 18, 19

*Clark v. State Farm. Mut. Auto. Ins. Co.*, 590 F.3d 1134 (10th Cir. 2009) ................................. 16

*D.L. v. District of Columbia*, 194 F. Supp. 3d 30 (D.D.C. 2016) ................................................ 4, 5

*D.L. v. District of Columbia*, 450 F. Supp. 2d 11 (D.D.C. 2006) ................................................. 21

*David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411 (1st Cir. 1985) .............................................. 14

*Easter v. District of Columbia*, 128 F. Supp. 3d 173 (D.D.C. 2015) ............................................ 8

*Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) ...................................................................... 18

*Gadsby by Gadsby v. Grasmick*, 109 F.3d 940 (4th Cir. 1997) .................................................... 4

*H.P. by and through W.P. v. Naperville Community Unit School District*, 910 F.3d 957 (7th Cir. 2018) ................................................................................................................. 10, 12

*Hall v. Sebelius*, 689 F. Supp. 2d 10 (D.D.C. 2009) ............................................................... 20, 22

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992) ............................................... 6

*K.W. v. District of Columbia*, 385 F. Supp. 3d 29 (D.D.C. 2019) ............................................... 21

*L.H. by D.R. v. Tennessee Dep't of Educ.*, Civil Action No. 19-517, 2019 WL 5268262 (M.D. Tenn. Nov. 12, 2019) ............................................................................................... 14

*L.L. By & Through B.L. v. Tennessee Dep't of Educ.*, Civil Action No. 18-754, 2019 WL 653079 (M.D. Tenn. Feb. 15, 2019) .................................................................................. 6, 7

*Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005) ............................................ 22

*McClain v. Hanna*, 949 F.3d 266 (6th Cir. 2020) ....................................................................... 16

*Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 645 (3d Cir. 2000) ...... 14

ii

*Morgan Hill Concerned Parents Association v. California Department of Education*, Civil Action No. 11-3471, 2013 WL 1326301 (E.D. Cal. Mar. 29, 2013) ........................................ 5

*Mtn. State Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996)........................................ 17

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................ 15

*Parent/Professional Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13 (1st Cir. 2019)6, 8

*Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015)........................................ 11

*Potter v. Nw. Mortgage, Inc.*, 329 F.3d 608 (8th Cir. 2003) ................................................ 16

*Reid-Witt on behalf of C.W. v. District of Columbia*, 486 F. Supp. 3d 1 (D.D.C. 2020).......... 9, 12

*S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282 (S.D.N.Y. 2007) ............................................ 13

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ................................................ 17

*Walsh v. Ford Motor Co.*, 945 F.2d 1188 (D.C. Cir. 1991)................................................ 17

*Watt v. Energy Action Educ. Found.*, 454 U.S. 151 (1981)................................................ 17

*WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44 (D.D.C. 2015)................ 15

**Statutes**

20 U.S.C. § 1409................................................................................................ 14

## INTRODUCTION

Plaintiffs, who are adult special education students with Individualized Education Programs (IEPs) detained at the D.C. Jail, assert six claims against the District of Columbia, District of Columbia Public Schools (DCPS), and the Office of the State Superintendent of Education (OSSE) (collectively, the District) based on defendants' purported failure to fully implement their IEPs at the jail during the COVID-19 pandemic.[1] The District has not moved to dismiss Count 1 as alleged against DCPS, but has moved to dismiss the remainder of plaintiffs' claims because they are either based on a misunderstanding of OSSE's monitoring responsibilities under the IDEA (Counts 1 and 2), simply a re-packaging of the failure to implement claim asserted against DCPS under different statutes in an attempt to gain access to additional remedies (Counts 3-5), or entirely duplicative of Count 1 (Count 6). In addition, Count 1 as asserted against OSSE should be dismissed because no plaintiff exhausted that claim in the administrative process. All claims of Israel F. should be dismissed because he fully settled his administrative claims, and all claims of Malik Z. should be dismissed because he has not exhausted any claims in the administrative process. The District's motion should be granted.

## ARGUMENT

**I.**     **<u>Plaintiffs Concede That All Claims Against DCPS and OSSE Should Be Dismissed Because Both Agencies Are *Non Sui Juris*.</u>**

Plaintiffs do not dispute that DCPS and OSSE should be dismissed as defendants because they are *non sui juris*. Pls.' Opp'n to Defs.' Mot. to Dismiss in Part Second Am. Compl. at 2 n.2 (Pls.' Opp'n) [66]. Both agencies should therefore be dismissed as defendants.

---

[1]     Plaintiffs allege violations of the Individuals with Disabilities in Education Act (IDEA) (Counts 1 and 2), Section 504 of the Rehabilitation Act (Count 3), the Americans with Disabilities Act (ADA) (Count 4), the D.C. Human Rights Act (DCHRA) (Count 5), and D.C. regulations (Count 6).

**II.     Plaintiffs Fail To State a Claim Against OSSE for Violating the IDEA (Counts 1 and 2).**

As the District explained in its motion to dismiss, Count 1 should be dismissed as against OSSE because (i) plaintiffs did not raise a failure to implement claim against OSSE during their administrative proceedings and thus failed to exhaust that claim, and (ii) OSSE's monitoring obligations under the IDEA do not include the responsibility to ensure in real-time that every individual student's IEP is fully implemented across the District. Defs.' Mem. in Support of Mot. to Dismiss in Part Second Am. Compl. at 9–14 (Defs.' Mem.) [60-1]. The District explained also that Count 2 should be dismissed because plaintiffs do not allege that their injuries, *i.e.*, their alleged failures to implement their IEPs, were caused by a systemic failure of OSSE to monitor whether educational programs in the District failed to meet its educational standards. *Id*. In their opposition, plaintiffs are wrong on the law (Count 1) and wrong on the alleged facts (Count 2).

**A.     Plaintiffs Do Not Allege That They Have Exhausted Their Administrative Remedies Against OSSE with Regard to Their Failure to Implement Claim (Claim 1).**

"It is well-established law that administrative exhaustion requirements apply to each claim a plaintiff seeks to bring before a district court." *S.S. by & through St. v. District of Columbia*, 71 F. Supp. 3d 1, 5–6 (D.D.C. 2014) (citing 20 U.S.C. § 1415(i)(2)(A)). Charles H.—the only plaintiff to have exhausted any claims—did not raise a failure to implement claim against OSSE in his administrative proceeding. *See* Defs.' Mem. at 10–11. In their memorandum in opposition, plaintiffs do not seriously contest that Charles H. failed to exhaust Count 1 as alleged against OSSE, nor could they.

Plaintiffs' argument that Charles H. exhausted his failure to implement claim against OSSE because "he alleged that respondents failed to provide any specialized instruction or related services to students in detention" is unpersuasive. Pls.' Opp'n at 19 (citing Administrative Due

2

Process Compl. of Israel F. ¶¶ 23–32, 36–41, 43).[2]  That highly generalized characterization of his complaint ignores the specific allegations and claims that he made, which clearly distinguish between a failure to implement claim (against DCPS), and a failure to monitor claim (against OSSE). *See* Administrative Due Process Compl. of Charles H. at 14–18 [12-26]. Charles H.'s failure to assert a failure to implement claim against OSSE explains why the hearing officer did not identify it as an issue before him or address it in his decision. *See* Hearing Officer Determination at 4–5, 12–26 [12-27]. As discussed below, no plaintiff's failure to exhaust any claim should be excused, and Claim 1 against OSSE should be dismissed. *See* Section VI below; *see also* Defs.' Mem. at 25–26.

**B.      The State Education Agency is Not Responsible for Every Failure of a Local Education Agency To Implement a Student's IEP (Claim 1).**

Even if Charles H. had exhausted his failure to implement claim against OSSE during his administrative proceeding, Count 1 should still be dismissed in part because the IDEA does not impose liability on the state education agency (SEA) (here, OSSE) anytime a local education agency (LEA) (here, DCPS) fails to implement a student's IEP. *See* Defs.' Mem. at 11–14.

In their opposition, plaintiffs acknowledge that OSSE has no responsibility to implement their IEPs by directly providing special education and related services at IYP, *see* Pls.' Opp'n at 17, but at the same time argue that OSSE has an obligation to "take action to correct DCPS's failure to materially implement the students' IEPs." *Id*. at 14. Given plaintiffs' concession that they are *not* contending that OSSE should have implemented their IEPs directly under 20 U.S.C. § 1413(g), plaintiffs have no other basis to assert that OSSE should have taken direct action to

---

[2]      Plaintiffs appear to have inadvertently cited Israel F.'s administrative complaint instead of Charles H.'s administrative complaint. *See* Pls.' Opp'n at 19 (citing Administrative Due Process Compl. of Israel F. [12-29]). The two complaints are substantively identical, and neither asserts a failure to implement claim against OSSE.

implement their IEPs. Plaintiffs' contention under Claim 1 that OSSE had an obligation to "monitor and intervene to correct DCPS's Action," Pls.' Opp'n at 13–16, simply restates their contention under Claim 2 that OSSE had the obligation to "monitor and enforce the provision of FAPE by DCPS to IYP students," *id.* at 6–7.

The authority cited by plaintiffs does not support their contention that OSSE "failed to implement plaintiffs' and the putative class members' IEPs by failing to provide them their mandated specialized instruction and related services." Second Am. Compl. ¶ 219. Federal law refers to the SEA's responsibilities with regard to "educational programs" and "educational standards," *see* Pls.' Opp'n at 6 (quoting 20 U.S.C. § 1412(a)(11)(A)(ii)(II)), and federal regulations refer to the SEA ensuring compliance with "program requirements," *id.* (quoting 34 C.F.R. § 300.600(b)(2)). Neither suggests that the SEA has to "take action" to ensure implementation any time any student's IEP is not fully implemented.

Plaintiffs cite *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 953–54 (4th Cir. 1997), *see* Pls.' Opp'n at 6, but there, the court addressed only whether the SEA could be held responsible for reimbursement costs for private tuition arising from a failure to provide FAPE. The Fourth Circuit held that the equitable power given to courts under the IDEA allowed for the district court to hold the SEA responsible for reimbursement costs. *Id.* But that is a far cry from holding that the SEA's responsibilities include the obligation to "take action to correct" an LEA's failure to implement an IEP when the desired remedy (implementation of the IEP) is the province of the LEA.

Plaintiffs quote at length from *D.L. v. District of Columbia*, 194 F. Supp. 3d 30, 84 (D.D.C. 2016), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017), but there the Court was addressing a very different situation. In *D.L.*, despite plaintiffs' suggestion, the Court was *not* addressing whether an SEA could be held liable for failing to "take action" when an LEA failed to implement an IEP. Rather,

the court was addressing systemic claims relating to "policies and procedures that ensure identification and provision of a FAPE, timely evaluation, timely eligibility determination, and smooth and effective transition of preschool-age children with disabilities," and whether the District was meeting the requirements of an injunction the court had previously issued. *Id*. And, while plaintiffs cite *Morgan Hill Concerned Parents Association v. California Department of Education*, Civil Action No. 11-3471, 2013 WL 1326301, at *10–11 (E.D. Cal. Mar. 29, 2013), the plaintiffs in that case were relying on an entirely different provision of the IDEA to assert claims against the SEA. Plaintiffs here are correct that the plaintiffs in *Morgan Hill* sufficiently alleged "facts that the SEA had not ensured FAPE due to its failure to monitor, investigate, and enforce the IDEA," Pls.' Opp'n at 7, but plaintiffs fail to note that the paraphrased language was referring to claims brought under Section 1411(e)(2)(B) of the IDEA, not Section 1412(a)(11)(A). *Morgan Hill*, 2013 WL 1326301, at *11.[3] *D.L.* and *Morgan Hill* stand only for the proposition that the SEA may be held liable for systemic claims under certain circumstances, but neither suggests that the SEA's monitoring responsibilities include taking action to implement individual IEPs. If the SEA's responsibilities did include the level of monitoring demanded by plaintiffs, it would impose an incredible burden on the SEA, especially in populous states like New York and California. Beyond the IDEA's general requirement that the SEA ensure the provision of FAPE, plaintiffs cite nothing to suggest that the IDEA imposes such broad and sweeping responsibilities on the SEA.

---

[3]     The *Morgan Hill* court did find that the plaintiffs there had alleged a claim under Section 1412(a)(11)(A) against the SEA, but the claim was not based on implementation of individual IEPs. *Morgan Hill*, 2013 WL 1326301, at *10. The claim was based on "systemic violations" for which "no individual remedy" was sought. *Id*. Here, plaintiffs clearly seek individual remedies. Second Am. Compl. at 60 (requesting relief in the form of individualized compensatory education).

### C.      Plaintiffs Fail To Allege That OSSE Did Not Satisfy Its Monitoring Obligations Under the IDEA (Count 2).

An SEA may only be held liable for failing to monitor an LEA's implementation of IEPs when systemic problems are alleged, and a systemic problem involves a "broad policy" with "fundamentally structural roots." *L.L. By & Through B.L. v. Tennessee Dep't of Educ.*, Civil Action No. 18-754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019). In its motion, the District explained that Count 2 should be dismissed because plaintiffs fail to allege that the temporary use of work packets by DCPS during part of the COVID-19 pandemic demonstrates a systemic failure by OSSE to monitor whether the substantive requirements of the IDEA are being implemented. Defs.' Mem. at 14–16.

Plaintiffs' opposition is fundamentally flawed because it rests on a false premise. While plaintiffs argue that they "allege that DCPS and OSSE failed, as a categorical matter, to implement the IEPs of students," Pls.' Opp'n at 9, they ignore the caveat that they themselves added to that claim—the alleged failure to implement occurred *during the COVID-19 pandemic*. No matter how many times plaintiffs repeat their claim that the use of student work packets during part of the pandemic was an "institutional policy," the fact remains that their systemic claim is inextricably intertwined with an unprecedented and *temporary* event. In contrast, a true systemic problem is based on a "broad policy" that has "fundamentally structural roots." *See L.L.*, 2019 WL 653079, at *6; *see also Parent/Professional Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13, 27 (1st Cir. 2019) (noting "systemic" IDEA claims raise challenges to policies, practices, or administrative failures "at the highest administrative level" (internal quotation marks omitted)); *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992) ("truly systemic" IDEA lawsuits require showing "the IDEA's basic goals are threatened on a systemwide basis"). The

decision to use work packets temporarily at one school during a global pandemic hardly amounts to a broad policy with fundamentally structural roots applicable on a systemwide basis.

Plaintiffs also rely on two red herrings. First, the District has never argued that a systemic claim must involve "all or most special education students across the District." Pls.' Opp'n. at 8. But the District has argued (and continues to maintain) that claims pertinent to a single school accounting for less than one-tenth of one percent of the District's total student enrollment do not qualify as "systemic." Second, the District has never argued that the pandemic nullified its obligations under the IDEA. *Id.* at 10. Rather, the District cited the number of IYP students and the pandemic as relevant factors for the Court to consider when assessing whether plaintiffs are challenging a "broad policy" with "fundamentally structural roots." Given that the use of work packets only began in response to the pandemic, that the use of paper work packets was a temporary measure until in-person instruction could safely resume, and that paper work packets were only used with an extremely small subset of special education students in the District (who were uniquely situated compared to all other special education students), the facts alleged by plaintiffs do not suggest any systemic issues relating to OSSE's monitoring.

Although plaintiffs try to frame *L.L.* to their advantage, *see* Pls.' Opp'n at 12–13, that case clearly supports the District's position. In *L.L.*, the plaintiffs challenged a Tennessee county's practice of denying preschool students with disabilities the chance to be "mainstreamed," or placed into a general education setting with special education supports, and instead segregated them into a separate school solely for students with disabilities. 2019 WL 653079, at *2. The court concluded the claim was systemic because the allegations involved "the categorical refusal to offer mainstreaming to preschoolers" across the entire county. *L.L.*, 2019 WL 653079, at *6. Plaintiffs fail to explain how their allegations compare to such a broad and sweeping policy. They do not

allege that paper work packets were used before the pandemic, that they were used outside of IYP, or that the District intended to continue using paper work packets after the pandemic. In fact, plaintiffs acknowledge that the District has already stopped using paper work packets and in-person services have resumed. *See* Second Am. Compl. ¶¶ 93–94. A temporary measure applicable to a single school and driven solely by an unprecedented pandemic lacks all the hallmarks of a systemic IDEA claim. By plaintiffs' logic, *any* problem with IYP will necessarily be systemic, because it involves a "schoolwide policy affecting all students." Pls.' Opp'n at 8. But that is simply not so. Whether a claim is systemic looks beyond the impact on individual students and focuses on the nature of the problem that caused the impact.

While plaintiffs argue that *Easter v. District of Columbia*, 128 F. Supp. 3d 173 (D.D.C. 2015), supports a finding that they have alleged a systemic issue, it does the opposite. Pls.' Opp'n at 8–9. In *Easter*, the court addressed a failure to implement claim of an adult student detained at Alternative Solutions for Youth (ASY) in the District. The court found that the plaintiff had stated a claim for a systemic violation of the IDEA because he alleged that the District failed to identify an LEA responsible for providing *any* special education services to students at ASY. *Easter*, 128 F. Supp. 3d at 178. The issue there was not whether the plaintiff was receiving the number of hours of specialized education mandated in his IEP. *Id.* The issue was an alleged failure to have *any* entity responsible for providing any special education services. *Id.* The plaintiff therefore had alleged not only that he did not receive services but that there was not even a system in place to potentially provide him with his required services. *Accord Parent/Professional Advocacy League*, 934 F.3d at 27 (explaining that systemic claims must arise "at the highest administrative level"). The allegations of the plaintiff in *Easter* bear no resemblance to the allegations of plaintiffs here. Count 2 should be dismissed.

III.   **Plaintiffs Fail To Allege a Violation of Section 504, the ADA, and the DCHRA Because They Do Not Allege That Their Disabilities Were a Reason They Did Not Receive FAPE (Counts 3-5).**

In its motion, the District explained that Counts 3 through 5 should be dismissed because plaintiffs fail to allege that any failure to implement their IEPs was both (1) caused by their disabilities and (2) the result of bad faith or gross misconduct on the part of the District. Defs.' Mem. at 13–14. Nothing in plaintiffs' opposition compels a different result.

A.   **Plaintiffs Fail To Allege That Their Disabilities Caused the Alleged Discrimination.**

To state a violation of Section 504, the ADA, or the DCHRA, plaintiffs must allege that, at a minimum, their disabilities were "a motivating factor" in the decision to not implement their IEPs.[4] As explained in the District's motion, plaintiffs fail to allege any facts showing that their disabilities were related to the alleged denial of FAPE. Defs.' Mem. at 17–20. Instead, plaintiffs' allegations make clear that their detainment at the D.C. Jail during the pandemic was the sole reason why plaintiffs received the paper work packets that they allege failed to provide them FAPE. *See* Pls.' Opp'n at 24.

In their opposition, plaintiffs argue that they have established causation because they allege they "were excluded from meaningful access to public education that is equal to the opportunity and education that the District has afforded and continues to afford to non-disabled public school students." *Id*. at 31; *see also id*. at 29 ("[Plaintiffs] allege that the District excluded them from public education by virtue of the District's policy of eliminating direct instruction, which failed to

---

[4]       Section 504 requires a higher showing of causation than the ADA. Under Section 504, plaintiffs must show that they were discriminated against "solely by reason of" their disabilities. *Reid-Witt on behalf of C.W. v. District of Columbia*, 486 F. Supp. 3d 1, 10–11 (D.D.C. 2020). Under the ADA, "the disability must simply be a motivating factor in the alleged discrimination." *Id*. As explained below, given that plaintiffs cannot meet the ADA's standard, they also cannot meet Section 504's higher causation standard.

meet their needs as adequately as those of non-disabled students."). Plaintiffs thus confirm that their claim turns on a comparison of services provided to students outside of the D.C. Jail with services provided to students inside the D.C. Jail. Because the purported differential treatment is not alleged to have been caused by plaintiffs' disabilities, plaintiffs have failed to state a violation of Section 504.

Plaintiffs attempt to avoid dismissal by turning again to a strawman and arguing that "[t]he fact that students are incarcerated does not entitle the District to discriminate against them by failing to carry out their IEPs." Pls.' Opp'n at 32. Although that is true, it is also not relevant without assuming a false premise: that the failure to implement the IEP of any student amounts to *per se* discrimination. It does not. A finding of discrimination also requires that the failure to implement must have been *caused* by the student's disability for relief to be available. *See* Defs.' Mem. at 17–20 (citing cases). While plaintiffs are correct that whether an individual is incarcerated does not impact his right to FAPE under the IDEA, plaintiffs err by conflating discriminatory treatment with the failure to implement an IEP. Not every failure to implement an IEP will have been "because of" the student's disability. And plaintiffs have not alleged that any failure to implement IYP students' IEPs was in fact motivated by their disabilities.

Confusingly, when discussing *H.P. by and through W.P. v. Naperville Community Unit School District*, 910 F.3d 957, 961 (7th Cir. 2018), plaintiffs argue that "unlike the residency policy in *H.P.*, which is facially neutral and unrelated to education, here, plaintiffs make a direct claim that the District's educational policies at IYP violated IDEA by failing to provide them FAPE." Pls.' Opp'n at 33. But plaintiffs do not explain how their claim is more "direct" than that raised by the plaintiff in *H.P.* or how the "directness" of a claim impacts the causation analysis. Just as the plaintiff's physical location in *H.P.* was the cause of the alleged violation, so too here. Plaintiffs

offer no basis to believe their disabilities gave rise to their alleged deprivation of FAPE as opposed to the clear and obvious source: their detainment at the jail.

Plaintiffs cite *Easter* in support, *see* Pls.' Opp'n at 25, but that case again directly undermines their argument. In *Easter*, the plaintiff, an incarcerated student with a disability, alleged that he was denied programs available to non-disabled inmates because of his disability. 128 F. Supp. 3d at 179. His claim was therefore that non-disabled inmates received different educational offerings from disabled inmates. *Id.* ("While adult students who do not have disabilities may attend alternative programs with their same-age peers, … Mr. Easter alleges he was denied the same services as other adult students solely because of his disability."). But that is not what plaintiffs allege here.

The other two cases cited by plaintiffs do not support their theory either. In *A.U. v. District of Columbia*, Civil Action No. 19-3512, 2020 WL 4754619 (D.D.C. July 13, 2020), the Court did find that the plaintiff had alleged discrimination because of her disability but did so under very different allegations. The plaintiff alleged that her disability required her to be educated at home and that DCPS treated disabled students who needed to be educated in their homes differently from students who were not educated in their homes. *Id.* at *12. Because it was the plaintiff's disability that required her to be educated at home, it was appropriate to compare the services offered for at-home students against services offered for in-school students and conclude that "but for" their disabilities requiring them to be educated at home, they would have received the same services as non-disabled students. *Id.* at *11. In contrast, plaintiffs are not located at the D.C. Jail because of their disabilities. Likewise, in *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 277 (D.D.C. 2015), while the court granted the plaintiff's motion for summary judgment when evidence showed that a deaf inmate was not provided an interpreter as a reasonable accommodation, the relevant

comparison was between non-disabled inmates and disabled inmates, not between non-incarcerated deaf individuals and incarcerated deaf individuals.

Here, as the District explained in its motion, *see* Defs.' Mem. at 13–14, the proper comparator for IYP students would be non-disabled students detained at the D.C. Jail. But plaintiffs do not allege that any non-disabled individuals at the D.C. Jail are being treated differently. Instead, plaintiffs focus on comparing the educational services offered to two groups of students—one group that is detained at the jail and another group that is not. *See* Pls.' Opp'n at 19–20. But the obvious cause of that different treatment (and the only cause that can be reasonably inferred from the Amended Complaint) is *detainment at the jail*, which cannot support a claim of discrimination based on disability. *See H.P.*, 910 F.3d at 961 (rejecting a discrimination claim because, "[a]s the record makes clear, it is undisputed that the District disallowed H.P. from attending NCHS precisely because of its residency policy, and not because of H.P.'s alleged disability").

Finally, while plaintiffs point to this Court's decision in *Reid-Witt* as support for their causation argument, they distort the Court's discussion. *See* Pls.' Opp'n at 33–34. When discussing the types of allegations that could give rise to a claim under Section 504, the Court in *Reid-Witt* did note that "removing a student from an elite school because she needs special education while telling her she does not qualify for such services" might state a claim. *Reid-Witt*, 486 F. Supp. 3d at 14. But in that example, the student would have been removed from the elite school *because of* her disability. If the same student was removed from the same school because she had committed a crime, the removal would *not* have been because of her disability. Counts 3 through 5 should be dismissed.

**B.**     **Plaintiffs Fail To Allege That Any Delay in Implementation of Their IEPs Was The Result of Bad Faith or Gross Misconduct.**

Even assuming plaintiffs could allege that their disabilities were the reason that their IEPs were not implemented, Counts 3 through 5 should still be dismissed because plaintiffs have failed to allege bad faith or gross misconduct by the District. *See* Defs.' Mem. at 20–22. Plaintiffs argue that they have alleged bad faith or gross misconduct because they allege the District "failed to provide education in conformity with students' IEPs to all IYP students at the DC Jail complex." Pls.' Opp'n at 24. But, as with plaintiffs' causation argument above, their argument ignores the requirement that a Section 504 claim involve more than simply a failure to implement an IEP. *Reid-Witt*, 486 F. Supp. 3d at 7. Plaintiffs repeatedly rely solely on the alleged failure to implement as the basis for their bad faith or gross misjudgment allegation when more is required.

Plaintiffs cite *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282 (S.D.N.Y. 2007), Pls.' Opp'n at 28, but *S.W.* is plainly distinguishable because there the claim involved a system that had no potential to provide FAPE at all. In *S.W.*, the plaintiff identified specific policies that were in place that impeded implementation of IEPs. 528 F. Supp. 2d at 287. Among others, the plaintiff alleged that the defendants imposed onerous requirements on service providers as a condition of contracting with the county, which resulted in a shortage of service providers. *Id*. at 287–88. The plaintiffs also alleged that the defendants limited the number of service hours for autistic children and failed to properly train staff and personnel. *Id*. Here, by contrast, plaintiffs allege no such barriers, only a lack of cooperation between District agencies to provide FAPE, despite the ability to do. Similarly, in *B.R. ex rel. Rempson v. District of Columbia*, 524 F. Supp. 2d 35, 42 (D.D.C. 2007), the Court explained that, "if the defendants conducted an IEP, assessed the plaintiff's child as needing full-time special services, and then placed her in a facility with no capacity to deliver

13

special services … then the court would encounter no difficulty in characterizing such conduct as marked by gross misjudgment or bad faith." There, too, the key was the lack of capacity.

Unlike in *B.R.*, plaintiffs do not allege that the District placed them in the D.C. Jail at all, let alone with the knowledge that IYP lacked any capacity to provide any of the services mandated by their IEPs. Instead, implicit in plaintiffs' allegations is that IYP *does have* the capacity to provide the required services but that since the onset of the pandemic those services have not been delivered with fidelity. Those allegations at most show a delay in implementation but not a program that was designed to fail from the outset as was apparently the case in *S.W.* and *B.R.*

Because plaintiffs' allegations do not allege bad faith or gross misconduct, plaintiffs have failed to state a claim for disability discrimination and Counts 3 through 5 should be dismissed for that reason as well.

## IV.     Plaintiffs Cannot Assert a Claim for an Alleged Violation of the District's Regulations Implementing the IDEA (Count 6).

The District does not dispute that the "IDEA provides a cause of action for violations of state regulations," *see* Pls.' Opp'n at 20, but any such claim is incorporated into a claim under the IDEA itself. *See* 20 U.S.C. § 1409(9)(b) (defining FAPE under the IDEA as special education and related services that "meet the standards of the State education agency"). This is demonstrated in each of the cases plaintiffs cite, which involved only claims that the state violated the IDEA (or its predecessor) by failing to comply with state regulations, not separate causes of action arising directly under the regulations themselves. *See L.H. by D.R. v. Tennessee Dep't of Educ.*, Civil Action No. 19-517, 2019 WL 5268262 at *5 (M.D. Tenn. Nov. 12, 2019) (alleging a violation under the IDEA); *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 645, 647 (3d Cir. 2000) (same); *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 413 (1st Cir. 1985) (alleging a violation under the Education for All Handicapped Children Act).

In any event, Claim 6 should be dismissed because it is entirely duplicative of Claim 1. *See* Defs.' Mem. at 21–22. Plaintiffs' opposition makes clear that they are referring to 5-E D.C.M.R. § 3002.1(a) solely because "it extends the IDEA's protections to individuals up to the conclusion of the semester in which a student turns 22 years of age, … rather than up to 21 years of age," as is the case under federal law. *See* Pls.' Opp'n at 21. But plaintiffs do not argue that the District is failing to implement the IEPs of students because of their age, and the Second Amended Complaint does not contain any factual allegations that could support such an inference. Rather, plaintiffs are challenging the implementation of IEPs for *all* IYP students based on an alleged policy of eliminating direct in-person or virtual instruction. *See* Second Am. Compl. ¶¶ 6, 20. Indeed, plaintiffs have ensured that their failure-to-implement claim, Count 1, encompasses students up to age 22 by alleging a violation of the IDEA "and the implementing regulations," and specifically citing to 5-E DCMR § 3002.1(a). *See id.* ¶ 216. Count 6 is accordingly superfluous, as it is incorporated within Count 1, and should be dismissed. *See WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 59 (D.D.C. 2015).

## V.        Israel F.'s Claims Are Moot in Light of His Administrative Settlement.

Plaintiffs filed the Second Amended Complaint on July 21, 2021 and all allegations in the Complaint are based on events occurring *before* that date. Israel F. was released from custody on May 14, 2021, and he settled any and all claims relating to his attendance in IYP prior to that date. *See* Pls.' Opp'n at 42–43. Even assuming that the allegations about Israel F.'s past incarceration are true, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

The gravamen of plaintiffs' Second Amended Complaint is that the District failed to implement their IEPs because of an "institutional policy" to stop direct instruction and to use paper

work packets during a portion of the pandemic. Pls.' Opp'n at 9; *id*. at 11 (arguing that "the District's policy to eliminate direct instruction and related services … lead[] directly to the District's wholesale denial of FAPE"). However, plaintiffs acknowledge that the use of paper work packets has stopped and that direct instruction has resumed. Second Am. Compl. ¶¶ 93–94. The District has confirmed the same in its last three Status Reports to the Court. *See* July 1, 2021 Status Report [41]; August 2, 2021 Status Report [50]; September 1, 2021 Status Report [63].

Despite Israel F. no longer having a stake in the controversy over the use of paper work packets, plaintiffs contend that so long as one of several plaintiffs in an action has standing, all may remain in an action, and because the District does not dispute Charles H.'s standing, the Court need not dismiss Israel F. Pls.' Opp'n at 36–37. Plaintiffs incorrectly state the underlying legal standard. In any case, Israel F. has fully and finally settled his claims. Settlement of his claims warrants his dismissal.

In general, a plaintiff's interest in a class action ceases to exist if he settles his individual claims before a class is certified. *Potter v. Nw. Mortgage, Inc.*, 329 F.3d 608, 611 (8th Cir. 2003) ("[A] federal court should normally dismiss an action as moot when the named plaintiff settles its individual claim, and the district court has not certified a class."); *Clark v. State Farm. Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1138 (10th Cir. 2009) ("[A] suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified."); *cf. McClain v. Hanna*, 949 F.3d 266, 268 (6th Cir. 2020) (collecting cases for proposition that "[i]f a named plaintiff settles his case and does not expressly reserve any right to pursue his class claims, then he may not pursue those claims on appeal"). The critical inquiry is whether the putative class action representative retains a personal stake in the ongoing

action despite settling his claims.[5] *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980) (explaining that when asking whether a plaintiff who has settled her claims retains an interest in pursuing class certification, courts "must look to the nature of the 'personal stake' in the class certification claim"). A plaintiff who releases "any and all claims" against a defendant through an individual settlement cannot continue to pursue class claims arising from the same facts. *Walsh v. Ford Motor Co.*, 945 F.2d 1188, 1191–92 (D.C. Cir. 1991) (Ginsburg, R.B., J.) (concluding named plaintiff could not represent class of defective automobile consumers on appeal when plaintiff reached individual settlement releasing "any and all … claims … whatsoever" arising from underlying facts).

Israel F. had started but not yet completed his administrative exhaustion process when this lawsuit was filed. He has now fully settled his administrative claims, which form the basis for his claims in this lawsuit.[6] *See* Israel F. Settlement Agreement [34-3]. He should be dismissed.

## VI.  Malik Z.'s Undisputed Failure To Exhaust Disqualifies Him from Serving as a Named Plaintiff.

Plaintiffs acknowledge that Malik Z. has not exhausted his administrative remedies but contend he should be permitted to remain a named plaintiff anyway. *See* Pls.' Opp'n at 34. Their

---

[5]      Plaintiffs cite several cases purportedly standing for the proposition that "so long as one of several plaintiffs in an action has standing, all may remain in an action." Pls.' Opp'n at 36. These cases, for starters, do not stand for such a broad proposition. They simply raised issues that the court concluded it could reach upon determining at least one plaintiff had standing to raise them— a far cry from "holding" that one plaintiff with standing creates a backdoor for every other plaintiff to remain. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) (concluding merits could be reached upon finding one plaintiff had standing); *Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 264 & n.9 (1977) (same); *Mtn. State Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) (same). Additionally, these cases did not involve putative class actions—nor did they involve settlements in which the plaintiffs involved fully settled their claims through the administrative process.

[6]      Plaintiffs' characterization to the contrary, the District did not "pick off" Israel F. Israel F. voluntarily agreed to settle his case.

arguments are incorrect.

**A.      Vicarious Exhaustion Does Not Apply Because There Is a Real Possibility Malik Z.'s Claims Will Settle.**

First, plaintiffs contend that because Charles H. has exhausted his remedies, Malik Z. can remain a named plaintiff under the "vicarious exhaustion" doctrine, which provides that certain kinds of class actions may proceed with multiple named plaintiffs as long as one named plaintiff has exhausted his or her administrative remedies. *See* Pls.' Opp'n at 34-35. But that doctrine has no application here. Vicarious exhaustion most commonly arises in the employment discrimination context, where the filing of a charge with the Equal Employment Opportunity Commission (EEOC) is a prerequisite to filing suit. *See, e.g.*, *Brooks v. District Hospital Partners, L.P.*, 606 F.3d 800, 807 (D.C. Cir. 2010). For the doctrine to apply in such cases, the EEOC charge by the plaintiff who has exhausted "must '(1) put the employer-defendant on notice of all charges by the similarly situated plaintiff[s], and (2) provide the employer and the EEOC with an opportunity for administrative consolidation and resolution.'" *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 63 (D.D.C. 2011) (quoting *Foster*, 655 F.2d at 1322).

But the law in this circuit is clear that when two individuals' claims "differ to the extent that there is a real possibility that one of the claims might be administratively settled while the other can be resolved only by the courts, then the rationale of [vicarious exhaustion] does not apply." *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981). Put differently, the doctrine only applies when the claims raised by the two plaintiffs "are so similar that it can fairly be said that no conciliatory purpose would be served by" each plaintiff exhausting separately. *Id.* at 1321–22.

Although the D.C. Circuit has not expressly decided whether vicarious exhaustion applies to cases brought under the IDEA, the principles behind the doctrine apply squarely to plaintiffs'

allegations here.[7] It is hard to imagine a more "real possibility" of administrative resolution than is presented by this case when one of the named plaintiffs settled his administrative claims. *See* Defs.' Mem. at 23–25. Israel F. fully resolved his claims through the very administrative process Malik Z. actively continues to pursue. The possibility of Malik Z. resolving his claims, too, is significant. To the extent the outcome of his due process proceeding is uncertain, it is only because Malik Z.'s claims about his special education at IYP are about his own needs: the requirements of his individual IEP, whether those requirements have been met, and what individualized remedies are appropriate for him specifically. Charles H.'s administrative claims, in other words, did not "provide … an opportunity for administrative consolidation and resolution" of Malik Z.'s claims, too. *See Byrd*, 807 F. Supp. 2d at 63. Vicarious exhaustion does not apply under such circumstances.

### B. The "Futile or Inadequate" Exception Does Not Apply Because Plaintiffs Cannot Show Futility, an Unlawful Practice, or the Improbability of Adequate Relief.

Second, and related, plaintiffs attempt to invoke an exception to the IDEA's exhaustion requirement that applies when exhaustion "would be futile or inadequate." Pls.' Opp'n at 35 (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)). As plaintiffs point out, however, this exception is inapplicable unless they can show that: "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing

---

[7]     Although plaintiffs have also brought claims under the ADA, Section 504, and the DCHRA, plaintiffs acknowledge that the IDEA's exhaustion requirement applies to any claim seeking relief also available under the IDEA, regardless of the cause of action. *See* Pls.' Opp'n. at 34 (citing 20 U.S.C. § 1415(*l*)).

administrative remedies." Pls.' Opp'n at 35 (quoting *D.L. v. District of Columbia*, 450 F. Supp. 2d 11, 17 (D.D.C. 2006)). Plaintiffs cannot show any.

Plaintiffs attempt to couch the first exception—futility of resorting to the IDEA's due process procedures—in abstract questions about "the purposes behind exhaustion." Pls.' Opp'n at 36. But the concrete inquiry is much simpler. Futility "only applies where exhaustion would be 'clearly useless,' such as where the agency 'has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue.'" *Hall v. Sebelius*, 689 F. Supp. 2d 10, 23–24 (D.D.C. 2009) (quoting *Randolph-Sheppard Vendors v. Weinberger*, 795 F.2d 90, 106 (D.C. Cir. 1986)). That is not the case here. The central issue in Malik Z.'s due process proceeding is whether the District failed to implement his IEP and provide him with FAPE during his incarceration, and, if it did, what remedies are available to him. *See* Second Am. Compl. ¶ 207. OSSE's Office of Dispute Resolution has not previously taken a position on this issue, let alone one that would render Malik Z.'s proceedings "useless."

This stands in stark contrast to *Hall*, where the court found exhaustion futile for several plaintiffs challenging a Social Security Administration (SSA) policy as contrary to the Social Security Act on its face. 689 F. Supp. 2d at 24. The policy in question required all Social Security recipients to forfeit the right to receive Social Security benefits in order to withdraw from Medicare Part A. *Id.* Administrative exhaustion there would have required each plaintiff to withdraw from Medicare, then go through the process of applying for benefits, receiving an initial determination, pursuing reconsideration, and seeking a hearing before an administrative law judge. *Id.* at 22. In concluding that several named plaintiffs could bring suit without first availing themselves of this process, the court reasoned that "there are no facts unique to any of [the plaintiffs' individual]

claims that would allow the SSA to reach a particular decision for one Plaintiff and a different decision for another, or that should be put on the record later to assist this Court." *Id.* at 24.

Here, by contrast, Israel F. resolved his administrative claim through the very process plaintiffs now argue would be futile for Malik Z. Plaintiffs nevertheless attempt to argue that requiring Malik Z. to pursue his administrative remedies is futile because it would not "provid[e] the District with the opportunity to take corrective action." Pls.' Opp'n at 36. But plaintiffs have it exactly backwards. To the extent Malik Z. has raised individual issues unique to him in his administrative proceedings, such as whether his IEP has been implemented and, if not, what remedies would be appropriate for him specifically, he cannot pursue those *at all* in a putative class action, but instead can only pursue them through the administrative process.

Rather than supporting their position, the cases plaintiffs point to highlight the utility of administrative exhaustion here. In *K.W.*, the court found exhaustion futile in a lone plaintiff's individual IDEA lawsuit because he had previously brought several due process complaints and pursued them to completion without receiving full relief. *See K.W. v. District of Columbia*, 385 F. Supp. 3d 29, 42 (D.D.C. 2019). Malik Z., however, has not completed any due process proceedings and seeks not to pursue his own individual claims before this Court but solely those collectively applicable to a putative class. In *D.L.*, the court found futility because of the failure to take corrective action after repeated notice of deficiencies from the federal government. *See D.L. v. District of Columbia*, 450 F. Supp. 2d 11, 18–19 (D.D.C. 2006) (finding futility where agency had received notifications of specific deficiencies at issue "[o]n numerous occasions" over several years from U.S. Department of Education). No such circumstances exist here. And in *Massey*, futility was based on procedural failures that impeded the plaintiff's ability to seek an administrative remedy in the first place. *See Massey v. District of Columbia*, 400 F. Supp. 2d 66,

73 (D.D.C. 2005). Malik Z., by contrast, alleges no difficulties in filing his due process complaint or obtaining a hearing. The IDEA's procedures are adequate. Plaintiffs cannot show otherwise.[8]

Plaintiffs also have not established the second means of showing futility, a policy of general applicability that is contrary to law. *See* Pls.' Opp'n at 39–40. The District has repeatedly argued that it has not acted contrary to law, let alone adopted a policy, pattern, or practice to that end. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 14–23 [23]; Defs.' Mem. at 9–22. In any case, although plaintiffs raise claims in this lawsuit applicable to the IYP program as a whole, Malik Z.'s due process complaint—as is true of IDEA due process complaints generally—pertains to his particular educational needs and the services he received. The administrative relief he seeks requires the expertise of an OSSE hearing officer able to identify any relief that may be appropriate in light of his specific educational needs. That is precisely why he may very well attain full relief for himself from an administrative settlement. By pointing only to alleged practices applicable across IYP, plaintiffs ignore the relevant role of agency expertise in IDEA due process hearings. *Cf. Hall*, 689 F. Supp. 2d at 24 (noting general-applicability exception may excuse exhaustion in cases where plaintiffs do not bring claims "where agency expertise would be important"). Plaintiffs cannot establish futility on this basis.

Finally, plaintiffs cannot show it is "improbable" that administrative remedies would provide Malik Z. with "adequate" relief. *See* Pls.' Opp'n at 40. Plaintiffs' only argument on this point is that Malik Z. cannot achieve "systemic" relief—namely "a declaratory judgment that the District has violated the rights of the plaintiff class" and "a prospective injunction" applicable to all of them—administratively. *Id*. But the question, once again, is whether there is a "real

---

[8]    Plaintiffs' contention that a class-action lawsuit is the only way they have to obtain "system-wide" relief, Pls.' Opp'n at 38, is not relevant to whether Malik Z. can serve as a named plaintiff without having exhausted his administrative remedies.

possibility" that Malik Z. will obtain full and satisfactory relief through the administrative process. And there is an obvious reason to answer in the affirmative:  Israel F. brought the same claims in his administrative proceeding as Malik Z. is now pursuing, *see* Second Am. Compl. ¶ 181; yet Israel F. nevertheless reached a settlement through the administrative process. Plaintiffs attempt to overcome this by contending that Israel F.'s administrative relief "is, in fact, not adequate, since he has re-enrolled as a student at the DC Jail complex and continues to be subject to the same illegal and discriminatory policy that the administrative hearing officer was unable to change in Charles H.'s administrative case." Pls.' Opp'n at 41. But Israel F.'s changed circumstances are not relevant to whether his settlement provided him with adequate relief at the time he entered into it. The relevant question is whether Malik Z. can show his exhaustion would be futile when Israel F.—who raised the same claims in his administrative proceeding—was able to fully resolve his due process complaint under his then-current circumstances. Far from "improbable," Malik Z. stands a significant chance of receiving adequate relief. He cannot establish futility and should be dismissed as a named plaintiff for the failure to exhaust.

## CONCLUSION

For the foregoing reasons, the Court should dismiss in part plaintiffs' Second Amended Complaint with prejudice.

Dated:  September 23, 2021.         Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
MICAH BLUMING [1618961]
HONEY MORTON [1019878]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 805-7512
Fax: (202) 730-1470
richard.sobiecki@dc.gov

*Counsel for Defendants*