**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHARLES H.**, *et al.*,<br><br>               **Plaintiffs,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>               **Defendants.** | **Civil Action No. 21-997 (CJN)** |

<u>**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CONTEMPT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION.................................................................................................................1

BACKGROUND...................................................................................................................3

    I.    The Preliminary Injunction Order................................................................3

    II.   The District's Status Reports.........................................................................3

    III.  The District's Transition to a New IYP Service Provider..............................5

    IV.  Accelerated Learning and Compensatory Education.......................................9

       A.  Accelerated Learning..............................................................................9

       B.  Compensatory Services.........................................................................10

LEGAL STANDARD .........................................................................................................11

ARGUMENT.....................................................................................................................12

    I.    The District Substantially Complied with the Court's Order in July and August.........12

    II.   The District Took All Reasonable Steps To Comply with the Court's Order in September. ......................................................................................................14

    III.  Plaintiffs' Requested Relief Would Inhibit, Not Facilitate, Compliance with the Court's Order...................................................................................................17

       A.  Maya Angelou PCS Is Now the IYP Provider and Has Already Increased Delivery of Specialized Instruction and Related Services. ...........................................17

       B.  Plaintiffs' Proposed Relief Would Impede the District's Ongoing Efforts To Develop and Implement Compensatory Education and Accelerated Learning Plans.................18

CONCLUSION..................................................................................................................19

## TABLE OF AUTHORITIES

*Cases*

*Al-Qahtani v. Obama*, 604 F. Supp. 2d 101 (D.D.C. 2009)......................................................11

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................................11

*In re Fannie Mae Sec. Litig.*, 552 F.3d 814 (D.C. Cir. 2009) ..................................................11

*Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*,
   736 F. Supp. 2d 35 (D.D.C. 2010) ...........................................................................11, 12, 15

*Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005)................................19

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) .............................................................11

*SEIU Nat'l Indus. Pension Fund v. Artharee*, 48 F. Supp. 3d 25 (D.D.C. 2014) ......................11

*Shepherd v. American Broadcasting Co., Inc.*, 62 F.3d 1469 (D.C. Cir. 1995)..........................11

*Teamsters Loc. Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360 (D.D.C. 2006)
   ............................................................................................................................................14

*Statutes*

D.C. Code § 1-204.41 ..............................................................................................................6

# INTRODUCTION

On June 16, 2021, the Court entered a preliminary injunction in this matter concerning the provision of specialized instruction and related services to students enrolled in the Inspiring Youth Program (IYP) at the D.C. Jail. Plaintiffs argue that defendants the District of Columbia, Office of the State Superintendent of Education (OSSE), and District of Columbia Public Schools (DCPS) (collectively, the District) failed to comply with the Court's order in July, August, and September 2021 and that the District should be held in contempt as a result. Plaintiffs' motion, however, is based on a misunderstanding of what students' individualized education programs (IEPs) require during the summer session (July and August), and ignores the many efforts that the District made to comply in September 2021 during a transition period to a new service provider for IYP. Plaintiffs' motion should be denied.

First, plaintiffs have not shown by clear and convincing evidence that the District failed to comply with the Court's June 16 Order in July and August. The Court's order requires the District to satisfy the requirements of students' IEPs. The District has done so. Plaintiffs wrongly assume that IEP requirements during the summer session are identical to requirements during the standard school year. But as already explained in the District's August 2, 2021 Status Report, given the reduced hours of general education received by IYP students during the summer session, the District provided them with the corresponding specialized instruction to make the general education material accessible to the students—which is what their IEPs require.

Second, the District took all reasonable steps to ensure compliance with the injunction in September 2021. Despite the District's best efforts, the District faced difficulties retaining staff for IYP in September, which limited the District's ability to deliver the hours mandated by students' IEPs. The District's inability to retain sufficient staff was caused by several factors, including the timing of the transition, the global pandemic, the special education needs of all the students, and

the location of the school inside a correctional facility. Because the District took all reasonable steps to ensure compliance, a contempt finding is not warranted.

Third, plaintiffs' assertions about the transition from DCPS to Maya Angelou Public Charter School (Maya Angelou PCS) as the service provider for IYP are legally irrelevant and factually wrong. Plaintiffs' motion argues that the District failed to comply with the Court's order from July through September; it does not concern compliance in October. Further, plaintiffs' unsupported assertion that OSSE did not make available to Maya Angelou PCS student data prior to October 1, 2021, is incorrect. OSSE and Maya Angelou PCS worked closely together in the months and weeks leading up to the October 1 transition, and OSSE provided Maya Angelou PCS with access to the student level data it needed to ensure a smooth transition.

Finally, even assuming a contempt finding is warranted (it is not), the Court should not grant plaintiffs' requested relief because it is unnecessary and would only interfere with the delivery of services by Maya Angelou PCS. To the extent IYP students have suffered learning loss during the pandemic, either before or after the Court's injunction, an assessment of that deficit has already begun, and the appropriate remedy—accelerated learning and, if necessary, an offer of compensatory services—will be made at the appropriate time. If granted, plaintiffs' demand that the students receive what amounts to additional instruction at a time when their days are already fully scheduled would undermine the services plaintiffs are already receiving. Similarly, plaintiffs' demand for additional reporting would do nothing to increase the number of hours of services being delivered—in fact, it is more likely to cause a decrease in hours of services by diverting resources away from education.

2

## BACKGROUND

### I.   The Preliminary Injunction Order

On June 16, 2021, the Court granted plaintiffs' motion for a preliminary injunction and ordered the District to (1) provide students enrolled in IYP with the full hours of specialized instruction and related services mandated by their IEPs within 15 days of the Court's order; (2) report every 30 days on the implementation of specialized instruction and related services for IYP students; and (3) provide to the Court copies of students' IEPs and a summary of the hours mandated by each student's IEP. Prelim. Inj. Order [37] at 1 (June 16 Order). At that time, the service provider for IYP on behalf of the District was DCPS. *See* Mem. Op. Granting Prelim. Inj. [38] at 3.

### II.   The District's Status Reports

In compliance with the Court's June 16 Order, the District filed its first status report on July 1, 2021 [41], which detailed its plan to comply with the preliminary injunction. Specifically, in response to space limitations caused by the global pandemic, the District explained its plan to begin housing as many IYP students as possible in the Correctional Treatment Facility (CTF), where the Department of Corrections (DOC) had identified classroom spaces that could be used for in-person instruction with social distancing protocols in place. *Id.* at 2. The vast majority of IYP students housed in the jail's general population were moved into CTF before the start of the summer term on July 6, 2021. *Id.* The District reported, however, that not all IYP students could be moved, as a small number had to remain housed in the CDF general population for health, safety, and security reasons. *Id.* Additionally, several students remained housed in restrictive housing units, most of which were located in CDF, for safety and disciplinary reasons. *Id.* at 2–3. The District also reported progress on a plan to install Wi-Fi internet throughout CDF and CTF, and to make available virtual classroom software on digital education tablets available to IYP

students. Finally, the District notified the Court that DCPS would no longer be the education provider for IYP as of September 30, 2021. *Id.* at 3. At that time, the District had yet to finalize a replacement for DCPS.

On August 2, 2021, the District filed its second status report [50].[1] With regard to the hours of specialized instruction and related services required to be provided during DCPS's summer session, the District explained that generally the hours listed in a student's IEP apply only to the regular academic year. *Id.* at 2. The hours required to be provided during the summer session depend on whether a student needs "extended school year" (ESY) services, which require the provision of specialized instruction or related services during the summer to prevent student regression over the break. *Id.*[2] The District further explained that a local education agency (LEA) must ensure that any summer courses provided to special education students are fully accessible to those students. *Id.* at 3. In addition, the District provided detail about the safety and security restrictions in place in the jail's restricted housing units. *Id.* at 5. Along with its status report, the District filed under seal the IEPs of five newly enrolled IYP students [51-6, 51-7, 51-8, 51-9, 51-10], and a detailed chart showing the hours of specialized instruction and related services students received during each week of July [51-4].

---

[1]    The District determined that the best way to comply with the June 16 Order was to submit a chart listing each IYP student and the number of hours of specialized instruction and related services that student received each week over the past month. Because such a chart would identify IYP students by their real names, including the named plaintiffs, the District filed the chart under seal and did the same for each subsequent status report. References here to each "status report" the District filed includes the publicly filed report and all accompanying items filed separately under seal.

[2]    The District reported that two students enrolled in IYP at the time had IEPs calling for ESY. August 2, 2021 Status Report at 5. One of those students was on pace to graduate by the end of the summer and was thus determined not to be at risk of experiencing regression. *Id.* The other student had opted out of IYP for a portion of the summer. *Id.*

On September 1, 2021, the District filed its third status report [63]. IYP's summer session ended on August 6, 2021, so during much of the period covered by the report, IYP students were on a break before the start of the fall term and not receiving instruction or related services. Among other things, the District reported that Maya Angelou PCS would take over as the IYP provider effective October 1, 2021. *Id.* at 2.

On October 1, 2021, the District filed its fourth status report [70]. During September, the District continued preparations for the October 1, 2021 provider transition while simultaneously working to deliver specialized instruction and related services to IYP students. *Id.* at 2–4. In its monitoring role, OSSE supervised the transition from DCPS to Maya Angelou PCS as the service provider at IYP through regular meetings, ensuring funding resources would be timely allocated, and providing technical assistance. *Id.* at 1–2. In addition, DCPS worked to complete needed IEP annual and triannual evaluations and to update student records prior to the transition. *Id.* at 4.

On November 1 and 2, 2021, the District filed its fifth status report [74]. As compared to September 2021, IYP students experienced a dramatic increase in the number of hours of specialized instruction received, with the majority of students receiving the full hours called for in their IEPs. And, as noted in the District's report, while the delivery of related services was delayed in October, Maya Angelou PCS has a plan in place to make up in November the hours of related services missed in October. *Id.* at 2. Finally, Maya Angelou PCS has begun collecting data to prepare individualized accelerated learning plans for each student at IYP. *Id.* at 3.

### III.    The District's Transition to a New IYP Service Provider.

Pursuant to a Memorandum of Understanding, DCPS was required to provide specialized instruction and related services to IYP students during the 2020-21 academic year. *See* DCPS, OSSE, and DOC MOA (DCPS MOA) [12-4]. In spring 2021, the District made the decision not to renew the DCPS MOA, and instead to seek a new service provider for IYP for the 2021-2022

academic year. Decl. of Victoria Glick (Glick Nov. 2 Decl.) ¶ 3 (attached as Ex. A). Given that the fiscal year in the District closed on September 30, 2021, D.C. Code § 1-204.41(a), the decision was made to have DCPS continue as the service provider through the expiration of its contract on September 30, 2021.

Although the District's decision to continue using DCPS through the end of September avoided a rushed transition to a new service provider, it raised other challenges. Most notably, IYP staff contracts then in place only extended to August 6, 2021, the end of the summer term. Declaration of Dr. Amy Maisterra (Maisterra Nov. 2 Decl.) ¶¶ 5–6 (attached as Ex. B). Anticipating that IYP staff would seek new positions for the 2021-2022 academic year, and because those new positions would likely require them to start before October 1, 2021, the District immediately began taking steps to ensure IYP had adequate staffing in September 2021. Maisterra Nov. 2 Decl. ¶¶ 8–9.[3]

First, the District investigated whether any then-current staff would agree to stay on through September 30, 2021. Maisterra Nov. 2 Decl. ¶ 8. Next, the District began exploring short-term staffing options, which included pursuing staff from DCPS's pool of active substitutes in addition to considering retired DCPS special education teachers and individuals from DCPS's qualified candidate pool. *Id*. ¶¶ 8–10. The District also contacted a third-party staffing contractor for assistance in identifying potential staff, however due to the pandemic and IYP's location in an adult jail, the contractor's candidates were not viable options because they were not permitted to enter the jail. *Id*.

---

[3]     In the field of secondary education, schools typically hire new staff with the expectation that they will start working at the beginning of the academic year. Maisterra Nov. 2 Decl. ¶ 7. It was therefore understood that IYP staff who found new jobs for the 2021-2022 academic year would be expected to leave IYP and begin their new positions before August 30, 2021. *Id.*

Despite significant difficulties finding potential candidates, the District received a total of 32 applications for 21 open positions. Maisterra Nov. 2 Decl. ¶ 12. Unfortunately, the District determined that 16 of those candidates were not qualified for the positions for various reasons, including insufficient experience teaching high school students and inadequate special education experience. *Id*. Although the remaining applicants were deemed qualified and offered positions, eight of them declined. Four teachers accepted offers and were cleared to begin working at IYP on August 30, 2021. *Id*. Another four accepted their offers but did not complete the clearance process prior to September 30. *Id*.

In parallel with its efforts to secure staffing for September, the District began preparing for the transition to a new provider. For example, OSSE began holding inter-agency transition coordination meetings with DCPS and DOC on July 20, 2021. Glick Nov. 2 Decl. ¶ 5. These meetings were to ensure a smooth transition to the new provider. Among other things, OSSE worked with DOC and DCPS to ensure that the new provider would have access to necessary space and student data. *Id*. OSSE also began working with DOC to draft a new memorandum of agreement (MOA) specifying the responsibilities of OSSE, DOC, and the yet-to-be-determined new IYP provider. *Id*.

On August 16, 2021, the Public Charter School Board (PCSB) voted to amend the charter of Maya Angelou PCS to make it the IYP provider effective October 1, 2021, for the duration of the 2021-2022 academic year. *See* District of Columbia Public Charter School Board, Board Meeting – August 2021, available at https://dcpcsb.org/board-meeting-august-2021 (last accessed November 1, 2021). Promptly thereafter, OSSE began to incorporate Maya Angelou PCS into its regular coordination meetings with DOC and DCPS. Glick Nov. 2 Decl. ¶¶ 9–10. OSSE convened a meeting in August, and three additional meetings in September 2021. *Id.* These meetings were

7

designed to ensure communication, cooperation, and the smooth transfer of relevant student data in preparation for the provider transition. *Id.* ¶ 10. During those meetings, Maya Angelou PCS did not raise any concerns with the District about a lack of student-level data impairing their ability to prepare for the transition. *Id.* ¶ 12.

Indeed, Maya Angelou PCS was given access to one of the two electronic systems maintained by OSSE that contain student records, such as IEPs. Glick Nov. 2 Decl. ¶ 11. One system, Special Education Data System (SEDS), contains complete versions of each student's relevant records. *Id.* OSSE also maintains a body of more limited "early access data." *Id.* Anytime a student transfers from one LEA to another, the school to which the student is transferring does not receive access to that student's records in SEDS until the date the student fully enrolls at the new school. *Id.* In keeping with that protocol, OSSE did not give Maya Angelou PCS access to IYP student records in SEDS until October 1, 2021. *Id.* However, pursuant to discussions between OSSE and Maya Angelou PCS held throughout August and September, and in accordance with OSSE's transfer policy, OSSE gave Maya Angelou PCS access to early access data as of August 13, 2021. *Id.* From this data, Maya Angelou PCS had access to student-level IEP requirements, such as the required number of hours of specialized instruction and related services, sufficient for resource planning purposes. *Id.* As plaintiffs note, at their request, the District also provided Maya Angelou PCS with IYP students' full IEPs on September 28, 2021, three days before the provider transition, despite this falling outside the District's protocols for student data access and transfer. Pls.' Mem. at 12.

## IV.     Accelerated Learning and Compensatory Education

The District is now in the process of collecting necessary data to implement two strategies for addressing any learning loss that has occurred since the start of the pandemic: accelerated learning and compensatory services.

### A.     Accelerated Learning

"Accelerated learning" is a process by which educators place unfinished learning in the context of new learning, integrating both new information and the needed prior knowledge at the same time. Glick Nov. 2 Decl. ¶ 6; *see also* Office of the State Superintendent of Education, Guiding Principles for Continuous Education (Guiding Principles), available at https://bit.ly/3jV2NdL. In other words, accelerated learning occurs during the school day, through strategies such as "high-dosage tutoring," so that students learn previously unfinished material side by side with new material.[4] Glick Nov. 2 Decl. ¶ 6. It is therefore best undertaken by the current LEA and integrated into the school day. *Id.* Before accelerated learning can occur, however, educators must use tools to assess students' performance levels and determine how much interrupted instruction occurred. *See* Guiding Principles at 6.

DCPS collected relevant data for some IYP students before October 1, 2021. *See* Maisterra Nov. 2 Decl. ¶ 18. Maya Angelou PCS has also begun collecting data to implement individually-tailored accelerated learning strategies as quickly as possible. Glick Nov. 2 Decl. ¶¶ 23–24. The

---

[4]     "High-dosage tutoring" consists of two components:  (1) Intensive, one-on-one or small-group tutoring on a sustained, daily basis during the school day; and (2) an intentional use of additional time with a specific focus on building prerequisite knowledge and skills while simultaneously integrating new learning that is part of the grade-level curriculum. *See* High-Dosage Tutoring: A Proven Strategy to Accelerate Student Learning, District of Columbia Office of the State Superintendent of Education (March 15, 2021), at 2, available at https://osse.dc.gov/sites/default/files/dc/sites/osse/page_content/attachments/HighDosageTutoringGuidance.pdf.

process can take up to eight weeks, as education staff must individually assess each student through testing. *Id.* Without accurate data collection, however, instructors would have no way to determine what prior material was not finished, and thus how best to integrate it with new material. *See* Guiding Principles at 6.

    **B.**    **Compensatory Services**

    "Compensatory services" are education services designed to compensate a student for specialized instruction and related services previously missed so as to put the student in the position he or she would have been in had the services been provided in the first place. Glick Nov. 2 Decl. ¶ 6; *see also* OSSE, Guidance Related to Coronavirus (COVID-19): IDEA, Part B Provision of FAPE Frequently Asked Questions (April 15, 2020), available at https://bit.ly/3GFxa1B. This requires each student's IEP team to make an individualized determination as to whether and to what extent that student requires compensatory services to make up for any skills lost. Glick Nov. 2 Decl. ¶ 6.

    Since March 2020, various governing bodies have put out guidance on how to implement compensatory services for learning lost during the COVID-19 pandemic. Glick Nov. 2 Decl. ¶ 22. The guidance has remained dynamic as the circumstances of the pandemic have changed. *Id.* (citing U.S. Dep't of Educ. Return to School Roadmap: Development and Implementation of Individualized Educ. Progs. (Sept. 30, 2021)), available at https://bit.ly/3BAxk6u. In accordance with that guidance, the District is working to assess students and prepare IEP teams to determine whether each student requires compensatory services. *Id.* ¶¶ 22–23. This includes an assessment of academic areas such as math and reading, as well as a review of available student data to identify accelerated learning strategies such as tutoring or class placement strategies. *Id.* The District is also reviewing student transcripts to identify credit recovery needs. *Id.* The period captured by this review includes September 2021. *Id.*

**LEGAL STANDARD**

"Civil contempt is an extraordinary sanction that should be imposed with caution." *Al-Qahtani v. Obama*, 604 F. Supp. 2d 101, 103–104 (D.D.C. 2009) (citing *Joshi v. Professional Health Servs., Inc.*, 817 F.2d 877, 879 n.2 (D.C. Cir. 1987)). "Because of their very potency," courts should exercise their contempt powers "with restraint and discretion." *Shepherd v. American Broadcasting Co., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

Accordingly, a party seeking civil contempt "must show, by clear and convincing evidence, that: (1) there was a court order in place; (2) the order required certain conduct by the defendant; and (3) the defendant failed to comply with that order." *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (citing *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)). This clear and convincing evidence standard imposes "a heavy burden of proof" on the moving party. *Shepherd*, 62 F.3d at 1477.

Even if this initial three-part showing is made, "a party can justify its failure to comply with a court order by establishing its inability to comply or good faith substantial compliance." *SEIU Nat'l Indus. Pension Fund v. Artharee*, 48 F. Supp. 3d 25, 30 (D.D.C. 2014). "To prove good faith substantial compliance, the contemnor must show that it 'took all reasonable steps within [its] power to comply.'" *Id.* (quoting *Int'l Painters*, 736 F. Supp. 2d at 40).

Moreover, even in the rare instances when contempt findings are found to be appropriate, "civil contempt sanctions may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009). A court imposing sanctions "must exert only so much authority of the court as is required to assure compliance." *Int'l Painters*, 736 F. Supp. 2d at 38 (internal quotation marks

11

omitted). Contempt sanctions "therefore ordinarily are conditional" such that the party held in contempt "may avoid the sanctions by promptly complying with the court's order." *Id.* (internal quotation marks omitted) (quoting *Petties v. District of Columbia*, 897 F. Supp. 626, 629–30 (D.D.C. 1995)).

## ARGUMENT

### I.      The District Substantially Complied with the Court's Order in July and August.

The June 16 Order requires the District to provide IYP students "with the full hours of specialized education and related services mandated by their Individualized Education Programs." June 16 Order at 1. The clear intent of the June 16 Order is for the District to implement the IEPs as required by the Individuals with Disabilities in Education Act (IDEA). Under the IDEA, as explained in the District's August 2, 2021 Status Report, IEPs are designed to outline the special education supports that students need to access an assumed general education course load during the regular academic year. Supp. Decl. of Dr. Raymond Cummings (Cummings Aug. 2 Decl.) [50-1] ¶¶ 5–7. That assessment is usually based on an assumed course load of 32.5 hours per week. *Id.* But, contrary to plaintiffs' suggestion, Pls.' Mem. at 6, the IEPs do not set forth a quota of hours that must be met each calendar month. At bottom, the IEPs require students to receive special education sufficient to match their general education. Plaintiffs do not dispute that the standard practice at IYP and other schools across the District—and the country—is to offer a reduced schedule of classes during the summer session. *See* Decl. of Victoria Glick (Glick Aug. 2 Decl.) [50-2] ¶¶ 5–6. As explained below, the District provided IYP students with special education commensurate with their general education, and therefore satisfied the requirements of students' IEPs and the June 16 Order.

The IDEA does not require LEAs like DCPS to provide specialized instruction or related services outside the normal school year to students who do not have ESY designations in their

IEPs. Glick Aug. 2 Decl. ¶ 5. So, for example, during the summer session, when a reduced scheduled is offered, a special education student is not required to receive the hours of specialized instruction or related services specified in his IEP. *Id*. Instead, the student must receive the special education support necessary to make the general education received by the student accessible. *Id*. The overarching goal of the IEP thus remains the same during the summer as during the regular academic year—provide the special education supports necessary given the general education received by the student. Because of the format of IYP instruction, *every* hour of instruction provided over the summer *is* specialized instruction. *See* August 2, 2021 Status Report at 4 (citing Glick Aug. 2 Decl. ¶ 9; Cummings Aug. 2 Decl. ¶ 9). The hours of specialized instruction each IYP student received during the summer therefore matched one-to-one with the hours of general education instruction received by the student.

Although plaintiffs do not expressly argue that IEPs require a certain number of hours of specialized instruction each month regardless of the general education received, *see* Pls.' Mem. at 10–12, their criticism of the hours provided during the summer session suggests otherwise, *id*. at 5–6. Plaintiffs are wrong. Under the formalistic approach plaintiffs suggest, by which the hours called for in each student's IEP should have equal application over the summer, *see* Pls.' Mem. at 6, IEPs would require IYP students to receive hours of specialized instruction with no accompanying general education hours, defeating the very purpose of the IEP, which is to improve the accessibility of material taught during general education. Glick Aug. 2 Decl. ¶¶ 4–6.

While plaintiffs are correct that the summer session normally looks different for students whose IEPs include ESY instruction, Pls.' Mem. at 10–11, only two students enrolled in IYP had ESY prescribed in their IEPs. One of those students was enrolled in the three courses needed to graduate, and thus there was no concern he would experience regression over the summer without

ESY services. Cummings Aug. 2 Decl. ¶ 11. The other student opted out of IYP's summer session on July 6, 2021, and did not reenroll until July 16, 2021, just three weeks before the summer session ended. *Id.* With these two exceptions, IYP students enrolled during the summer term had no ESY designation and therefore received specialized instruction and related services in accordance with the mandates of their IEPs.

Even assuming that plaintiffs' formalistic approach is a reasonable interpretation of the June 16 Order, "ambiguities in the underlying order should be resolved in favor of [the District]." *Teamsters Loc. Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360, 362 (D.D.C. 2006). The June 16 Order specified that the District must provide IYP students with "the full hours of specialized education and related services mandated by their [IEPs]." June 16 Order at 1. As discussed above, the District interpreted the Court's order to require students' IEPs to be implemented consistent with well-established and widely understood best practices, which it did. The District communicated its approach to IEP implementation during the summer to the Court in its August 2, 2021 Status Report.[5] Plaintiffs have not shown by clear and convincing evidence that the District failed to comply with the June 16 Order during July and August.

II.     **The District Took All Reasonable Steps To Comply with the Court's Order in September.**

As explained above, the District made the decision to seek a new service provider at IYP for the 2021-2022 academic year. Due to the transition, and DCPS's inability to fully staff the IYP program despite diligent efforts, IYP students did not receive the hours of specialized instruction

---

[5]     Plaintiffs' assertion to the contrary, the District's provision of charts to the Court showing the hours each student received in no way evinced a belief that the District must provide the number of hours required in each student's IEP even during the summer term. *See* Pls.' Mem. at 4. The District provided these charts to comply with the reporting requirement ordered by the Court. The District made clear in its August 2, 2021 Status Report how it interpreted the application of the Court's order during the summer months.

mandated by their IEPs in September. Plaintiffs are mistaken when they argue that the District did not take all reasonable steps to fully implement students' IEPs during September. The District's level of compliance with the June 16 Order in September does not warrant a finding of contempt. *See Int'l Painters*, 736 F. Supp. 2d at 40. Plaintiffs argue that the District did not take all reasonable steps for three reasons. None have merit.

First, plaintiffs argue that the District "offers no evidence that it took all reasonable steps to maintain or enhance the staff sufficient to deliver the required education hours." Pls.' Mem. at 7. Plaintiffs speculate that if only the District had offered "incentives" to current staff then its problems would have been solved. *Id.* Plaintiffs appear to misunderstand both that the hiring of educators occurs on a standard schedule and that the District could only offer a one-month position to staff at IYP for the 2021-22 academic year. As explained above, the District took all reasonable steps over the course of several months to identify staff for September. *See* Background at 5–7; Maisterra Nov. 2 Decl. ¶¶ 5–12. It did not "allow" IYP staff to leave, but instead explored every available option to identify qualified candidates. *Id.* And contrary to plaintiffs' assertion, IYP leadership, including Interim Principal Cummings, stayed in their roles at IYP through the transition. Maisterra Nov. 2 Decl. ¶ 8. The District's lack of success in finding additional staff was not due to a lack of effort or a failure to consider other sources of options. *See* Background at 5–7.

Second, plaintiffs argue that the "very reasonable and obvious solution" to the District's staffing shortage was for the District to "install" Maya Angelou PCS at IYP before August 30, 2021. *See* Pls.' Mem. at 7–8. Plaintiffs' argument ignores the facts and the law. From a factual standpoint, plaintiffs assume that the District did not attempt to have Maya Angelou PCS start before October 1, 2021. The District did explore an earlier start date with Maya Angelou PCS, but

Maya Angelou PCS was only approved as the new provider in August, and it was not logistically feasible for Maya Angelou PCS to assume complete control over IYP in just a few weeks. *See* Glick Nov. 2 Decl. ¶ 10. Prior to taking over as the LEA at IYP, the District had to identify a provider willing to operate as the LEA at IYP, the Public Charter School Board had to approve an amendment to Maya Angelou PCS's charter, the District had to provide and deliver funding, and Maya Angelou PCS needed to hire staff and create a new education program. *Id*. ¶ 9. From a legal standpoint, plaintiffs provide no support for their claim that the District could have simply compelled Maya Angelou PCS to start on a date of the District's choosing. *See* Pls.' Mem. at 8. The District's efforts to meet the October 1, 2021 transition deadline, and if possible, to have Maya Angelou PCS start prior to October 2021, further evidence the reasonable steps taken by the District to comply with the June 16 Order. Glick Nov. 2 Decl. ¶¶ 9–10.

Third, plaintiffs argue that the District should have used virtual instruction to account for its staffing shortage in September. Pls.' Mem. at 8. But plaintiffs' argument is premised on the incorrect assertion that the District guaranteed that virtual instruction would be ready for use in September. *Id*. As clearly explained in the District's August 2 Status Report, the District installed wireless internet capability throughout the D.C. Jail, and is relying on an outside vendor to create and install software on DOC devices that will support virtual instruction. Unfortunately, the timeline provided by the vendor was delayed. *See* November 1, 2021 Status Report at 3. Even assuming plaintiffs are correct that virtual instruction could have been available sooner, plaintiffs incorrectly assume that the availability of devices and Wi-Fi would have solved the staffing issue. *See* Pls.' Mem. at 8. The same staffing issues that prevented the District from offering more instruction in-person would have prevented the District from offering more instruction virtually. If anything, plaintiffs' proposed shift to virtual instruction could have led to even less instruction

occurring, given that the teachers and students would be learning to use brand new technology with the understanding that a new provider with a different method of instruction would be starting in weeks.

While the District acknowledges that the timing of the transition from DCPS to Maya Angelou PCS led to a significant short-term staffing problem in September, no other reasonable course of action was available to the District and it took all reasonable steps to ameliorate that problem. The District is not aware of any other steps it could have taken to identify staff for September, and therefore, a contempt finding is not warranted.

III.      **Plaintiffs' Requested Relief Would Inhibit, Not Facilitate, Compliance with the Court's Order.**

Even if this Court were to take the extraordinary step of finding the District in contempt, the breathtaking relief plaintiffs seek is not warranted and would interfere with the District's current efforts, in collaboration with Maya Angelou PCS, to deliver instruction and services to students. Plaintiffs have submitted a highly detailed proposed order spanning four pages and consisting of more than a dozen separate items of relief they have asked this Court to order. *See* Pls.' Proposed Order [72-7]. The Court should reject their proposals for the following reasons.

A.      **Maya Angelou PCS Is Now the IYP Provider and Has Already Increased Delivery of Specialized Instruction and Related Services.**

As plaintiffs acknowledge, although DCPS was the IYP provider during the entire period for which they seek findings of noncompliance, DCPS ceased to be the IYP provider on October 1, 2021. Maya Angelou PCS has now taken over, and as the District's November 2, 2021 filing shows, IYP students received significantly more hours of specialized instruction in the month of October than they did during the month of September. In fact, the majority of students received the full hours of specialized instruction called for in their IEPs. *See* November 2, 2021 Sealed Hours Chart [75-3].

**B.**     **Plaintiffs' Proposed Relief Would Impede the District's Ongoing Efforts To Develop and Implement Compensatory Education and Accelerated Learning Plans.**

Further, the "additional special education and related services hours" (additional hours) plaintiffs seek, *see* Pls.' Proposed Order at 2, would misguidedly impose an onerous burden on both instructional staff and students with no benefit. Plaintiffs ask this Court to order that the District provide "intensive, accelerated credit-bearing special education instruction designed to advance each student toward the award of a high school diploma," and to provide "those hours necessary for the student to earn credit in all classes attempted" since July 1, 2021. *Id.* at 2–3. Plaintiffs demand that the District "submit a plan to the Court" for providing these additional hours "within 10 days" of an Order from this Court, *id.* at 3, and "determine and begin to provide" these additional hours "within 15 days" of an order from this Court, *id.* at 2. This is ill-conceived for at least two related reasons.

First, the majority of IYP students are already receiving on average 24 hours per week of instruction from Maya Angelou PCS, which translates on average to approximately five hours of class time per day. *See* November 2, 2021 Sealed Hours Chart [75-3]. Heaping on additional hours in the frenzy plaintiffs suggest would overwhelm students, forcing them to undertake hours upon hours of additional instruction time on days in which they are already receiving a full course load of instruction. Further, instructional staff would have to provide these hours. Plaintiffs do not specify whether they propose that Maya Angelou PCS instructors provide these hours, or that the District hire outside instructors to come to the jail in addition to the Maya Angelou PCS staff. Either proposal, however, would create logistical problems.

Second, and related, the District is already collecting necessary data to assess students for compensatory services and is working with Maya Angelou PCS to do the same for accelerated learning. *See* Background above. These established mechanisms are designed to make up for

learning loss in ways that are appropriately tailored to each student's individual needs. *See* Glick Nov. 2 Decl. ¶ 6. This is consistent with the well-recognized principle that even for court-ordered compensatory education, "the inquiry must be fact-specific" and take into account "students' individual needs." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005). The District already has plans in motion to do just that. Doing it instead on plaintiffs' proposed terms would complicate those efforts and make it impossible to implement accelerated learning and compensatory services in an adequately individualized manner. For instance, part of assessing students' current levels of academic achievement is the administration of the STAR Renaissance and WRAT assessment. Glick Nov. 2 Decl. ¶ 24. This test requires several hours on an internet-enabled computer, which would require pulling the student receiving the test out of class and requiring staff to monitor testing, and then would require staff to analyze the student's results. *Id.* ¶ 24. Proper determination of compensatory services would then require convening the student's IEP team and formulating how any needed services might be best provided. *See id.* ¶ 22.

The District agrees it is important to work as quickly as possible to assess students for learning loss and develop plans to recover for missed services. That is why the District has already undertaken these efforts and plans to continue apace. Relief upending these efforts would compromise the process and risk undermining current progress.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for contempt should be denied.

Dated:  November 2, 2021.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

19

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
MICAH BLUMING [1618961]
HONEY MORTON [1019878]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 805-7512
Fax: (202) 730-1470
richard.sobiecki@dc.gov

*Counsel for Defendants*