## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES H.**, *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>    **Defendants.** | **Civil Action No. 21-997 (CJN)** |

## DEFENDANTS' MOTION FOR CLARIFICATION
## OF THE PRELIMINARY INJUNCTION AND CONTEMPT ORDERS,
## OR, IN THE ALTERNATIVE, FOR MODIFICATION OF THE ORDERS

Defendants the District of Columbia, District of Columbia Public Schools (DCPS), and the Office of the State Superintendent of Education (OSSE) (collectively, the District) move for clarification of portions of the Court's June 16, 2021 Preliminary Injunction (PI) [37] and of the Court's February 16, 2022 Order [101]. The District seeks clarification of the portion of the PI that requires defendants to provide members of the provisionally certified class with the special education and related services hours specified in their Individualized Education Programs (IEPs) "through direct, teacher-or-counselor-led group classes and/or one-on-one sessions, delivered via live videoconference calls and/or in-person interactions." Preliminary Injunction at 1.

The District also seeks clarification of the portion of the Court's February 16, 2022 order providing that "the IDEA eligibility of all students is extended beyond their 22nd birthday for the amount of time necessary to ensure that they receive the education that they would have received had Defendants complied immediately with the Preliminary Injunction." Feb. 16, 2022 Order at 5. If the District's understanding of these portions of the PI and February 16, 2022 order is not consistent with the Court's intent, the District alternatively seeks modification of both orders.

Modification would be warranted because allowing for a combination of educational methodologies is consistent with best practices in the delivery of special education; and the provision of compensatory services beyond the statutory age limit is an existing remedy, whereas extending FAPE eligibility imposes a much harder burden on the District that is impracticable and inequitable. A memorandum of points and authorities and proposed orders are attached.

As provided under Local Civil Rule 7(m), undersigned counsel discussed this matter with counsel for plaintiffs. Plaintiffs oppose the District's motion in its entirety and intend to file an opposition.

Dated:  April 19, 2022.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Amanda C. Pescovitz*
AMANDA C. PESCOVITZ [1735780]*
MICAH BLUMING [1618961]
RICHARD P. SOBIECKI [500163]
HONEY MORTON [1019878]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 805-7495
amanda.pescovitz1@dc.gov

*Counsel for Defendants*

---

* Admitted to the Bar under D.C. App. R. 46-A (Emergency Examination Waiver). Practicing under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to D.C. App. R. 46-A(d)(2).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES H.**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, *et al.*, <br><br> Defendants. | **Civil Action No. 21-997 (CJN)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION FOR CLARIFICATION
OF THE PRELIMINARY INJUNCTION AND CONTEMPT ORDERS,
OR, IN THE ALTERNATIVE, FOR MODIFICATION OF THE ORDERS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARDS ....................................................................................................... 3

    I.   Standard for Clarification ...................................................................................... 3

    II.  Standard for Modification .................................................................................... 4

ARGUMENT ....................................................................................................................... 4

    I.   The Court Should Clarify Portions of Its Preliminary Injunction and February 16, 2022 Orders As Related to Reporting Student Hours and Eligibility for Services............................ 4

    II.  The Court Should Modify the PI as Necessary To Allow for the Use of Best Practices in Secondary Education. .................................................................................. 6

    III.   The Court Should Modify the February 16, 2022 Order as Necessary To Extend Students' Eligibility To Receive Compensatory Services, Not To Extend Full Eligibility for FAPE Under the IDEA. ...................................................................... 8

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*All. of Artists & Rec. Cos., Inc. v. Gen. Motors Co.*, 306 F. Supp. 3d 413 (D.D.C. 2016)......... 3, 6

*B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016).......................................................... 9

*Hudson v. Am. Fed. Gov't Emps.*, 281 F. Supp. 3d 11 (D.D.C. 2017) ..................................... 4, 7

*Johnson v. District of Columbia*, 962 F. Supp. 2d 263 (D.C. Cir. 2013)...................................... 9

*Reid ex rel. Reid v. District of Columbia.*, 401 F.3d 516 (D.C. Cir. 2005) ................................... 9

*Schiff v. District of Columbia*, Civil Action No. 18-1382, 2019 WL 5683903
    (D.D.C. Nov. 1, 2019)............................................................................................................ 8, 9

*Torrence v. District of Columbia*, 669 F. Supp. 2d 68 (D.D.C. 2009) ......................................... 8

*United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90
    (D.D.C. 2018) ...................................................................................................................... 3, 6

*United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164 (D.D.C. 2011) ........................... 3

**Other Authorities**

Congressional Research Service, *The Individuals with Disabilities Education Act (IDEA)
    Funding: A Primer* (Aug. 29, 2019). .................................................................................... 8

**Rules**

Fed. R. Civ. P. 54 ............................................................................................................................. 4

Fed. R. Civ. P. 60 ............................................................................................................................. 4

**Regulations**

5 D.C.M.R. § 3002.1 ....................................................................................................................... 9

5 D.C.M.R. § 3002.2 ....................................................................................................................... 9

## INTRODUCTION

Defendants the District of Columbia, District of Columbia Public Schools (DCPS), and the Office of the State Superintendent of Education (OSSE) (collectively, the District) move for clarification of portions of the Court's June 16, 2021 Preliminary Injunction (PI) [37] and of the Court's February 16, 2022 Order [101]. The District seeks clarification of the portion of the PI that requires members of the provisionally certified class to receive "the full hours of special education and related services mandated by their Individualized Education Programs ('IEPs') through direct, teacher-or-counselor-led group classes and/or one-on-one sessions, delivered via live videoconference calls and/or in-person interactions." Preliminary Injunction at 1. The District understands this portion of the Order as allowing for teacher-facing instruction as well as independent work, consistent with best practices in special education.

The District also seeks clarification of the portion of the Court's February 16, 2022 order that provides that "the IDEA eligibility of all students is extended beyond their 22nd birthday for the amount of time necessary to ensure that they receive the education that they would have received had Defendants complied immediately with the Preliminary Injunction." Feb. 16, 2022 Order at 5. The District understands this portion of the Order as requiring students to receive compensatory services regardless of whether they have turned twenty-two prior to the delivery of any such services.

In the alternative, if the Court finds that the District's understanding of these portions of the PI and February 16, 2022 order is not consistent with the Court's intent, the District moves for modification of both orders. The District has been proceeding in good faith under these interpretations of the Court's orders and will continue to do so, consistent with best practices in the delivery of special education, but complying with plaintiffs' alternative interpretations would be impracticable and inequitable.

**BACKGROUND**

On June 16, 2021, this Court issued a preliminary injunction requiring, among other things, that the District provide all members of the provisionally certified class "the full hours of special education and related services mandated by their Individualized Education Programs ('IEPs') through direct, teacher-or-counselor-led group classes and/or one-on-one sessions, delivered via live videoconference calls and/or in-person interactions." Preliminary Injunction at 1. The order also required the District to submit monthly reports detailing its compliance. *Id.*

After several months of reporting, plaintiffs filed a Notice Regarding the Potential Overstatement of Hours Received in the Charts Submitted Under the Preliminary Injunction (Pls.' Notice) [102] on February 17, 2022, alleging that the District was overreporting the number of specialized instruction hours provided to students each month, in part by counting hours of independent student work, in addition to hours of teaching-facing instruction, toward those totals. Pls.' Notice at 2–3. In a subsequent status report, the District addressed those allegations by clarifying its method of counting hours and has begun including specific information about the number of hours of teacher-facing instruction each student receives each month. *See* March 3, 2022 Status Report [106] at 3–4; April 1, 2022 Sealed Filing, Ex. A (March Hours Chart) [113-1]. Because of this recent disagreement over the meaning of the order, the District seeks clarification, or, in the alternative, modification of the preliminary injunction so that it can continue reporting in compliance with the Court's order.

On October 18, 2021, plaintiffs filed a Motion for an Order Adjudging the District to be in Contempt for Failing to Comply with the Preliminary Injunction Order and Imposing Further Relief for Such Contempt and Request of Expedited Consideration (Contempt Motion). Among their requests for further relief, plaintiffs asked the Court to "order that any student who aged out of the IDEA system … or who ages out during the delivery of the relief … has their eligibility for

special education and related services extended for the period of time equal to the length of time of the noncompliance period." Contempt Motion [72-1] at 15. In ruling on that motion, the Court ordered "that the IDEA eligibility of all students is extended beyond their 22nd birthday for the amount of time necessary to ensure that they receive the education that they would have received had Defendants complied immediately with the Preliminary Injunction." February 16, 2022 Order at 5. The District has previously made clear that, in accordance with the Court's order, "a student's age will not prevent them from receiving services necessary to obtain the relief ordered by the Court." March 15, 2022 Notice of Compliance [109] at 1, n.1. However, out of an abundance of caution and to avoid unnecessary motions practice, the District seeks clarification, or, in the alternative, modification to ensure full compliance with the Court's order.

**LEGAL STANDARDS**

## I.     <u>Standard for Clarification</u>

Motions for clarification are governed by the inherent power of the Court rather than any formal rule. *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018) (citing *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 344 (D.C. Cir. 2014)). Such motions are encouraged whenever a party is "uncertain about the scope of a ruling." *Id.* The purpose of a motion for clarification "is to explain or clarify something ambiguous or vague" in a court's order, but not to alter or amend it. *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011). Courts in this Circuit have found motions for clarification "especially prudent if the parties must implement the ruling at issue in subsequent stages of the litigation." *All. of Artists & Rec. Cos., Inc. v. Gen. Motors Co.*, 306 F. Supp. 3d 413, 418–19 (D.D.C. 2016).

3

II.     **Standard for Modification**

Under Fed. R. Civ. P. 54(b), "any order or other decision … that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Similarly, under Rule 60(b), a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" when changed circumstances so warrant. *See* Fed. R. Civ. P. 60(b)(2); (b)(5); (b)(6). "The party seeking modification bears the burden of establishing that a significant change in circumstances warrants" revision of the preliminary injunction because continued prospective application of the existing injunction would be inequitable. *Hudson v. Am. Fed. Gov't Emps.*, 281 F. Supp. 3d 11, 14 (D.D.C. 2017) (quoting *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017)) (internal quotation marks omitted). The Court must use "its discretion [to] decide 'whether the requested modification effectuates or thwarts the purpose behind the injunction.'" *Id.* (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 257 (2d Cir. 1984)).

**ARGUMENT**

I.     **The Court Should Clarify Its Preliminary Injunction and February 16, 2022 Orders As Related to Reporting Student Hours and Eligibility for Services.**

The District seeks clarification of the Court's preliminary injunction and February 16, 2022 orders. First, the Court should clarify whether, under the PI, hours of specialized instruction and related services required by students' IEPs must be delivered only through teacher-facing instruction. As explained previously, accepted best practices in secondary education, as well as the common methodologies used across LEAs in the District, all involve a combination of teacher-facing instruction plus independent work. *See* March 3, 2022 Decl. of Victoria Glick (March 3 Glick Decl.) [106-2] ¶¶ 5–8. The District has, to date, proceeded on the understanding that the Court's PI order requires each student enrolled in the Maya Angelou PCS Academy at the D.C.

4

Jail (the Academy) to receive the hours of specialized instruction and related services specified in that student's IEP through "live videoconference" or "in-person" instruction as those approaches are commonly understood in the field of education. *See, e.g.*, *id.* ¶ 5 ("It is understood in the field of secondary education that independent work is an essential component of in-person instruction."). Plaintiffs, however, seem to have taken the position that any instructional hours in which students are working independently or asynchronously cannot be counted in demonstrating compliance with the preliminary injunction. Pls.' Notice at 2–3 (likening independent work performed by students that is then reviewed in direct interactions with instructors to "dropping off work packets").

Second, the District seeks clarification as to the meaning of the Court's use of "eligibility" in its February 16 order, which provides that "the IDEA [Individuals with Disabilities Education Act] eligibility of all students is extended beyond their 22nd birthday for the amount of time necessary to ensure that they receive the education that they would have received had Defendants complied immediately with the Preliminary Injunction." *See* Feb. 16, 2022 Order [101] at 5. The District understands the gravamen of the February 16 order to be that students who missed services between September 1, 2021, and January 31, 2022 should be compensated for those missed services. As such, the District understands the February 16 order to mean that each student's eligibility to receive compensatory or make-up services is extended past his 22nd birthday so that a student's age will not render him ineligible to receive those services. The District does not interpret "eligibility" to mean that any student now has an independent right to a free appropriate public education (FAPE) under the IDEA or District law beyond age 22. If that is contrary to the Court's intention, there will be a substantial impact on the long-term planning and fiscal responsibilities of the District in providing the remedy ordered by the Court. *See* Section III, below; Ex. A, Declaration of Victoria Glick (April 19 Glick Decl.).

Thus, to resolve any "uncertain[ty] about the scope of [the Court's] ruling[s]," *see Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d at 99, and because the District "must implement the ruling[s]" as this litigation continues, *see All. of Artists*, 306 F. Supp. 3d at 418–19, the District seeks clarification as to both orders. Because plaintiffs have questioned whether the District is correctly counting the hours of specialized instruction and related services being reported each month, the Court should clarify whether the PI requires the hours called for in students' IEPs to be provided only through teacher-facing instruction. And because providing FAPE to students over the age of twenty-two would impose a fundamentally different burden on the District than providing compensatory or missed services to students over that age, the District requests clarification as to whether the February 16 order requires the District to provide FAPE, as opposed to compensatory services for services missed, beyond the age required under federal and District law.

II.   **The Court Should Modify the PI as Necessary To Allow for the Use of Best Practices in Secondary Education.**

If the Court clarifies that the District's current understanding of the PI is not consistent with the Court's intent, the Court should modify its order to allow specialized instruction and related services to be provided through an appropriate combination of teacher-facing and independent instruction. At the time the Court issued the PI, in-person instruction at the D.C. Jail had suffered significant disruptions from the COVID-19 pandemic. *See* Defs.' Opp'n to Preliminary Injunction [23] at 5–7. Limited in-person teacher-facing instruction had only resumed as of May 5, 2021, *id.* at 9, and DCPS still served as the Local Education Agency (LEA) at the D.C. Jail. *See* October 1, 2021 Status Report [70] at 1 (describing the transition from DCPS to Maya Angelou PCS). Circumstances, however, have changed significantly since the Court issued its preliminary injunction.

6

On October 1, 2021, Maya Angelou PCS took over as the LEA. Over the past six months, Maya Angelou PCS has implemented a schedule of daily in-person instruction for all students and that has greatly increased the number of hours received by students, despite some residual variation in hours that is primarily attributable to logistical challenges with restrictive housing units. *See* March 3, 2022 Sealed Filing, Ex. G (Corrected Aggregate Hours Chart) [107-7]; March 3, 2022 Status Report [106] at 2. That variation, moreover, has diminished significantly with the rollout of the virtual classroom software on DOC's education tablets. *See, e.g.*, April 1, 2022 Sealed Filing, Ex. A (March Hours Chart) [113-1]. If the PI requires all hours of specialized instruction and related services to be only teacher-facing, it is clear that "a significant change in circumstances warrants" modification of the PI. *See Hudson*, 281 F. Supp. 3d at 14. Limiting the number of hours that the District can report to the Court would give the inaccurate impression that students are experiencing severe educational deficits despite attending classes and completing assignments daily.

The District understands that in issuing the preliminary injunction, the Court was concerned about ensuring Academy students would be provided with a "reasonable opportunity to advance from grade to grade" by receiving specialized education consistent with their IEPs, despite their incarceration during the COVID-19 pandemic. Mem. Op. Granting Preliminary Injunction [38] at 13 (quoting *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005)). As the District has understood it, the appropriate relief under the PI is not "to simply add hours of education and related services" to the students' schedules as a method of "making up" deficits on paper. Feb. 16, 2022 Order [101] at 3. Rather, as this Court noted, "[e]ach student's educational needs are different." *Id.* Modifying the preliminary injunction to allow for an appropriate mix of educational methodologies would ensure students can be provided an education that is consistent with recognized best practices and common methodologies of instruction across LEAs in the

District. *See* March 3, 2022 Status Report at 3. Limiting the methodologies that Maya Angelou PCS can use "would not result in any increased educational benefit to the students and would deviate from best practices in special education," including national standards for the delivery of such instruction during the pandemic. March 3 Glick Decl. ¶ 13.

To impose the alternative standard would be inequitable by requiring the District to decide between making the best educational determinations for the students and simply adhering to specific hours requirements. *See id.* To provide the best possible education to the students in accordance with their IEPs requires allowing for day-to-day individualized decisions by their teachers on how best to present the material. *Id.* If the Court clarifies that it did not intend to allow the counting of any hours that are not teacher-facing, the Court should modify its preliminary injunction to allow for the use of a variety of appropriate methodologies, consistent with best practices in special education.

III.    **The Court Should Modify the February 16, 2022 Order as Necessary To Extend Students' Eligibility To Receive Compensatory Services, Not To Extend Full Eligibility for FAPE Under the IDEA.**

The IDEA "guarantees children with disabilities the right to a free appropriate public education (FAPE)." *Torrence v. District of Columbia*, 669 F. Supp. 2d 68, 69 (D.D.C. 2009). To that end, "the federal government provides funding to States for specialized education of children with disabilities on the condition that States provide a FAPE to eligible children." *Schiff v. District of Columbia*, Civil Action No. 18-1382, 2019 WL 5683903, at *4 (D.D.C. Nov. 1, 2019). "Eligible" children are defined under the IDEA as being "children between the ages of three and twenty-one." *Id.* Accordingly, the federal government primarily calculates the amount of funds that each State receives under the IDEA based on "the state's population of children ages 3 through 21." Congressional Research Service, *The Individuals with Disabilities Education Act (IDEA) Funding: A Primer*, at 14 (Aug. 29, 2019). The District of Columbia goes further than federal law

and guarantees FAPE to children up to age twenty-two. 5 D.C.M.R. § 3002.1(a); *see also id.* § 3002.2.

Once a student has been deemed "eligible" for FAPE, the State must develop an IEP for that student as well as determine an appropriate educational placement. *Johnson v. District of Columbia*, 962 F. Supp. 2d 263, 264 (D.C. Cir. 2013). To ensure implementation of the IEP, a parent may seek judicial review of the implementation before an administrative hearing officer and, following a due process hearing, the parent may bring a civil action in federal court. *Schiff*, 2019 WL 5683903, at *5. If the State fails to provide a student with FAPE, the hearing officer or district court may award the student compensatory education. *B.D. v. District of Columbia*, 817 F.3d 792, 798 (D.C. Cir. 2016). "[C]ompensatory education aims to put a student … in the position he would be in absent the FAPE denial." *Id.*; *Reid ex rel. Reid v. District of Columbia.*, 401 F.3d 516, 522 (D.C. Cir. 2005) (explaining that "[c]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student").

The difference between eligibility to receive compensatory or missed services on the one hand, and eligibility to receive FAPE on the other, has significant consequences for the District and its many LEAs. *See* April 19 Glick Decl. ¶ 3. For any student legally entitled to FAPE under the IDEA, the student's LEA must create or update the student's IEP and find the student an appropriate educational placement. *Id.* In the normal course, the responsible entities' obligations to develop and implement the IEP would cease when the student reached the statutory age limit. *Id.* ¶¶ 3–5. But if the February 16, 2022 Order is interpreted as extending eligibility for FAPE with no set end date, a student could argue that his right to FAPE under the order continues indefinitely, particularly because the Court provides no metric for determining when the District's

responsibility has been met, other than when the student has received "the education that they would have" under the preliminary injunction. *See* February 16, 2022 Order at 5. Students would also presumably have the right to challenge the implementation of their IEP before a hearing officer at any point and could argue that an independent failure to provide FAPE occurred well after their 22nd birthday.[1] *See* April 19 Glick Decl. ¶ 3. Guaranteeing the receipt of compensatory services past the age of twenty-two, a pre-existing and highly customizable remedy, will sufficiently remedy any learning loss by students who may otherwise struggle to find placements willing to accept them past the statutory age, even with the Court's Order. *Id.* ¶ 6.

## CONCLUSION

For the foregoing reasons, the District's motion for clarification, or, in the alternative, for modification of the preliminary injunction and February 16, 2022 orders should be granted.

Dated:  April 19, 2022.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Amanda C. Pescovitz*
AMANDA C. PESCOVITZ [1735780]*
MICAH BLUMING [1618961]

---

[1]     As previously certified by the District, "a student's age will not prevent them from receiving services necessary to obtain the relief ordered by the Court." March 15, 2022 Notice of Compliance at 1, n.1. The District cannot guarantee, however, that LEAs will accept students for placement past the statutory age limit, due to funding and enrollment restrictions. *See* April 19 Glick Decl. ¶¶ 5–6.

*     Admitted to the Bar under D.C. App. R. 46-A (Emergency Examination Waiver). Practicing under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to D.C. App. R. 46-A(d)(2).

RICHARD P. SOBIECKI [500163]
HONEY MORTON [1019878]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 805-7495
amanda.pescovitz1@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHARLES H.,** *et al.*, <br><br>        **Plaintiffs,** <br><br>    **v.** <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br>        **Defendants.** | <br><br><br> **Civil Action No. 21-997 (CJN)** |

## <u>ORDER</u>

Upon consideration of defendants' Motion for Clarification of the Preliminary Injunction and Contempt Order, or, in the Alternative, for Modification of the Orders, plaintiffs' opposition, and the entire record, it is this _____ day of _____ 2022,

**ORDERED** that defendants' Motion for Clarification is **GRANTED**; and it is further

**ORDERED** that the Court's June 16, 2021 Preliminary Injunction [37] requiring the provision of "the full hours of special education and related services mandated by [the students'] Individualized Education Programs ('IEPs') through direct, teacher-or-counselor-led group classes and/or one-on-one session, delivered via live video conference calls and/or in-person interactions" shall be interpreted to allow the use of a combination of methodologies, including independent work, consistent with best practices in special education instruction; and it is further

**ORDERED** that the Court's February 16, 2022 Order [101] only requires the District of Columbia to provide appropriate compensatory or make-up services to students for services missed between September 1, 2021, and January 31, 2022, regardless of whether the student has turned or will turn 22 years of age prior to receipt of the compensatory or make-up services.

**SO ORDERED**.

_____
THE HONORABLE CARL J. NICHOLS
Judge, United States District Court
    for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES H.,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br> **Defendants.** | **Civil Action No. 21-997 (CJN)** |

## <u>ORDER</u>

Upon consideration of defendants' Motion for Clarification of the Preliminary Injunction and Contempt Order, or, in the Alternative, for Modification of the Orders, plaintiffs' opposition, and the entire record, it is this _____ day of _____ 2022,

**ORDERED** that defendants' Motion for Modification is **GRANTED**; and it is further

**ORDERED** that the Court's June 16, 2021 Preliminary Injunction [37] is modified as to the methodologies for providing "the full hours of special education and related services mandated by [the students'] Individualized Education Programs ('IEPs') through direct, teacher-or-counselor-led group classes and/or one-on-one session, delivered via live video conference calls and/or in-person interactions." Defendants shall be required to provide the full hours of special education and related services mandated by the students' IEPs through direct, teacher-or-counselor-led group classes and/or one-on-one sessions and/or independent work reviewed with the instructor, delivered via live video conference calls and/or in-person interactions; and it is further

**ORDERED** that the Court's February 16, 2022 Order [101] is modified as to the requirement extending IDEA eligibility of students beyond their 22nd birthday. The District of

Columbia will not be required to provide free appropriate public education (FAPE) beyond the statutory age, but will be required to provide appropriate compensatory or make-up services to students for services missed between September 1, 2021, and January 31, 2022, regardless of whether the student has turned or will turn 22 years of age prior to receipt of the compensatory or make-up services.

      **SO ORDERED**.

_____
THE HONORABLE CARL J. NICHOLS
Judge, United States District Court
      for the District of Columbia